JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ALISON RAY

## DEFENDANTS

AT&T, INC. and AT&T MOBILITY SERVICES, LLC

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Dallas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel Orlow, Esq.
Console Mattiacci Law
1525 Locust St. 9th Fl. Philadelphia, PA 19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange |
| | | | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **FEDERAL TAX SUITS** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☒ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |
| | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 621

Brief description of cause:
Plaintiff was terminated on account of her age

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
08/03/2018

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | | |
|---|---|---|---|
| ALISON RAY, | | : | |
| Plaintiff | | : | CIVIL ACTION |
| | | : | |
| v. | | : | |
| AT&T, INC. | | : | |
| and | | : | |
| AT&T MOBILITY SERVICES, LLC | | : | NO. |
| Defendants | | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      ( X )

| | | |
|---|---|---|
| 8/3/2018 | | Plaintiff, Alison Ray |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-689-2110 | orlow@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Collegeville, PA 19426 _____

Address of Defendant: 208 S. Akard St., Dallas, TX 75202 and 1025 Lenox Park Blvd, NE. Atlanta, GA 30319

Place of Accident, Incident or Transaction: 208 S. Akard St., Dallas, TX 75202 and 1025 Lenox Park Blvd, NE. Atlanta, GA 30319

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/03/2018 _____   *Attorney-at-Law / Pro Se Plaintiff*   311702 _____
_____   _____   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.   *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.   *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Daniel Orlow, Esquire _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: 08/03/2018 _____   *Attorney-at-Law / Pro Se Plaintiff*   311702 _____
_____   _____   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **ALISON RAY**<br>**Collegeville, PA 19426** | : | |
| | : | |
| | : | **CIVIL ACTION NO. __** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **AT&T, INC.** | : | |
| **208 S. Akard St.** | : | |
| **Dallas, TX 75202,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **AT&T MOBILITY SERVICES, LLC.** | : | |
| **1025 Lenox Park Blvd, NE.** | : | |
| **Atlanta, GA 30319** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

## I.   PRELIMINARY STATEMENT

Plaintiff, Alison Ray, brings this action against her former employers, AT&T, Inc. and AT&T Mobility Services, LLC, alleging violations of the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 621, *et seq.*

Despite her excellent performance throughout twenty-three (23) years of service with Defendants, Plaintiff was terminated on account of her age (49 at the time of termination) as a result of AT&T's company-wide "Workforce 2020" plan to reduce what it perceived to be an aging workforce.  Plaintiff seeks damages, including back-pay, front-pay, compensatory, liquidated, attorneys' fees and costs, and all other relief that this

6.     Defendant AT&T, Inc. shares with Defendant AT&T Mobility Services, LLC, *inter alia*, common ownership, management, administrative services, personnel, policies, and employment practices.

7.     Defendant AT&T, Inc. and Defendant AT&T Mobility Services, LLC (collectively "Defendants" or "AT&T"), hold themselves out to the public and their employees as part of an AT&T "family of companies" known as "AT&T" which, together and as one entity, employ over 270,000 people.

8.     Defendant AT&T, Inc. is the "alter ego" of Defendant AT&T Mobility Services, LLC.

9.     Defendant AT&T, Inc. and AT&T Mobility Services, LLC are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise.

10.     AT&T, Inc. and AT&T Mobility Services, LLC have employed thousands of people in the Commonwealth of Pennsylvania, including Plaintiff.

11.     At all times material hereto, Defendants AT&T, Inc. and AT&T Mobility Services, LLC have been engaged in an industry affecting interstate commerce and have acted as "employers" within the meaning of the ADEA.

12.     At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the ADEA.

13.     At all times material hereto, Defendants employed more than twenty (20) people.

14.     At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

Court deems appropriate.

## II.   **PARTIES**

1.      Plaintiff Alison Ray is an individual and citizen of the Commonwealth of Pennsylvania, residing therein in Collegeville, PA 19426.

2.      Defendant AT&T, Inc. is a Delaware corporation that is the parent company of Defendant AT&T Mobility Services, LLC.

3.      Defendant AT&T, Inc. maintains a principal place of business in the state of Texas.

4.      Defendant AT&T Mobility Services, LLC is a Delaware limited liability company duly registered to transact business in the Commonwealth of Pennsylvania as a foreign corporation, with a registered agent in Pennsylvania for service of legal process. AT&T Mobility Services, LLC maintains several places of business located throughout the Commonwealth of Pennsylvania, maintains systematic and continuous activity with Pennsylvania such that it is at home in Pennsylvania, and has employed many people in the Commonwealth of Pennsylvania, including Plaintiff.

5.      Defendant AT&T, Inc., by and through its wholly-owned and controlled subsidiary corporation AT&T Mobility Services, LLC., maintains multiple places of business in Pennsylvania, including the offices at which Plaintiff worked, conducts business through AT&T Mobility Services, LLC, maintains systematic and continuous activity with Pennsylvania such that it is at home in Pennsylvania, and has employed thousands of people in the Commonwealth of Pennsylvania, including Plaintiff.

### III.   <u>JURISDICTION AND VENUE</u>

15.    The causes of action set forth in this Complaint arise under the ADEA, as amended, 29 U.S.C. § 621, *et seq.*

16.    The District Court has subject matter jurisdiction over Counts I and II (ADEA) pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. § 1331.

17.    Venue is proper under 28 U.S.C. § 1391(b).

18.    On or about March 29, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.   Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the EEOC Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

19.    On or about May 7, 2018, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue for Plaintiff's EEOC Charge.   Attached hereto and marked as Exhibit "B" is a true and correct copy of that Notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

20.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

21.    AT&T Mobility Services, LLC is subject to the personal jurisdiction of this Court because, *inter alia*, the case arises out of or relates to the contacts of AT&T Mobility Services, LLC with the Commonwealth of Pennsylvania.   The contacts of AT&T Mobility Services, LLC are continuous and systematic such that AT&T Mobility Services, LLC is at home here, and/or AT&T Mobility Services, LLC has consented to personal jurisdiction by personal service within the state via an authorized agent of the corporation.

4

22.     AT&T, Inc. is subject to the personal jurisdiction of this Court because, *inter alia*, the case arises out of or relates to the contacts of AT&T, Inc. with the Commonwealth of Pennsylvania and the contacts of AT&T, Inc. are continuous and systematic such that AT&T Services, Inc. is at home here.

## IV.   **FACTUAL ALLEGATIONS**

23.     AT&T has a corporate culture of age bias and a public record of egregious age discrimination.

24.     AT&T's Chief Executive Officer, Randall Stephenson, has publicly discussed that AT&T has an aging workforce and a need to reinvent the company.  *See Gearing Up for the Cloud, AT&T Tells Its Workers:   Adapt or Else,* http://www.nytimes.com, February 13, 2016.  As part of this reinvention, AT&T came up with a plan to "retool" its aging workforce by the year 2020.  *Id.*

25.     As part of its plan – variously called "Vision 2020," "Workforce 2020," "Workplace 2020" – AT&T has publicly expressed age-based stereotypes and has acknowledged that those age-based stereotypes are considered in workplace decisions. *See, e.g., AT&T Prepares for a New World of Work: The Changing Work Force (Part 2),* https://networkingexchangeblog.att.com/enterprise-business (dividing its workforce by age, characterizing "Baby Boomers" as the workforce of "Yesterday," expressing without stated basis what is important to "Baby Boomers" as distinct from "Gen X" and "Gen Y" workers, explicitly stating that AT&T is taking these age-based stereotypical "factors into account when planning for our workplace of the future," and stating that by 2015, 90% of new hires will be from Gen X and Gen Y).

26.     AT&T has implemented its age discriminatory "2020" plan by a three-step

"surplus," then termination and fraudulent release scheme.

27.   AT&T's fraudulent three-step plan has been carried out with the intent to harm older workers.

28.   The first step in AT&T's fraudulent three-step scheme is an age-biased selection process in which certain employees are placed on "surplus" status.

29.   In the context of AT&T's fraudulent scheme, "surplus" status is distinct from termination of employment.

30.   Employees are selected for surplus based on centrally determined, company-wide, ill-defined and/or subjective criteria in a process infected with age bias. Without limitation, employees are assigned a rating for "skills," however the "skills" supposedly assessed are not those necessary to perform an actual job, but a job of the "future" per "Vision 2020," thus permitting managers to assign ratings based on the ageist stereotype that older workers could not or would not acquire "high tech" skills necessary for these future jobs.

31.   In the second step of AT&T's fraudulent plan, workers placed on "surplus" are given the opportunity to find an alternative position.  If an employee placed on surplus is unable to find an alternative position within sixty (60) days, their employment is terminated.

32.   In the third and final step of its plan, AT&T promises its terminated workers a severance payment in exchange for signing what purports to be a "General Release and Waiver" of claims, ***but which AT&T knows is not valid and enforceable as the Release falsely states that terminated workers are giving up their right to bring suit against AT&T under the ADEA.***

33.     The General Release and Waiver was designed and prepared by AT&T with the intent to harm older workers.

34.     AT&T has intentionally carried out its three-step plan in waves so as to keep its older workers in the dark regarding the intent and effect thereof.

35.     The purported General Release and Waiver offered by AT&T, along with its accompanying ADEA Listing, is invalid and unenforceable insomuch as it is not knowing and voluntary, falsely states that it waives the employees right to bring suit under the ADEA, and fails to comply with various disclosure requirements contained in the OWBPA.

36.     The General Release and Waiver offered to terminated workers is fraudulent and unenforceable for the following reasons, without limtiation:

   a.   The General Release and Waiver provides none of the disclosures required for a knowing and voluntary waiver of claims under the ADEA, including the right to bring an age discrimination lawsuit.

   b.   The General Release and Waiver provides no information to terminated worker as to who is actually being terminated and who is being retained.

   c.   The General Release and Waiver provides no meaningful information, in a manner calculated to be understood by the average individual, regarding the criteria used for placing certain employees on surplus status.

   d.   The General Release and Waiver provides no meaningful information, in a manner calculated to be understood by the average individual, regarding the "organization" to which an employee is assigned in the accompanying ADEA Listing.

7

e.   The ADEA Listing contains a category entitled "AWG," which is defined therein as "Affected Work Groups."  According to the ADEA Listing, "AWGs" "are comprised of positions at the same level with similar definable characteristics from which the surplus employees are selected.  An AWG may be any portion of an organization, described in terms of level, job title, similar job functions, geography, lines of organization or other definable attributes based on needs of the business. The combined AWGs comprise the Decisional Unit for this business case."

f.   The ADEA Listing purports to describe but in fact does not provide meaningful information as to the AWG category, the basis for employees receiving different AWG numbers, or why those with different AWGs are grouped together for purposes of the ADEA Listing.

g.   Documentation accompanying the General Release and Waiver contains the designation: "PROPRIETARY not for use or disclosure outside AT&T, Inc. and all its wholly owned subsidiaries and controlled companies, except under written permission."  This designation discourages employees on surplus from sharing information with each other or consulting with an attorney and furthers AT&T's fraudulent plan to keep its older workers in the dark regarding the discriminatory nature of their terminations.

37.   At all times material hereto, Defendants knew that the General Release and Waiver was fraudulent, unenforceable, and was intended to harm older workers for the

8

foregoing reasons.

38.     Plaintiff was employed by AT&T, Inc. and its controlled subsidiary/payroll company, AT&T Mobility Services, LLC, from May 16, 1994 until the date of her unlawful termination of employment effective January 15, 2018.

39.     From September of 2011 until the time of her termination in 2018, Plaintiff held the position of Director of Sales.

40.     Plaintiff reported to Judith Cavalieri (Cavalieri), AT&T Vice President and General Manager - Ohio/Pennsylvania (51[1]).   Plaintiff began reporting to Cavalieri effective April 1, 2016, when she was appointed to her position.

41.     Prior to reporting to Cavalieri, Plaintiff had reported to Tiffany Baehman, Vice President, General Manager of Liberty States (46).

42.     Plaintiff was a highly qualified and dedicated employee for Defendants for more than twenty-three (23) years.

43.     Plaintiff's extensive knowledge, skills, experience, and record of achievement as a successful Director of Sales were recognized by Defendants.

44.     By way of example, Plaintiff received annual merit increases and performance-based bonuses.

45.     For 2014, 2015, and 2016, Plaintiff received overall performance ratings of "fully meets" her business goals.

46.     As a result of these accomplishments, Plaintiff was called upon by Defendants to serve as a mentor for team members in her area.

47.     However, in furtherance of its "Vision 2020" plan, on November 16, 2017,

--------------------------------------------------

[1] All ages herein are approximations.

Defendants notified Plaintiff that the position that she held was being eliminated and that she was being placed on "surplus status."

48.    On the same day that she received the surplus notification, Plaintiff received a General Release and Waiver of Claims along with an ADEA Listing containing certain information regarding Plaintiff's "Organization."

49.    The General Release provided to Plaintiff fraudulently purported to release her claims against AT&T, including federal age discrimination claims with respect to her employment and termination of employment.

50.    As a result of being placed on surplus status, Plaintiff was to remain employed until January 15, 2018, at which time her employment was to be terminated if she had not been selected by Defendants for, and accepted, another position.

51.    In the General Release provided to Plaintiff, Defendants affirmatively and falsely represented to Plaintiff that, at the time of her termination, it had provided to her the ages and job titles of those "designated to participate in the [AT&T, Inc. Severance Pay Plan]."  AT&T knew this to be false.  The AT&T, Inc. Severance Pay Plan required, as a condition of eligibility, that its participants had to have actually been terminated from employment.

52.    Accordingly, the General Release provided to Plaintiff affirmatively and falsely represented to her that, at the time of her termination, it had provided to her the ages and job titles other employees who had been placed on surplus status *and* terminated.

53.    However, as of November 16, 2017, the date of the General Release, no one identified on the ADEA Listing was actually eligible for participation in the Severance

Plan because none of those employees had yet been terminated.   In fact, some employees who had been placed on surplus status along with Plaintiff were able to find other positions at AT&T within the sixty (60) day period.

54.     Thus, contrary to the affirmative and false representation contained in the General Release, AT&T *did not*, and *could not have*, informed Plaintiff which employees were eligible for participation in the plan.

55.     Further, the General Release given to Plaintiff provided no information explaining the specific criteria relied up in Plaintiff's selection for surplus status.  Without providing any additional information, the General Release and Waiver simply stated the following: "The considerations when designating eligible employees for company initiated involuntary termination and participation in the AT&T Inc.  Severance Pay Plan include some or all of the following: business needs, criticality of skills, job performance, role elimination, geographic location, and/or employee preference for displacement ('interest in leaving')."

56.     According to the criteria identified by AT&T for placing Plaintiff on surplus status, the reasons for Plaintiff's surplus notification could have been any conceivable business-related reasons.

57.     The ADEA Listing" provided to Plaintiff was for an "Organization" identified as "Mobility Retail Sales and Service – East Region Jennifer Van Buskirk Region President – Large Business."   There was no information explaining what this "Organization" identification meant, and no information provided as to how this Organization was determined or who was assigned to it.

58.     The ADEA Listing provided to Plaintiff does not indicate why Plaintiff was

assigned to a certain AWG 12 and why others were assigned different AWG numbers.

59.     The ADEA Listing provided to Plaintiff failed to provide required information and disclosures regarding the numbers of employees in Plaintiff's Decisional Unit.

60.     The ADEA Listing provided to Plaintiff also contained a category entitled "IIL." The ADEA Listing defines "IIL" as "Interest in Leaving," which, according to the ADEA Listing "is a process used in some business cases that invites employees to express their interest in terminating their employment with eligibility for severance benefits. Employees expressing IIL may or may not be selected based on needs of the business, and employees who have not expressed IIL may nevertheless be selected for surplus based on other criteria such as performance, experience, skills and training."

61.     The ADEA Listing provided to Plaintiff purports to but in fact does not provide meaningful information regarding this category.

62.     January 15, 2018 marked the commencement of the sixty (60) day period for Plaintiff to consider the General Release and Waiver.

63.     The ADEA Listing provided to Plaintiff on November 16, 2017 was not given to her at the commencement of the General Release and Waiver consideration period as explicitly required by the OWBPA.

64.     As a result of the foregoing, the General Release provided to Plaintiff was not valid and enforceable insomuch as Defendants fraudulently induced Plaintiff to sign the General Release while hiding from her information critical to an assessment of whether or not her termination was the result of age discrimination.

65.     Defendants have stated that Plaintiff was placed on surplus status because her position was being eliminated. This stated reason for placing Plaintiff on surplus is

merely a pretext for age discrimination.

66.     Following Plaintiff's placement on surplus status there remained at least twenty-two (22) Director of Sales positions in Plaintiff's "Organization."

67.     Further, there remained the following Directors of Sales who performed the same function as Plaintiff, including at least five (5) who reported to Cavalieri and worked in the same region as Plaintiff:  Linda Gill (30, with two (2) years as Director of Sales); Eric Decker (33, with six (6) months as Director of Sales); Emily Wiper (34, with eight (8) months as Director of Sales); Giovanni Quiros (36, with three (3) years as Director of Sales); and Kevin Kuhn (40, with nine (9) months as Director of Sales).

68.     The average age of those included in Plaintiff's "Organization" was 41.31. The average age of the employees in the Organization selected for surplus was 46.14.

69.      Per the ADEA Listing, of the eight (8) individuals assigned to "AWG 12," Plaintiff was one (1) of two (2) selected for surplus by Defendants.  Of the eight (8) employees assigned to AWG 12, the two (2) employees, including Plaintiff and an employee older than Plaintiff, who were selected for surplus, were the two (2) oldest employees in AWG 12.  Of the remaining six (6) individuals in AWG 12 that Defendants did not select for surplus status, all were younger than Plaintiff, including some who were substantially younger (including three (3) individuals in their thirties (30s)).

70.     Based on, *inter alia,* Plaintiff's knowledge, skills, and outstanding track record with Defendants, including in particular as a Director of Sales, Plaintiff was at least as, or better, qualified than all of the employees, including the three (3) substantially younger employees, in AWG 12 who were not selected for surplus.

71.     Per the ADEA Listing, there were twenty-nine (29) people who held Director

of Sales positions in the Organization, only seven (7) of whom were selected for surplus. The Directors of Sales selected for surplus were ages 31, 43, 46, 47, 49, 50, and 51. Plaintiff was older than twenty-one (21) individuals who held a Director of Sales position in the Organization, including several individuals younger than forty (40), each of whom was not selected for surplus and was retained by AT&T.

72.     Based on, *inter alia,* Plaintiff knowledge, skills, and outstanding track record with Defendants, including in particular as a Director of Sales, Plaintiff was at least as, or better, qualified than all of the employees, including the seventeen (17) younger employees, who held that position and were not selected for surplus.

73.     Based on, *inter alia*, Plaintiff's last formal performance appraisal in which Plaintiff received an overall score of "Fully Meets," and a leadership rating of "Exceeds," and the recognition by AT&T of Plaintiff's outstanding performance, results and positive contributions to the company over a more than twenty-three (23) year career, any fair and unbiased assessment of the criteria on which individuals were to have been rated and ranked for surplus selection purposes (business needs, criticality of skills, job performance, role elimination, geographic location, and/or employee preference for displacement), would not have resulted in Plaintiff being selected for surplus status.

74.     As of the termination of Plaintiff's employment on January 15, 2018, Plaintiff was instructed to consider signing the General Release and Waiver in exchange for a severance payment.

75.     As of January 15, 2018, no suitable replacement positions at the Director level were available for Plaintiff to apply to.

76.     Defendants terminated Plaintiff's employment effective January 15, 2018.

77.     Plaintiff signed and returned the General Release and Waiver on or about January 16, 2018.

78.     The General Release and Waiver signed by Plaintiff is invalid and unenforceable as to her ADEA claims insomuch as it provides none of the disclosures required for a knowing and voluntary waiver of claims under the ADEA.

79.     As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I
## VIOLATION OF THE ADEA – (SURPLUS SELECTION AND TERMINATION)

80.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

81.     Defendants intentionally discriminated against Plaintiff because of her age.

82.     Defendants have violated the ADEA by committing the foregoing acts of discrimination as alleged herein, including, without limitation selecting Plaintiff for "surplus" in November 2017, and/or terminating her employment effective January 15, 2018.

83.     As a direct result of Defendants' discriminatory conduct, Plaintiff has in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which is not known at this time.

84.     Defendants' violations of the ADEA were intentional and willful under the circumstances and warrant the imposition of liquidated damages.

85.     As a direct and proximate result of Defendants' violations of the ADEA, Plaintiff has sustained the injuries, damages, and losses set forth herein.

86.     Plaintiff is now suffering and will continue to suffer irreparable injury as a result of Defendants' discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

## COUNT II
## VIOLATION OF THE ADEA – FAILURE TO COMPLY WITH THE OWBPA

87.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

88.     Defendants, by the above-described improper and discriminatory acts, have violated the OWBPA.

89.     Plaintiff was not given an OWBPA-compliant release and therefore, she did not release her claims under the ADEA, or waive her right to bring or participate in a collective or representative action under the ADEA.

90.     As a direct and proximate result of Defendants' violation of the OWBPA, Plaintiff was misled regarding her rights under federal law and/or harmed in the prosecution of her claims under the ADEA.

91.     Plaintiff did not release her ADEA claims nor did she waive her rights under the ADEA to an age discrimination action under the ADEA.

92.     Plaintiff is entitled to declaratory relief, declaring the General Release and Waiver invalid as to all claims and rights under the ADEA.

93.     Plaintiff is entitled to injunctive relief, enjoining and restraining Defendants from raising the General Release and Waiver as a defense to Plaintiffs claims.

94.     As a direct and proximate result of Defendants' violation of the OWBPA, Plaintiff has sustained the injuries set forth herein.

95.     Plaintiff is now suffering and will continue to suffer irreparable injury as a result of Defendants' discriminatory acts unless and until this Court grants the equitable relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Alison Ray, and against Defendants:

a)     declaring the acts and practices complained of herein to be in violation of the ADEA;

b)     declaring the acts and practices complained of herein to be in violation of the OWBPA;

c)     declaring the General Release and Waiver signed by Plaintiff to be invalid and unenforceable;

d)     enjoining and restraining permanently the violations alleged herein;

e)     enjoining and restraining Defendants from raising the General Release as a defense to Plaintiff's claims in this matter;

f)     awarding damages to Plaintiff for the past and future economic losses that she has suffered;

g)     awarding liquidated damages to Plaintiff pursuant to the ADEA;

h)     awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

i)     awarding Plaintiff such other damages as are appropriate under the ADEA,

OWBPA, and federal and state law; and

j)      granting such other and further relief as this Court deems appropriate.


**CONSOLE MATTIACCI LAW, LLC**

Dated: _8/3/18_                    BY: _____
                                        Susan Saint-Antoine, Esq.
                                        Stephen G. Console, Esq.
                                        Daniel S. Orlow, Esq.
                                        1525 Locust Street, 9th Floor
                                        Philadelphia, PA 19102
                                        (215) 545-7676
                                        Attorneys for Plaintiff, Alison Ray

Exhibit "A"

| CHARGE OF DISCRIMINATION | | AGENCY<br>Q  FEPA<br>X  EEOC | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | | | |

| STATE OR LOCAL AGENCY: | | |
|---|---|---|

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>Alison Ray | HOME TELEPHONE NUMBER *(Include Area Code)*<br>(267) 772-3000 |
|---|---|

| STREET ADDRESS<br>160 Joan Drive | CITY, STATE AND ZIP<br>Collegeville, PA 19426 | DATE OF BIRTH<br>01/20/1968 |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>AT&T, Inc.<br>AT&T Mobility Services, LLC | NUMBER OF EMPLOYEES, MEMBERS<br>>200,000 | TELEPHONE (Include Area Code)<br>(210) 821-4105 |
|---|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP | COUNTY |
|---|---|---|
| **Charging Party's Work Location**<br>200 N. Warner Road | King of Prussia, PA  19406 | Montgomery, PA |
| **AT&T Corporate Headquarters**<br>208 S. Akard Street | Dallas, TX 75202 | Dallas, TX |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race  Q Color  Q Sex  Q Religion  Q National Origin<br>Q Retaliation  **X Age**  Q Disability  Q Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>*Earliest*                            *Latest*<br>01-15-18 (ongoing) |
|---|---|

**The Particulars Are:**

A.     1.     Relevant Work History

 I was employed by AT&T, Inc. and its controlled subsidiary/payroll company, AT&T Mobility Services, LLC (together, "AT&T"), from May 16, 1994 until the date of my unlawful termination of employment effective January 15, 2018.
 From September 2011 until the time of my termination in 2018, I held the position of Director of Sales.  I reported to Judith Cavalieri, AT&T Vice President and General Manager – Ohio/Pennsylvania (51[1]).  I began reporting to Cavalieri effective April 1, 2016, when she was appointed to her position.  Prior to reporting to Cavalieri, I had reported to Tiffany Baehman, Vice President, General Manager of Liberty States (46).  Cavalieri reports to Jennifer Van Buskirk (45), President – Northeast Region.  At the time of my surplus notification and termination, I was age forty-nine (49) with more than twenty-tree (23) years of service at AT&T.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>**3/26/18**         *Alison P. Ray*<br>Date         *Charging Party Signature* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

---

[1] All ages herein are approximations.

EEOC Charge of Discrimination, Page 2 of 8
Initials of Charging Party – *apn*

1. Relevant Work History (continued)

I was a highly qualified and dedicated employee for AT&T for more than twenty-three (23) years. Among other qualifications, I have a Bachelor of Science in Business and a Master of Business Administration, and an outstanding track record of success in retail sales for AT&T. My extensive knowledge, skills, experience, and record of achievement as a successful Director of Sales were recognized by AT&T. Among other things, I received annual merit increases and performance-based bonuses, every one of my annual performance reviews showed that I fully met business goals, and I was called upon by AT&T to serve as a mentor for team members in my area.

2. Harm Summary

I believe that AT&T discriminated against me because of my age (49) as part of a centrally planned, corporate-wide (*i.e.*, AT&T, Inc. and the many subsidiary entities under its direction and control, self-identified as the AT&T "family of companies") involuntary group termination program, implemented in waves from at least March 1, 2013 and still continuing, intended to "transform" an aging workforce, and which intended to, and did, eliminate older workers and replace them with younger ones, while falsely and fraudulently telling the older workers that they had released claims under the Age Discrimination in Employment Act ("ADEA") when AT&T knew that they had not.

On November 16, 2017, AT&T notified me that the position that I held was being eliminated and that I was being placed on "surplus status." I was to remain employed until January 15, 2018, at which time my employment was to be terminated if I had not been selected by AT&T for, and accepted, another position at AT&T.

On November 16, 2017, AT&T also presented to me a "General Release and Waiver" which fraudulently purported to release all claims against AT&T, including federal age discrimination claims with respect to my employment and (possible future) termination of employment. The General Release and Waiver was simultaneously accompanied by an "ADEA Listing" dated November 12, 2017 which, among other things, provided no information as to the identity of individuals actually terminated by AT&T.

After November 16, 2017, AT&T did not select me for any open and available positions with AT&T for which I was qualified.

AT&T terminated my employment effective January 15, 2018. That date was the commencement of the sixty (60) day period for me to consider the General Release and Waiver. AT&T provided me at that time no disclosures required for an involuntary group termination pursuant to the Older Workers Benefit Protection Act ("OWBPA").

I signed and returned to AT&T the General Release and Waiver on or about January 16, 2018. The purported waiver of my claims and right to bring and/or participate in a collective and/or representative action under the ADEA is invalid, unenforceable, and in violation of the ADEA, as amended by the OWBPA.

B. Respondents' Stated Reasons

AT&T has stated that I was placed on surplus status because my position was being eliminated. This is false and a pretext for age discrimination. Following the surplus, according to AT&T's own documents, there remained at least twenty-two (22) Director of Sales positions in my "Organization." Further, there remained several Directors of Sales who performed the same

function as me, including at least six (6) who reported to Cavalieri and worked in the same region as me.

AT&T has not stated a reason why AT&T failed to select me for any open and available positions for which I was qualified.

AT&T has stated that I was to be terminated if I was unable to secure another position within sixty (60) days of my being placed on surplus status. AT&T gave a false and pretextual reason for my selection for surplus; AT&T has given no reason for its failure to select me for any one of the open positions for which I was qualified.

AT&T has not stated any reason for its fraudulent representation to me that by signing the General Release and Waiver I had released and waived my claims and rights under the ADEA, including my right to bring and/or participate in a collective and/or representative action, when AT&T knew that they had presented me with a General Release and Waiver that was invalid, unenforceable and in violation of the OWBPA.

C.    Statutes Violated and Basis for Allegations

I allege that Respondents have discriminated against me based on my age in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA") and the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f) ("OWBPA").

Evidence of discrimination includes, but is not limited to (in addition to what is set forth herein):

1) AT&T has a corporate culture of age bias and a public record of egregious age discrimination.

2) AT&T's Chief Executive Officer, Randall Stephenson, has publicly discussed that AT&T has an aging workforce and had a need to reinvent the company. *See Gearing Up for the Cloud, AT&T Tells Its Workers: Adapt or Else,* http://www.nytimes.com, February 13, 2016. As part of this reinvention, AT&T came up with a plan to "retool" its aging workforce by the year 2020. *Id.*

3) As part of its plan – variously called "Vision 2020," "Workforce 2020;" "Workplace 2020" – AT&T has publicly expressed age-based stereotypes and has acknowledged that those age-based stereotypes are considered in workplace decisions. *See, e.g., AT&T Prepares for a New World of Work: The Changing Work Force (Part 2),* https://networkingexchangeblog.att.com/enterprise-business (dividing its workforce by age, characterizing "Baby Boomers" as the workforce of "Yesterday," expressing without stated basis what is important to "Baby Boomers" as distinct from "Gen X" and "Gen Y" workers, explicitly stating that AT&T is taking these age-based stereotypical "factors into account when planning for our workplace of the future," and stating that by 2015, 90% of new hires will be from Gen X and Gen Y).

4) Upon information and belief, since at least March 1, 2013, and continuing until the present, AT&T has, as part of its plan to transform its workforce, conducted vast involuntary terminations (referred to herein as "2020" terminations) with the intent and effect of eliminating older workers from its workforce. The massive and company-wide involuntary terminations were effectuated in waves across AT&T, Inc.'s various controlled/for payroll-purposes subsidiaries and in accordance with centrally planned, from the top, corporate-wide policies and procedures infected with age bias and, upon information and belief, causing a disparate impact on older workers.

a) Upon information and belief, as part of the "2020" terminations, AT&T, per its policies and procedures, notified certain workers that they were being placed on surplus status and would be terminated if unable to secure another position with AT&T within sixty (60) days. Employees were selected for surplus based on centrally determined, company-wide ill-defined and/or subjective criteria in a process infected with age bias. Without limitation, employees were assigned a rating for "skills," but the "skills" supposedly assessed were not those necessary to perform an actual job but a job of the "future" per "Vision 2020," thus permitting managers to assign ratings based on the ageist stereotype that older workers could not or would not acquire "high tech" skills necessary for these future jobs.

b) The process by which certain employees on surplus status were able to secure another job within AT&T was infected with age bias. Among other things, the centrally determined, company-wide surplus policies and procedures specifically provided that managers could at their complete discretion notify certain – but not all – employees on surplus status of job openings by sending to them a Career Opportunity Notice ("CON"), thus permitting managers to act on unchecked age-bias and notify younger workers only of open positions. Moreover, per AT&T policies and procedures, it was automatically made known to a hiring manager when an application was received for an open job if the application was submitted by an employee whom AT&T had selected for surplus status, thus tainting that employee's application prospects.

c) If an employee has not secured a position at the end of the sixty (60) day period, an employee who had been placed on surplus status was terminated by AT&T. AT&T offered such terminated employees severance in exchange for signing what purported to be a general release of all claims (including their right to bring suit, and/or participate in a collective/representative action under the ADEA). AT&T knew that what it falsely told the older workers was a general release of all claims was not a release and waiver of an older worker's right to bring and/or participate in an individual and/or collective action alleging age discrimination under the ADEA because the General Release and Waiver did not comply with the disclosure requirements of the OWBPA. Without limitation, **AT&T provided to the older workers no information as to who was actually being terminated and who was being retained.**

d) AT&T affirmatively represented to the older, terminated workers that it had provided to them at the time of the surplus notification the ages and job titles of those "designated to participate in the Plan." <u>This was patently false.</u> The Plan referenced was the AT&T, Inc. Severance Pay Plan; to be eligible to participate in it, among other things, one had to have been terminated from employment. The list provided did not identify any one who had actually been terminated. In fact, some employees who had been placed on surplus status and listed on the ADEA Listing were able to find other positions at AT&T within the sixty (60) day period. Thus, **AT&T fraudulently induced older workers to release rights pertaining to their termination, while hiding from those older workers information as to the ages of who was terminated and who was retained.**

e) Upon information and belief, AT&T has for years, and at least since March 1, 2013, and continuing through the present, carried out in waves its "2020" terminations with the intent and effect of terminating older workers from its

EEOC Charge of Discrimination, Page 5 of 8
Initials of Charging Party — *apn*

workforce, while retaining and hiring younger ones.  AT&T has intentionally kept the older workers in the dark about the scope of its terminations and selection procedures, and has engaged in a massive fraud whereby older workers were deceived as to the information they were receiving regarding who was terminated and who was retained, and falsely led the older workers to believe that they had waived their right to bring an action against AT&T for age discrimination.

5) Since at least 2013 until the time of my termination, AT&T has actively recruited outside hires.

6) I was notified by AT&T that I was placed on surplus status, terminated, and presented with a fraudulent General Release and Waiver as part of AT&T's "2020" terminations.

7) AT&T selected me for surplus, failed to select me for any open and available jobs for which I was qualified, terminated my employment, and presented me with a false and fraudulent General Release and Waiver because of my age.

8) On November 16, 2017, AT&T notified me that my position was being eliminated and that I was placed on surplus status with sixty (60) days to try to find a job or else be terminated.

   a) The statement that my position was being eliminated was false.

9) On November 16, 2017, AT&T presented me with a purported General Release and Waiver and accompanying "ADEA Listing."  Among other things, and without limitation:

   a) The General Release and Waiver and its accompanying materials purport to specify criteria but in fact provide no meaningful information as to the criteria used for selecting employees for surplus notification.  The General Release and Waiver and its accompanying materials stated the following with regard to the criteria used for selecting employees for surplus notification: "The considerations when designating eligible employees for company initiated involuntary termination and participation in the AT&T Inc. Severance Pay Plan include some or all of the following: business needs, criticality of skills, job performance, role elimination, geographic location, and/or employee preference for displacement ('interest in leaving')."

   b) The General Release and Waiver and its accompanying materials provided no information explaining the specific reason(s) for my selection for surplus notification.

   c) The General Release and Waiver stated falsely that I was provided with the ages and job titles of those designated to participate in the Severance Plan.  In fact, as of that date, no one identified on the ADEA Listing was eligible for the Severance Plan.

   d) Accompanying documents were marked as "PROPRIETARY Not for use or disclosure outside AT&T Inc. and all its wholly owned subsidiaries and controlled companies, except under written permission," thereby attempting to discourage me and other older workers from sharing the information with an attorney or other AT&T employees.

e) The information provided in the "ADEA Listing" was for an "Organization" identified as "Mobility Retail Sales and Service – East Region Jennifer Van Buskirk Region President – Large Business." There was no information explaining what this "Organization" identification meant, and no information provided as to how this Organization was determined or who was assigned to it.

f) The ADEA Listing contained a category entitled "AWG." The ADEA Listing defines "AWG" as "Affected Work Groups," which "are comprised of positions at the same level with similar definable characteristics from which the surplus employees are selected. An AWG may be any portion of an organization, described in terms of level, job title, similar job functions, geography, lines of organization or other definable attributes based on needs of the business. The combined AWGs comprise the Decisional Unit for this business case." The ADEA Listing purports to describe but in fact does not provide meaningful information as to AWG numbers, the AWG category, or AWG assignments. The ADEA Listing does not indicate why I was assigned to a certain AWG 12 and why others were assigned different AWG numbers.

g) The Release and General Waiver provided no information as to the basis a particular AWG number was assigned and why those with different AWGs are grouped together for purposes of the ADEA Listing.

h) The ADEA Listing contained a category entitled "IIL." The ADEA Listing defines "IIL" as "Interest in Leaving," which "is a process used in some business cases that invites employees to express their interest in terminating their employment with eligibility for severance benefits. Employees expressing IIL may or may not be selected based on needs of the business, and employees who have not expressed IIL may nevertheless by selected for surplus based on other criteria such as performance, experience, skills and training." The ADEA Listing purports to but in fact does not provide meaningful information.

i) The ADEA Listing does not indicate who among the employees was terminated.

j) AT&T failed to provide required information and disclosures under the OWBPA, including failing to provide the cumulative information regarding numbers of employees in my Decisional Unit.

10) The average age of those included in the Organization was 41.31. The average age of the employees in the Organization selected for surplus was 46.14.

11) I was apparently assigned to AWG 12. I was never told by AT&T the basis of my or others' assignment to AWG 12.

12) Per the ADEA Listing, of the eight (8) individuals assigned to "AWG 12," I was one (1) of two (2) selected for surplus by AT&T. Of the eight (8) employees assigned to AWG 12, the two (2) employees, including me and an employee older than me, who were selected for surplus were the two (2) oldest employees in AWG 12. Of the remaining six (6) individuals in AWG 12 that AT&T did not select for surplus status, all were younger than me, including some who were substantially younger (including three (3) individuals in their thirties (30s)).

a) Based on, *inter alia,* my knowledge, skills, and outstanding track record with

EEOC Charge of Discrimination, Page 7 of 8
Initials of Charging Party

AT&T, including in particular as a Director of Sales, I believe I was at least as, or better, qualified than all of the employees, including the three (3) substantially younger employees, in AWG 12 who were not selected for surplus.

13) Per the ADEA Listing, there were twenty-nine (29) people who held Director of Sales positions in the Organization, only seven (7) of whom were selected for surplus. The Directors of Sales selected for surplus were ages 31, 43, 46, 47, 49, 50, and 51. I was older than twenty-one (21) individuals who held a Director of Sales position in the Organization, including several individuals younger than forty (40), each of whom was not selected for surplus and was retained by AT&T.

    a) Based on, *inter alia,* my knowledge, skills, and outstanding track record with AT&T, including in particular as a Director of Sales, I believe I was at least as, or better, qualified than all of the employees, including the seventeen (17) younger employees, who held that position and were not selected for surplus.

14) Based on, *inter alia*, my last formal performance appraisal in which I received an overall score of "Fully Meets," and a leadership rating of "Exceeds," and the recognition by AT&T of my outstanding performance, results and positive contributions to the company over a more than twenty-three (23) year career, any fair and unbiased assessment of the criteria on which individuals were to have been rated and ranked for surplus selection purposes (business needs, criticality of skills, job performance, role elimination, geographic location, and/or employee preference for displacement), would have resulted in my top rating/ranking and not in my selection for surplus status.

15) On January 15, 2018, AT&T terminated my employment.

16) AT&T retained at least six (6) younger Directors of Sales in the Liberty States Region reporting to Cavalieri. Based on, *inter alia,* my knowledge, skills, and outstanding track record with AT&T, including in particular my six and a half (6.5) years as a Director of Sales, I believe I was better qualified than these younger individuals who were retained. Without limitation:

    a) When I was surplussed, AT&T retained the following substantially younger employees in the Director of Sales position, with substantially fewer years as Director of Sales than I had, reporting to Cavalieri: Linda Gill (30, with two (2) years as Director of Sales); Eric Decker (33, with six (6) months as Director of Sales); Danny Perez (33, with two (2) years as Director of Sales); Emily Wiper (34, with eight (8) months as Director of Sales); Giovanni Quiros (36, with three (3) years as Director of Sales); and Kevin Kuhn (40, with nine (9) months as Director of Sales).

17) As of the termination of my employment on January 15, 2018, I was instructed to consider signing the General Release and Waiver in exchange for a severance payment.

    a) AT&T never provided me with the disclosures required by the OWBPA.

    b) AT&T never provided me with information indicating that it was the job titles and ages of those who had actually been terminated from employment.

    c) The "ADEA Listing" that was given to me on November 16, 2017 was not given to me at the commencement of the General Release and Waiver consideration period as explicitly required by the OWBPA.

EEOC Charge of Discrimination, Page 8 of 8
Initials of Charging Party – *apm*

    d)  AT&T failed to provide to me in a manner calculated to be understood by the average individual eligible to participate in the Severance Pay program the disclosures required for a knowing and voluntary waiver of my claims and rights under the ADEA, including my right to bring an age discrimination suit against them and to initiate and/or participate in a collective and/or representative action.

18) My performance was outstanding and did not warrant my selection for surplus, the fact that I was not selected for open positions, or the termination of my employment.

19) Upon information and belief, AT&T's "2020" group involuntary termination program, including its centrally determined policies and procedures, had a disparate impact on older workers.

20) AT&T has demonstrated an intent to terminate the employment of older workers, including me, and retain younger workers instead.

21) AT&T fraudulently induced me and other older workers to sign a General Release and Waiver that they knew to be in invalid, unenforceable, and in violation of the OWBPA.

D.    Class Charge

I allege that AT&T has engaged in a pattern and practice of discriminating against older workers in violation of the ADEA. In that regard, I bring this Charge as a class and pattern and practice Charge on behalf of myself and any and all current or former employees, age forty and over who have been adversely affected by AT&T's discriminatory practices (as a result of disparate treatment or disparate impact) in connection with its company-wide group terminations, implemented in waves pursuant to the same centrally determined and corporate-wide policies and procedures, since at least March 1, 2013 and continuing through the present, including but not limited to being placed on surplus status; being denied opportunities to secure or being rejected for open positions; and/or being terminated.

I further allege that AT&T has violated the ADEA, as amended by the OWBPA, and that the language, terms, and manner of presentation of AT&T's General Release and Waiver agreements utilized during the company-wide involuntary group terminations since at least March 1, 2013 and continuing through the present, is part of a pattern and practice to adversely treat and disparately impact me and similarly situated employees age forty (40) and over, and was a scheme in violation of the ADEA and OWBPA with the intention of deceiving me and other older workers into believing that we could not sign the General Release and Waiver, collect severance, and bring an age discrimination case against AT&T. In that regard, I bring this Charge as a class Charge on behalf of those individuals age forty (40) and over whom AT&T terminated as part of the involuntary group terminations since at least March 1, 2013, and continuing through the present, who were presented with a General Release and Waiver which purported to be a general release of all claims, including for age discrimination under federal law and the right to bring and/or participate in a collective and/or representative action under the ADEA, but which failed to comply with the OWBPA.

Exhibit "B"

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Alison Ray**<br>**160 Joan Drive**<br>**Collegeville, PA 19426** | From:  **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1300**<br>**Philadelphia, PA 19107** |

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2018-02978** | **Legal Unit,**<br>**Legal Technician** | **(215) 440-2828** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Jamie R. Williamson*       5/7/18

Enclosures(s)      **Jamie R. Williamson,**<br>**District Director**       *(Date Mailed)*

cc:

**AT&T MOBILITY**

**Emily R. Derstine Friesen, (for Charging Party)**

**Laura Givens, Employee Relations Manager**
**(for Respondent)**