**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **ALISON RAY**<br>**Collegeville, PA 19426,**<br> *on behalf of herself individually*<br>*and on behalf of those similarly*<br>*situated,* | : : : : : : : | |
| **Plaintiff,** | : : | **CIVIL ACTION NO. 2:18-03303** |
| **v.** | : : : | **JURY TRIAL DEMANDED** |
| **AT&T MOBILITY SERVICES, LLC.**<br>**1025 Lenox Park Blvd, NE.**<br>**Atlanta, GA 30319** | : : : : | |
| **Defendants.** | : : | |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

## I.   PRELIMINARY STATEMENT

Plaintiff, Alison Ray, brings this action against her former employer, AT&T Mobility

Services, LLC, alleging violations of the Age Discrimination in Employment Act ("ADEA"),

as amended by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 621,

*et seq.*

Despite her excellent performance throughout twenty-three (23) years of service

with Defendant, Plaintiff was terminated on account of her age (49 at the time of

termination) as a result of AT&T's company-wide "Workforce 2020" plan to reduce what

it perceived to be an aging workforce.  In connection with her termination as part of a

group termination/reduction in force assigned "Business Case ID 17-350," Defendant

presented to Plaintiff, and Plaintiff signed, what purported to be a general release and waiver, but which has been determined to violate the OWPBA.

Plaintiff brings this action against Defendant for age discrimination in violation of the ADEA as a collective action pursuant to the ADEA, 29 U.S.C. § 626(b), incorporating section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), on behalf of herself individually and in behalf of those similarly situated, *i.e.,* all former employees of Defendant who when age 40 or over were terminated in connection with "Business Case ID 17-350" and who signed a release agreement entitled "GENERAL RELEASE AND WAIVER AT&T INC. SEVERANCE PAY PLAN (NON-CALIFORNIA)" (referred to hereinafter as "Older Workers"). In that regard, Plaintiff seeks an Order providing that Notice of this lawsuit be given to each Older Worker. In addition, Plaintiff seeks damages, including back-pay, front-pay, compensatory, liquidated, attorneys' fees and costs, and all other relief that this Court deems appropriate.

## II.    PARTIES

1.     Plaintiff Alison Ray is an individual and citizen of the Commonwealth of Pennsylvania, residing therein in Collegeville, PA 19426.

2.     AT&T, Inc. is a Delaware corporation that is the parent company of Defendant AT&T Mobility Services, LLC.

3.     Defendant AT&T Mobility Services, LLC is a Delaware limited liability company duly registered to transact business in the Commonwealth of Pennsylvania as a foreign corporation, with a registered agent in Pennsylvania for service of legal process. AT&T Mobility Services, LLC maintains several places of business located throughout the Commonwealth of Pennsylvania, maintains systematic and continuous activity with

2

Pennsylvania such that it is at home in Pennsylvania, and has employed many people in the Commonwealth of Pennsylvania, including Plaintiff.

4.    AT&T, Inc., by and through its wholly-owned and controlled subsidiary corporation AT&T Mobility Services, LLC., maintains multiple places of business in Pennsylvania, including the offices at which Plaintiff worked, conducts business through AT&T Mobility Services, LLC, maintains systematic and continuous activity with Pennsylvania such that it is at home in Pennsylvania, and has employed thousands of people in the Commonwealth of Pennsylvania, including Plaintiff.

5.    AT&T, Inc. shares with Defendant AT&T Mobility Services, LLC, *inter alia*, common ownership, management, administrative services, personnel, policies, and employment practices.

6.    AT&T, Inc. and Defendant AT&T Mobility Services, LLC (collectively "AT&T"), hold themselves out to the public and their employees as part of an AT&T "family of companies" known as "AT&T" which, together and as one entity, employ over 270,000 people.

7.    AT&T, Inc. is the "alter ego" of Defendant AT&T Mobility Services, LLC.

8.    AT&T, Inc. and AT&T Mobility Services, LLC are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise.

9.    AT&T, Inc. and AT&T Mobility Services, LLC have employed thousands of people in the Commonwealth of Pennsylvania, including Plaintiff.

10.    At all times material hereto, AT&T, Inc. and AT&T Mobility Services, LLC have been engaged in an industry affecting interstate commerce and have acted as "employers" within the meaning of the ADEA.

3

11.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the ADEA.

12.     At all times material hereto, AT&T employed more than twenty (20) people.

13.     At all times material hereto, AT&T acted by and through their authorized agents, servants, workmen, and/or employees within the course and scope of their employment with  and in furtherance of Defendant's business.

## III.    JURISDICTION AND VENUE

14.     The causes of action set forth in this Complaint arise under the ADEA, as amended, 29 U.S.C. § 621, *et seq*.

15.     The District Court has subject matter jurisdiction over Counts I and  II (ADEA) pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. § 1331.

16.     Venue is proper under 28 U.S.C. § 1391(b).

17.     On or about March 29, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the EEOC Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

18.     On or about May 7, 2018, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue for Plaintiff's EEOC Charge.  Attached hereto and marked as Exhibit "B" is a true and correct copy of that Notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

19.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

4

20.     AT&T Mobility Services, LLC is subject to the personal jurisdiction of this Court because, *inter alia*, the case arises out of or relates to the contacts of AT&T Mobility Services, LLC with the Commonwealth of Pennsylvania.  The contacts of AT&T Mobility Services, LLC are continuous and systematic such that AT&T Mobility Services, LLC is at home here, and/or AT&T Mobility Services, LLC has consented to personal jurisdiction by personal service within the state via an authorized agent of the corporation.

## IV.     FACTUAL ALLEGATIONS

21.     AT&T has a corporate culture of age bias and a public record of egregious age discrimination.

22.     AT&T's Chief Executive Officer, Randall Stephenson, has publicly discussed that AT&T has an aging workforce and a need to reinvent the company.  *See Gearing Up for the Cloud, AT&T Tells Its Workers:    Adapt or Else*, http://www.nytimes.com, February 13, 2016.  As part of this reinvention, AT&T came up with a plan to "retool" its aging workforce by the year 2020.  *Id.*

23.     As part of its plan – variously called "Vision 2020," "Workforce 2020," "Workplace 2020" – AT&T has publicly expressed age-based stereotypes and has acknowledged that those age-based stereotypes are considered in workplace decisions. *See, e.g., AT&T Prepares for a New World of Work: The Changing Work Force (Part 2)*, https://networkingexchangeblog.att.com/enterprise-business (dividing its workforce by age, characterizing "Baby Boomers" as the workforce of "Yesterday," expressing without stated basis what is important to "Baby Boomers" as distinct from "Gen X" and "Gen Y" workers, explicitly stating that AT&T is taking these age-based stereotypical "factors into account when planning for our workplace of the future," and stating that by 2015, 90% of

new hires will be from Gen X and Gen Y).

24.     AT&T has implemented its age discriminatory "2020" plan by a three-step "surplus," then termination and fraudulent release scheme.

25.     AT&T's fraudulent three-step plan has been carried out with the intent to harm older workers.

26.     The first step in AT&T's fraudulent three-step scheme is an age-biased selection process in which certain employees are placed on "surplus" status.

27.     In the context of AT&T's fraudulent scheme, "surplus" status is distinct from termination of employment.

28.     Employees are selected for surplus based on centrally determined, company-wide, ill-defined and/or subjective criteria in a process infected with age bias. Without limitation, employees are assigned a rating for "skills," however the "skills" supposedly assessed are not those necessary to perform an actual job, but a job of the "future" per "Vision 2020," thus permitting managers to assign ratings based on the ageist stereotype that older workers could not or would not acquire "high tech" skills necessary for these future jobs.

29.     In the second step of AT&T's fraudulent plan, workers placed on "surplus" are given the opportunity to find an alternative position.  If an employee placed on surplus is unable to find an alternative position within sixty (60) days, their employment is terminated.

30.     In the third and final step of its plan, AT&T promises its terminated workers a severance payment in exchange for signing what purports to be a "General Release and Waiver" of claims, *but which AT&T knows is not valid and enforceable as the*

*Release falsely states that terminated workers are giving up their right to bring suit against AT&T under the ADEA.*

31.     The General Release and Waiver was designed and prepared by AT&T with the intent to harm older workers.

32.     AT&T has intentionally carried out its three-step plan in waves so as to keep its older workers in the dark regarding the intent and effect thereof.

33.     The purported General Release and Waiver offered by AT&T, along with its accompanying ADEA Listing, is invalid and unenforceable insomuch as it is not knowing and voluntary, falsely states that it waives the employee's right to bring suit under the ADEA, and fails to comply with various disclosure requirements contained in the OWBPA.

34.     The General Release and Waiver offered to terminated workers is fraudulent and unenforceable for the following reasons, without limtiation:

> a.   The General Release and Waiver provides none of the disclosures required for a knowing and voluntary waiver of claims under the ADEA, including the right to bring an age discrimination lawsuit.
>
> b.   The General Release and Waiver provides no information to terminated workers as to who is actually being terminated and who is being retained.
>
> c.   The General Release and Waiver provides no meaningful information, in a manner calculated to be understood by the average individual, regarding the criteria used for placing certain employees on surplus status.
>
> d.   The General Release and Waiver provides no meaningful information,

7

in a manner calculated to be understood by the average individual, regarding the "organization" to which an employee is assigned in the accompanying ADEA Listing.

e.  The ADEA Listing contains a category entitled "AWG," which is defined therein as "Affected Work Groups."  According to the ADEA Listing, "AWGs" "are comprised of positions at the same level with similar definable characteristics from which the surplus employees are selected.  An AWG may be any portion of an organization, described in terms of level, job title, similar job functions, geography, lines of organization or other definable attributes based on needs of the business. The combined AWGs comprise the Decisional Unit for this business case."

f.  The ADEA Listing purports to describe but in fact does not provide meaningful information as to the AWG category, the basis for employees receiving different AWG numbers, or why those with different AWGs are grouped together for purposes of the ADEA Listing.

g.  Documentation accompanying the General Release and Waiver contains the designation: "PROPRIETARY not for use or disclosure outside AT&T, Inc. and all its wholly owned subsidiaries and controlled companies, except under written permission."  This designation discourages employees on surplus from sharing information with each other or consulting with an attorney and furthers AT&T's fraudulent plan to keep its older workers in the dark regarding the discriminatory nature

of their terminations.

35.     At all times material hereto, AT&T knew that the General Release and Waiver was fraudulent, unenforceable, and was intended to harm older workers for the foregoing reasons.

36.     As part of AT&T's 2020 plan with three step "surplus," then termination and fraudulent release scheme, and with the intent and effect of eliminating older employees from its workforce, Defendant underwent a group termination/reduction in force assigned Business Case ID: 17-350.

37.     In connection with the group termination/reduction in force assigned Business Case ID: 17-350, Defendant terminated the employment of Plaintiff and Older Workers because of their age and presented to them a General Release and Waiver (entitled "GENERAL RELEASE AND WAIVER AT&T INC. SEVERANCE PAY PLAN (NON-CALIFORNIA)"), which purported to be a general release and waiver but is not knowing and voluntary, falsely states that it waives the employee's right to bring suit under the ADEA, and fails to comply with various disclosure requirements contained in the OWBPA.

38.     The group termination/reduction in force assigned Business Case ID: 17-350 was centrally planned, part of AT&T's pattern or practice of age discrimination, infected by age discrimination and/or infused with AT&T's top-down corporate culture of age bias.

39.     The group termination/reduction in force entitled Business Case ID: 17-350 was infected by an age discriminatory aspect, *i.e.,* the fact that it entailed obtaining from Plaintiff and Older Workers a General Release and Waiver that violates the ADEA, as

9

amended by the OWBPA.

40.     Plaintiff was employed by AT&T, Inc. and its controlled subsidiary/payroll company, AT&T Mobility Services, LLC, from May 16, 1994 until the date of her unlawful termination of employment effective January 15, 2018.

41.     From September of 2011 until the time of her termination in 2018, Plaintiff held the position of Director of Sales.

42.     Plaintiff reported to Judith Cavalieri (Cavalieri), AT&T Vice President and General Manager - Ohio/Pennsylvania (51[1]).   Plaintiff began reporting to Cavalieri effective April 1, 2016, when she was appointed to her position.

43.     Prior to reporting to Cavalieri, Plaintiff had reported to Tiffany Baehman, Vice President, General Manager of Liberty States (46).

44.     Plaintiff was a highly qualified and dedicated employee for AT&T for more than twenty-three (23) years.

45.     Plaintiff's extensive knowledge, skills, experience, and record of achievement as a successful Director of Sales were recognized by AT&T.

46.     By way of example, Plaintiff received annual merit increases and performance-based bonuses.

47.     For 2014, 2015, and 2016, Plaintiff received overall performance ratings of "fully meets" her business goals.

48.     As a result of these accomplishments, Plaintiff was called upon by AT&T to serve as a mentor for team members in her area.

49.     However, in furtherance of its "Vision 2020" plan, on November 16, 2017,

---

[1] All ages herein are approximations.

AT&T notified Plaintiff that the position that she held was being eliminated and that she was being placed on "surplus status."

50.     On the same day that she received the surplus notification, Plaintiff received a General Release and Waiver of Claims along with an ADEA Listing containing certain information regarding Plaintiff's "Organization."

51.     The General Release provided to Plaintiff fraudulently purported to release her claims against AT&T, including federal age discrimination claims with respect to her employment and termination of employment.

52.     As a result of being placed on surplus status, Plaintiff was to remain employed until January 15, 2018, at which time her employment was to be terminated if she had not been selected by AT&T for, and accepted, another position.

53.     In the General Release provided to Plaintiff, AT&T affirmatively and falsely represented to Plaintiff that, at the time of her termination, it had provided to her the ages and job titles of those "designated to participate in the [AT&T, Inc. Severance Pay Plan]." AT&T knew this to be false.  The AT&T, Inc. Severance Pay Plan required, as a condition of eligibility, that its participants had to have actually been terminated from employment.

54.     Accordingly, the General Release provided to Plaintiff affirmatively and falsely represented to her that, at the time of her termination, it had provided to her the ages and job titles other employees who had been placed on surplus status *and* terminated.

55.     However, as of November 16, 2017, the date of the General Release, no one identified on the ADEA Listing was actually eligible for participation in the Severance Plan because none of those employees had yet been terminated.   In fact, some

employees who had been placed on surplus status along with Plaintiff were able to find other positions at AT&T within the sixty (60) day period.

56.     Thus, contrary to the affirmative and false representation contained in the General Release, AT&T *did not*, and *could not have*, informed Plaintiff which employees were eligible for participation in the plan.

57.     Further, the General Release given to Plaintiff provided no information explaining the specific criteria relied up in Plaintiff's selection for surplus status.  Without providing any additional information, the General Release and Waiver simply stated the following: "The considerations when designating eligible employees for company initiated involuntary termination and participation in the AT&T Inc.  Severance Pay Plan include some or all of the following: business needs, criticality of skills, job performance, role elimination, geographic location, and/or employee preference for displacement ('interest in leaving')."

58.     According to the criteria identified by AT&T for placing Plaintiff on surplus status, the reasons for Plaintiff's surplus notification could have been any conceivable business-related reasons.

59.     The "ADEA Listing" provided to Plaintiff was for an "Organization" identified as "Mobility Retail Sales and Service – East Region Jennifer Van Buskirk Region President – Large Business."   There was no information explaining what this "Organization" identification meant, and no information provided as to how this Organization was determined or who was assigned to it.

60.     The ADEA Listing provided to Plaintiff does not indicate why Plaintiff was assigned to a certain AWG 12 and why others were assigned different AWG numbers.

61.    The ADEA Listing provided to Plaintiff failed to provide required information and disclosures regarding the numbers of employees in Plaintiff's Decisional Unit.

62.    The ADEA Listing provided to Plaintiff also contained a category entitled "IIL."  The ADEA Listing defines "IIL" as "Interest in Leaving," which, according to the ADEA Listing "is a process used in some business cases that invites employees to express their interest in terminating their employment with eligibility for severance benefits.  Employees expressing IIL may or may not be selected based on needs of the business, and employees who have not expressed IIL may nevertheless be selected for surplus based on other criteria such as performance, experience, skills and training."

63.    The ADEA Listing provided to Plaintiff purports to but in fact does not provide meaningful information regarding this category.

64.    January 15, 2018 marked the commencement of the sixty (60) day period for Plaintiff to consider the General Release and Waiver.

65.    The ADEA Listing provided to Plaintiff on November 16, 2017 was not given to her at the commencement of the General Release and Waiver consideration period as explicitly required by the OWBPA.

66.    As a result of the foregoing, the General Release provided to Plaintiff was not valid and enforceable insomuch as  AT&T fraudulently induced Plaintiff to sign the General Release while hiding from her information critical to an assessment of whether or not her termination was the result of age discrimination.

67.    AT&T has stated that Plaintiff was placed on surplus status because her position was being eliminated.  This stated reason for placing Plaintiff on surplus is merely a pretext for age discrimination.

68.     Following Plaintiff's placement on surplus status there remained at least twenty-two (22) Director of Sales positions in Plaintiff's "Organization."

69.     Further, there remained the following Directors of Sales who performed the same function as Plaintiff, including at least five (5) who reported to Cavalieri and worked in the same region as Plaintiff:  Linda Gill (30, with two (2) years as Director of Sales); Eric Decker (33, with six (6) months as Director of Sales); Emily Wiper (34, with eight (8) months as Director of Sales); Giovanni Quiros (36, with three (3) years as Director of Sales); and Kevin Kuhn (40, with nine (9) months as Director of Sales).

70.     The average age of those included in Plaintiff's "Organization" was 41.31. The average age of the employees in the Organization selected for surplus was 46.14.

71.     Per the ADEA Listing, of the eight (8) individuals assigned to "AWG 12," Plaintiff was one (1) of two (2) selected for surplus by AT&T.  Of the eight (8) employees assigned to AWG 12, the two (2) employees, including Plaintiff and an employee older than Plaintiff, who were selected for surplus, were the two (2) oldest employees in AWG 12.  Of the remaining six (6) individuals in AWG 12 that AT&T did not select for surplus status, all were younger than Plaintiff, including some who were substantially younger (including three (3) individuals in their thirties (30s)).

72.     Based on, *inter alia,* Plaintiff's knowledge, skills, and outstanding track record with AT&T, including in particular as a Director of Sales, Plaintiff was at least as, or better, qualified than all of the employees, including the three (3) substantially younger employees, in AWG 12 who were not selected for surplus.

73.     Per the ADEA Listing, there were twenty-nine (29) people who held Director of Sales positions in the Organization, only seven (7) of whom were selected for surplus.

The Directors of Sales selected for surplus were ages 31, 43, 46, 47, 49, 50, and 51. Plaintiff was older than twenty-one (21) individuals who held a Director of Sales position in the Organization, including several individuals younger than forty (40), each of whom was not selected for surplus and was retained by AT&T.

74.     Based on, *inter alia,* Plaintiff knowledge, skills, and outstanding track record with AT&T, including in particular as a Director of Sales, Plaintiff was at least as, or better, qualified than all of the employees, including the seventeen (17) younger employees, who held that position and were not selected for surplus.

75.     Based on, *inter alia*, Plaintiff's last formal performance appraisal in which Plaintiff received an overall score of "Fully Meets," and a leadership rating of "Exceeds," and the recognition by AT&T of Plaintiff's outstanding performance, results and positive contributions to the company over a more than twenty-three (23) year career, any fair and unbiased assessment of the criteria on which individuals were to have been rated and ranked for surplus selection purposes (business needs, criticality of skills, job performance, role elimination, geographic location, and/or employee preference for displacement), would not have resulted in Plaintiff being selected for surplus status.

76.     As of the termination of Plaintiff's employment on January 15, 2018, Plaintiff was instructed to consider signing the General Release and Waiver in exchange for a severance payment.

77.     As of January 15, 2018, no suitable replacement positions at the Director level were available for Plaintiff to apply to.

78.     AT&T terminated Plaintiff's employment effective January 15, 2018.

79.     Plaintiff signed and returned the General Release and Waiver on or about

15

January 16, 2018.

80.    The General Release and Waiver signed by Plaintiff is invalid and unenforceable as to her ADEA claims insomuch as it provides none of the disclosures required for a knowing and voluntary waiver of claims under the ADEA.

81.    The surplus notification, General Release and Waiver, ADEA Listing and other documents provided by Defendant to Plaintiff in connection with her selection for surplus and termination were uniform, standard form documents that were also provided to Older Workers in connection with their termination of employment as part of the group termination/reduction in force assigned "Business Case ID: 17-350."

82.    The group termination/reduction in force assigned "Business Case ID: 17-350" was centrally planned, centrally coordinated, and uniformly implemented.

83.    The group termination/reduction in force assigned "Business Case ID: 17-350" used processes that were centrally planned, standard and uniform.

84.    Plaintiff and Older Workers are similarly situated in that, among other things, they were the victims of AT&T's age discriminatory 2020 plan and three step "surplus," then termination and fraudulent release scheme, who were terminated as part of Business Case ID: 17-350, a group termination/reduction in force infected by age discrimination, including, but not limited to, the fact that it entailed obtaining from Plaintiff and Older Workers a General Release and Waiver that violates the ADEA, as amended by the OWBPA.

85.    As a direct and proximate result of the discriminatory conduct of AT&T, Plaintiff and Older Workers have in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment,

humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

**COUNT I**
**VIOLATION OF THE ADEA – (SURPLUS SELECTION AND TERMINATION)**
**(by Plaintiff Allison Ray individually and on behalf of similarly situated Older Workers)**

86.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

87.    AT&T Mobility Services, LLC intentionally discriminated against Plaintiff and Older Workers because of their age.

88.    AT&T Mobility Services, LLC has violated the ADEA by committing the foregoing acts of discrimination as alleged herein, including, without limitation selecting Plaintiff and Older Workers for "surplus" in November 2017, and/or terminating their employment effective thereafter on or before January 15, 2018.

89.    As a direct result of AT&T Mobility Services, LLC's discriminatory conduct, Plaintiff and Older Workers have in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which are not known at this time.

90.    AT&T Mobility Services, LLC's violations of the ADEA were intentional and willful under the circumstances and warrant the imposition of liquidated damages.

91.    As a direct and proximate result of AT&T Mobility Services, LLC's violations of the ADEA, Plaintiff and Older Workers have sustained the injuries, damages, and losses set forth herein.

17

92.     Plaintiff and Older Workers are now suffering and will continue to suffer irreparable injury as a result of AT&T Mobility Services, LLC's discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

## COUNT II
## VIOLATION OF THE ADEA – FAILURE TO COMPLY WITH THE OWBPA
### (by Plaintiff Alison Ray individually and on behalf of similarly situated Older Workers)

93.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

94.     AT&T Mobility Services, LLC, by the above-described improper and discriminatory acts, has violated the OWBPA.

95.     Plaintiff and Older Workers were not given an OWBPA-compliant release and therefore, they did not release their claims under the ADEA, or waive their right to bring or participate in a collective or representative action under the ADEA.

96.     As a direct and proximate result of AT&T Mobility Services, LLC's violation of the OWBPA, Plaintiff and Older Workers were misled regarding their rights under federal law and/or harmed in the prosecution of their claims under the ADEA.

97.     Plaintiff and Older Workers did not release their ADEA claims nor did they waive their rights under the ADEA to an age discrimination action under the ADEA.

98.     Plaintiff and Older Workers are entitled to declaratory relief, declaring the General Release and Waiver invalid as to all claims and rights under the ADEA.

99.     Plaintiff and Older Workers are entitled to injunctive relief, enjoining and restraining AT&T Mobility Services, LLC from raising the General Release and Waiver as a defense to Plaintiffs and Older Workers' claims.

100.    As a direct and proximate result of AT&T Mobility Services, LLC's violation of the OWBPA, Plaintiff and Older Workers have sustained the injuries set forth herein.

101.    Plaintiff and Older Workers are now suffering and will continue to suffer irreparable injury as a result of AT&T Mobility Services, LLC's discriminatory acts unless and until this Court grants the equitable relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Alison Ray, and against AT&T Mobility Services, LLC:

a)    declaring this action to be an ADEA collective action properly maintained under 29 U.S.C. § 216(b);

b)    requiring Defendant to provide to Plaintiff the names, date of birth, addresses (including e-mail addresses) and telephone numbers of all former employees of Defendant who when age 40 or over were terminated in connection with "Business Case ID 17-350" and who signed a release agreement entitled "GENERAL RELEASE AND WAIVER AT&T INC. SEVERANCE PAY PLAN (NON-CALIFORNIA);"

c)    requiring that notice and opportunity to opt-in be given to all former employees of Defendant who when age 40 or over were terminated in connection with "Business Case ID 17-350" and who signed a release agreement entitled "GENERAL RELEASE AND WAIVER AT&T INC. SEVERANCE PAY PLAN (NON-CALIFORNIA);

d)    declaring the acts and practices complained of herein to be in violation of the ADEA;

e)    declaring the acts and practices complained of herein to be in violation of the OWBPA;

f)      declaring the General Release and Waiver signed by Plaintiff and Older Workers to be invalid and unenforceable;

g)      enjoining and restraining permanently the violations alleged herein;

h)      enjoining and restraining AT&T Mobility Services, LLC from raising the General Release as a defense to Plaintiff's and Older Workers' claims in this matter;

i)      awarding damages to Plaintiff and Older Workers for the past and future economic losses that they have suffered;

j)      awarding liquidated damages to Plaintiff and Older Workers pursuant to the ADEA;

k)      awarding Plaintiff and Older Workers the costs of this action, together with reasonable attorney's fees;

l)      awarding Plaintiff and Older Workers such other damages as are appropriate under the ADEA, OWBPA, and federal and state law; and

m)      granting such other and further relief as this Court deems appropriate.


**CONSOLE MATTIACCI LAW, LLC**


Dated: _____          BY:     _____
                               Susan Saint-Antoine, Esq.
                               Stephen G. Console, Esq.
                               Daniel S. Orlow, Esq.
                               1525 Locust Street, 9th Floor
                               Philadelphia, PA 19102
                               (215) 545-7676
                               Attorneys for Plaintiff, Alison Ray

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALISON RAY<br>Collegeville, PA 19426,<br>*on behalf of herself individually<br>and on behalf of those similarly<br>situated,* | : <br>: <br>: <br>: <br>: | |
| **Plaintiff,** | : | CIVIL ACTION NO. 2:18-03303 |
| **v.** | : | |
| ~~AT&T, INC.~~<br>~~208 S. Akard St.~~<br>~~Dallas, TX 75202,~~ | : <br>: <br>: | **JURY TRIAL DEMANDED** |
| ~~and~~ | : | |
| AT&T MOBILITY SERVICES, LLC.<br>1025 Lenox Park Blvd, NE.<br>Atlanta, GA 30319 | : <br>: <br>: | |
| **Defendants.** | : | |

Formatted: Font: Italic

**FIRST AMENDED CIVIL ACTION COMPLAINT**

I.   **PRELIMINARY STATEMENT**

Plaintiff, Alison Ray, brings this action against her former employers, ~~AT&T, Inc.~~ ~~and~~ AT&T Mobility Services, LLC, alleging violations of the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 621, *et seq.*

Despite her excellent performance throughout twenty-three (23) years of service with Defendants, Plaintiff was terminated on account of her age (49 at the time of termination) as a result of AT&T's company-wide "Workforce 2020" plan to reduce what

it perceived to be an aging workforce.  In connection with her termination as part of a group termination/reduction in force assigned "Business Case ID 17-350," Defendant presented to Plaintiff, and Plaintiff signed, what purported to be a general release and waiver, but which has been determined to violate the OWPBA.

Plaintiff brings this action against Defendant for age discrimination in violation of the ADEA as a collective action pursuant to the ADEA, 29 U.S.C. § 626(b), incorporating section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), on behalf of herself individually and in behalf of those similarly situated, *i.e.*, all former employees of Defendant who when age 40 or over were terminated in connection with "Business Case ID 17-350" and who signed a release agreement entitled "GENERAL RELEASE AND WAIVER AT&T INC. SEVERANCE PAY PLAN (NON-CALIFORNIA)" (referred to hereinafter as "Older Workers").  In that regard, Plaintiff seeks an Order providing that Notice of this lawsuit be given to each Older Worker.  In addition, Plaintiff seeks damages, including back-pay, front-pay, compensatory, liquidated, attorneys' fees and costs, and all other relief that this Court deems appropriate.

## II.   **PARTIES**

1.     Plaintiff Alison Ray is an individual and citizen of the Commonwealth of Pennsylvania, residing therein in Collegeville, PA 19426.

2.     ~~Defendant~~ AT&T, Inc. is a Delaware corporation that is the parent company of Defendant AT&T Mobility Services, LLC.

~~3.     Defendant AT&T, Inc. maintains a principal place of business in the state of Texas.~~

4-3.    Defendant AT&T Mobility Services, LLC is a Delaware limited liability company duly registered to transact business in the Commonwealth of Pennsylvania as a foreign corporation, with a registered agent in Pennsylvania for service of legal process. AT&T Mobility Services, LLC maintains several places of business located throughout the Commonwealth of Pennsylvania, maintains systematic and continuous activity with Pennsylvania such that it is at home in Pennsylvania, and has employed many people in the Commonwealth of Pennsylvania, including Plaintiff.

5-4    Defendant AT&T, Inc., by and through its wholly-owned and controlled subsidiary corporation AT&T Mobility Services, LLC., maintains multiple places of business in Pennsylvania, including the offices at which Plaintiff worked, conducts business through AT&T Mobility Services, LLC, maintains systematic and continuous activity with Pennsylvania such that it is at home in Pennsylvania, and has employed thousands of people in the Commonwealth of Pennsylvania, including Plaintiff.

6-5.    Defendant AT&T, Inc. shares with Defendant AT&T Mobility Services, LLC, *inter alia*, common ownership, management, administrative services, personnel, policies, and employment practices.

7-6.    Defendant AT&T, Inc. and Defendant AT&T Mobility Services, LLC (collectively "Defendants" or "AT&T"), hold themselves out to the public and their employees as part of an AT&T "family of companies" known as "AT&T" which, together and as one entity, employ over 270,000 people.

8-7.    Defendant AT&T, Inc. is the "alter ego" of Defendant AT&T Mobility Services, LLC.

9 8.   ~~Defendant~~ AT&T, Inc. and AT&T Mobility Services, LLC are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise.

10 9.   AT&T, Inc. and AT&T Mobility Services, LLC have employed thousands of people in the Commonwealth of Pennsylvania, including Plaintiff.

11 10. At all times material hereto, ~~Defendants~~ AT&T, Inc. and AT&T Mobility Services, LLC have been engaged in an industry affecting interstate commerce and have acted as "employers" within the meaning of the ADEA.

12 11. At all times material hereto, Plaintiff was an employee of Defendant~~s~~ within the meaning of the ADEA.

13 12. At all times material hereto, AT&T~~Defendants~~ employed more than twenty (20) people.

14 13. At all times material hereto, AT&T ~~Defendants~~ acted by and through their authorized agents, servants, workmen, and/or employees within the course and scope of their employment with ~~Defendants~~ and in furtherance of Defendant's' business.

III.   <u>JURISDICTION AND VENUE</u>

15 14. The causes of action set forth in this Complaint arise under the ADEA, as amended, 29 U.S.C. § 621, *et seq.*

16 15. The District Court has subject matter jurisdiction over Counts I and  II (ADEA) pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. § 1331.

17 16. Venue is proper under 28 U.S.C. § 1391(b).

18 17. On or about March 29, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.   Attached hereto, incorporated herein, and marked as

4

Exhibit "A" is a true and correct copy of the EEOC Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

19. 18. On or about May 7, 2018, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue for Plaintiff's EEOC Charge. Attached hereto and marked as Exhibit "B" is a true and correct copy of that Notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

20. 19. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

21. 20. AT&T Mobility Services, LLC is subject to the personal jurisdiction of this Court because, *inter alia*, the case arises out of or relates to the contacts of AT&T Mobility Services, LLC with the Commonwealth of Pennsylvania. The contacts of AT&T Mobility Services, LLC are continuous and systematic such that AT&T Mobility Services, LLC is at home here, and/or AT&T Mobility Services, LLC has consented to personal jurisdiction by personal service within the state via an authorized agent of the corporation.

~~22.     AT&T, Inc. is subject to the personal jurisdiction of this Court because, *inter alia*, the case arises out of or relates to the contacts of AT&T, Inc. with the Commonwealth of Pennsylvania and the contacts of AT&T, Inc. are continuous and systematic such that AT&T Services, Inc. is at home here.~~

IV.    **FACTUAL ALLEGATIONS**

23. 21. AT&T has a corporate culture of age bias and a public record of egregious age discrimination.

24. 22. AT&T's Chief Executive Officer, Randall Stephenson, has publicly discussed that AT&T has an aging workforce and a need to reinvent the company. *See*

5

*Gearing Up for the Cloud, AT&T Tells Its Workers:    Adapt or Else,*
http://www.nytimes.com, February 13, 2016.  As part of this reinvention, AT&T came up
with a plan to "retool" its aging workforce by the year 2020.  *Id.*

25.23. As part of its plan – variously called "Vision 2020," "Workforce 2020,"
"Workplace 2020" – AT&T has publicly expressed age-based stereotypes and has
acknowledged that those age-based stereotypes are considered in workplace decisions.
*See, e.g., AT&T Prepares for a New World of Work: The Changing Work Force (Part 2),*
https://networkingexchangeblog.att.com/enterprise-business (dividing its workforce by
age, characterizing "Baby Boomers" as the workforce of "Yesterday," expressing without
stated basis what is important to "Baby Boomers" as distinct from "Gen X" and "Gen Y"
workers, explicitly stating that AT&T is taking these age-based stereotypical "factors into
account when planning for our workplace of the future," and stating that by 2015, 90% of
new hires will be from Gen X and Gen Y).

26.24. /AT&T has implemented its age discriminatory "2020" plan by a three-step
"surplus," then termination and fraudulent release scheme.

27.25. AT&T's fraudulent three-step plan has been carried out with the intent to
harm older workers.

28.26. The first step in AT&T's fraudulent three-step scheme is an age-biased
selection process in which certain employees are placed on "surplus" status.

29.27. In the context of AT&T's fraudulent scheme, "surplus" status is distinct from
termination of employment.

30.28. Employees are selected for surplus based on centrally determined,
company-wide, ill-defined and/or subjective criteria in a process infected with age bias.

6

Without limitation, employees are assigned a rating for "skills," however the "skills" supposedly assessed are not those necessary to perform an actual job, but a job of the "future" per "Vision 2020," thus permitting managers to assign ratings based on the ageist stereotype that older workers could not or would not acquire "high tech" skills necessary for these future jobs.

31. 29. In the second step of AT&T's fraudulent plan, workers placed on "surplus" are given the opportunity to find an alternative position. If an employee placed on surplus is unable to find an alternative position within sixty (60) days, their employment is terminated.

32. 30. In the third and final step of its plan, AT&T promises its terminated workers a severance payment in exchange for signing what purports to be a "General Release and Waiver" of claims, *but which AT&T knows is not valid and enforceable as the Release falsely states that terminated workers are giving up their right to bring suit against AT&T under the ADEA.*

33. 31. The General Release and Waiver was designed and prepared by AT&T with the intent to harm older workers.

34. 32. AT&T has intentionally carried out its three-step plan in waves so as to keep its older workers in the dark regarding the intent and effect thereof.

35. 33. The purported General Release and Waiver offered by AT&T, along with its accompanying ADEA Listing, is invalid and unenforceable insomuch as it is not knowing and voluntary, falsely states that it waives the employee's right to bring suit under the ADEA, and fails to comply with various disclosure requirements contained in the OWBPA.

36. 34. The General Release and Waiver offered to terminated workers is

7

fraudulent and unenforceable for the following reasons, without limtiation:

    a.   The General Release and Waiver provides none of the disclosures required for a knowing and voluntary waiver of claims under the ADEA, including the right to bring an age discrimination lawsuit.

    b.   The General Release and Waiver provides no information to terminated workers as to who is actually being terminated and who is being retained.

    c.   The General Release and Waiver provides no meaningful information, in a manner calculated to be understood by the average individual, regarding the criteria used for placing certain employees on surplus status.

    d.   The General Release and Waiver provides no meaningful information, in a manner calculated to be understood by the average individual, regarding the "organization" to which an employee is assigned in the accompanying ADEA Listing.

    e.   The ADEA Listing contains a category entitled "AWG," which is defined therein as "Affected Work Groups."  According to the ADEA Listing, "AWGs" "are comprised of positions at the same level with similar definable characteristics from which the surplus employees are selected.  An AWG may be any portion of an organization, described in terms of level, job title, similar job functions, geography, lines of organization or other definable attributes based on needs of the business. The combined AWGs comprise the Decisional Unit for this

8

business case."

f.   The ADEA Listing purports to describe but in fact does not provide meaningful information as to the AWG category, the basis for employees receiving different AWG numbers, or why those with different AWGs are grouped together for purposes of the ADEA Listing.

g.   Documentation accompanying the General Release and Waiver contains the designation: "PROPRIETARY not for use or disclosure outside AT&T, Inc. and all its wholly owned subsidiaries and controlled companies, except under written permission."   This designation discourages employees on surplus from sharing information with each other or consulting with an attorney and furthers AT&T's fraudulent plan to keep its older workers in the dark regarding the discriminatory nature of their terminations.

37. 35. At all times material hereto, AT&TDefendants knew that the General Release and Waiver was fraudulent, unenforceable, and was intended to harm older workers for the foregoing reasons.

36.    As part of AT&T's 2020 plan with three step "surplus," then termination and fraudulent release scheme, and with the intent and effect of eliminating older employees from its workforce, Defendant underwent a group termination/reduction in force assigned Business Case ID: 17-350.

37.    In connection with the group termination/reduction in force assigned Business Case ID: 17-350, Defendant terminated the employment of Plaintiff and Older Workers because of their age and presented to them a General Release and Waiver

9

(entitled "GENERAL RELEASE AND WAIVER AT&T INC. SEVERANCE PAY PLAN (NON-CALIFORNIA)"), which purported to be a general release and waiver but is not knowing and voluntary, falsely states that it waives the employee's right to bring suit under the ADEA, and fails to comply with various disclosure requirements contained in the OWBPA.

38.    The group termination/reduction in force assigned Business Case ID: 17-350 was centrally planned, part of AT&T's pattern or practice of age discrimination, infected by age discrimination and/or infused with AT&T's top-down corporate culture of age bias.

39.    The group termination/reduction in force entitled Business Case ID: 17-350 was infected by an age discriminatory aspect, *i.e.*, the fact that it entailed obtaining from Plaintiff and Older Workers a General Release and Waiver that violates the ADEA, as amended by the OWBPA.

38.40. Plaintiff was employed by AT&T, Inc. and its controlled subsidiary/payroll company, AT&T Mobility Services, LLC, from May 16, 1994 until the date of her unlawful termination of employment effective January 15, 2018.

39.41. From September of 2011 until the time of her termination in 2018, Plaintiff held the position of Director of Sales.

40.42. Plaintiff reported to Judith Cavalieri (Cavalieri), AT&T Vice President and General Manager - Ohio/Pennsylvania (51[1]).   Plaintiff began reporting to Cavalieri effective April 1, 2016, when she was appointed to her position.

41.43. Prior to reporting to Cavalieri, Plaintiff had reported to Tiffany Baehman,

_____

[1] All ages herein are approximations.

10

Vice President, General Manager of Liberty States (46).

42 44. Plaintiff was a highly qualified and dedicated employee for AT&T Defendants for more than twenty-three (23) years.

43 45. Plaintiff's extensive knowledge, skills, experience, and record of achievement as a successful Director of Sales were recognized by Defendants AT&T.

44 46. By way of example, Plaintiff received annual merit increases and performance-based bonuses.

45 47. For 2014, 2015, and 2016, Plaintiff received overall performance ratings of "fully meets" her business goals.

46 48. As a result of these accomplishments, Plaintiff was called upon by AT&T Defendants to serve as a mentor for team members in her area.

47 49. However, in furtherance of its "Vision 2020" plan, on November 16, 2017, AT&T Defendants notified Plaintiff that the position that she held was being eliminated and that she was being placed on "surplus status."

48 50. On the same day that she received the surplus notification, Plaintiff received a General Release and Waiver of Claims along with an ADEA Listing containing certain information regarding Plaintiff's "Organization."

49 51. The General Release provided to Plaintiff fraudulently purported to release her claims against AT&T, including federal age discrimination claims with respect to her employment and termination of employment.

50 52. As a result of being placed on surplus status, Plaintiff was to remain employed until January 15, 2018, at which time her employment was to be terminated if she had not been selected by AT&T Defendants for, and accepted, another position.

51. 53. In the General Release provided to Plaintiff, AT&TDefendants affirmatively and falsely represented to Plaintiff that, at the time of her termination, it had provided to her the ages and job titles of those "designated to participate in the [AT&T, Inc. Severance Pay Plan]." AT&T knew this to be false. The AT&T, Inc. Severance Pay Plan required, as a condition of eligibility, that its participants had to have actually been terminated from employment.

52. 54. Accordingly, the General Release provided to Plaintiff affirmatively and falsely represented to her that, at the time of her termination, it had provided to her the ages and job titles other employees who had been placed on surplus status *and* terminated.

53. 55. However, as of November 16, 2017, the date of the General Release, no one identified on the ADEA Listing was actually eligible for participation in the Severance Plan because none of those employees had yet been terminated. In fact, some employees who had been placed on surplus status along with Plaintiff were able to find other positions at AT&T within the sixty (60) day period.

54. 56. Thus, contrary to the affirmative and false representation contained in the General Release, AT&T *did not*, and *could not have*, informed Plaintiff which employees were eligible for participation in the plan.

55. 57. Further, the General Release given to Plaintiff provided no information explaining the specific criteria relied up in Plaintiff's selection for surplus status. Without providing any additional information, the General Release and Waiver simply stated the following: "The considerations when designating eligible employees for company initiated involuntary termination and participation in the AT&T Inc. Severance Pay Plan include

12

some or all of the following: business needs, criticality of skills, job performance, role elimination, geographic location, and/or employee preference for displacement ('interest in leaving')."

56.58. According to the criteria identified by AT&T for placing Plaintiff on surplus status, the reasons for Plaintiff's surplus notification could have been any conceivable business-related reasons.

57.59. The "ADEA Listing" provided to Plaintiff was for an "Organization" identified as "Mobility Retail Sales and Service – East Region Jennifer Van Buskirk Region President – Large Business."   There was no information explaining what this "Organization" identification meant, and no information provided as to how this Organization was determined or who was assigned to it.

58.60. The ADEA Listing provided to Plaintiff does not indicate why Plaintiff was assigned to a certain AWG 12 and why others were assigned different AWG numbers.

59.61. The ADEA Listing provided to Plaintiff failed to provide required information and disclosures regarding the numbers of employees in Plaintiff's Decisional Unit.

60.62. The ADEA Listing provided to Plaintiff also contained a category entitled "IIL."  The ADEA Listing defines "IIL" as "Interest in Leaving," which, according to the ADEA Listing "is a process used in some business cases that invites employees to express their interest in terminating their employment with eligibility for severance benefits.  Employees expressing IIL may or may not be selected based on needs of the business, and employees who have not expressed IIL may nevertheless be selected for surplus based on other criteria such as performance, experience, skills and training."

61.63. The ADEA Listing provided to Plaintiff purports to but in fact does not

provide meaningful information regarding this category.

62 64. January 15, 2018 marked the commencement of the sixty (60) day period for Plaintiff to consider the General Release and Waiver.

63 65. The ADEA Listing provided to Plaintiff on November 16, 2017 was not given to her at the commencement of the General Release and Waiver consideration period as explicitly required by the OWBPA.

64 66. As a result of the foregoing, the General Release provided to Plaintiff was not valid and enforceable insomuch as Defendants AT&T fraudulently induced Plaintiff to sign the General Release while hiding from her information critical to an assessment of whether or not her termination was the result of age discrimination.

65 67. AT&TDefendants has have stated that Plaintiff was placed on surplus status because her position was being eliminated.  This stated reason for placing Plaintiff on surplus is merely a pretext for age discrimination.

66 68. Following Plaintiff's placement on surplus status there remained at least twenty-two (22) Director of Sales positions in Plaintiff's "Organization."

67 69. Further, there remained the following Directors of Sales who performed the same function as Plaintiff, including at least five (5) who reported to Cavalieri and worked in the same region as Plaintiff:  Linda Gill (30, with two (2) years as Director of Sales); Eric Decker (33, with six (6) months as Director of Sales); Emily Wiper (34, with eight (8) months as Director of Sales); Giovanni Quiros (36, with three (3) years as Director of Sales); and Kevin Kuhn (40, with nine (9) months as Director of Sales).

68 70. The average age of those included in Plaintiff's "Organization" was 41.31. The average age of the employees in the Organization selected for surplus was 46.14.

14

69.71. Per the ADEA Listing, of the eight (8) individuals assigned to "AWG 12," Plaintiff was one (1) of two (2) selected for surplus by AT&TDefendants.  Of the eight (8) employees assigned to AWG 12, the two (2) employees, including Plaintiff and an employee older than Plaintiff, who were selected for surplus, were the two (2) oldest employees in AWG 12.   Of the remaining six (6) individuals in AWG 12 that AT&TDefendants did not select for surplus status, all were younger than Plaintiff, including some who were substantially younger (including three (3) individuals in their thirties (30s)).

70.72. Based on, *inter alia,* Plaintiff's knowledge, skills, and outstanding track record with AT&TDefendants, including in particular as a Director of Sales, Plaintiff was at least as, or better, qualified than all of the employees, including the three (3) substantially younger employees, in AWG 12 who were not selected for surplus.

71.73. Per the ADEA Listing, there were twenty-nine (29) people who held Director of Sales positions in the Organization, only seven (7) of whom were selected for surplus. The Directors of Sales selected for surplus were ages 31, 43, 46, 47, 49, 50, and 51. Plaintiff was older than twenty-one (21) individuals who held a Director of Sales position in the Organization, including several individuals younger than forty (40), each of whom was not selected for surplus and was retained by AT&T.

72.74. Based on, *inter alia,* Plaintiff knowledge, skills, and outstanding track record with AT&TDefendants, including in particular as a Director of Sales, Plaintiff was at least as, or better, qualified than all of the employees, including the seventeen (17) younger employees, who held that position and were not selected for surplus.

73.75. Based on, *inter alia*, Plaintiff's last formal performance appraisal in which

15

Plaintiff received an overall score of "Fully Meets," and a leadership rating of "Exceeds," and the recognition by AT&T of Plaintiff's outstanding performance, results and positive contributions to the company over a more than twenty-three (23) year career, any fair and unbiased assessment of the criteria on which individuals were to have been rated and ranked for surplus selection purposes (business needs, criticality of skills, job performance, role elimination, geographic location, and/or employee preference for displacement), would not have resulted in Plaintiff being selected for surplus status.

74. 76.  As of the termination of Plaintiff's employment on January 15, 2018, Plaintiff was instructed to consider signing the General Release and Waiver in exchange for a severance payment.

75. 77.  As of January 15, 2018, no suitable replacement positions at the Director level were available for Plaintiff to apply to.

76. 78.  AT&T Defendants terminated Plaintiff's employment effective January 15, 2018.

77. 79.  Plaintiff signed and returned the General Release and Waiver on or about January 16, 2018.

78. 80.  The General Release and Waiver signed by Plaintiff is invalid and unenforceable as to her ADEA claims insomuch as it provides none of the disclosures required for a knowing and voluntary waiver of claims under the ADEA.

81.    The surplus notification, General Release and Waiver, ADEA Listing and other documents provided by Defendant to Plaintiff in connection with her selection for surplus and termination were uniform, standard form documents that were also provided to Older Workers in connection with their termination of employment as part of the group

16

termination/reduction in force assigned "Business Case ID: 17-350."

82.    The group termination/reduction in force assigned "Business Case ID: 17-350" was centrally planned, centrally coordinated, and uniformly implemented.

83.    The group termination/reduction in force assigned "Business Case ID: 17-350" used processes that were centrally planned, standard and uniform.

84.    Plaintiff and Older Workers are similarly situated in that, among other things, they were the victims of AT&T's age discriminatory 2020 plan and three step "surplus," then termination and fraudulent release scheme, who were terminated as part of Business Case ID: 17-350, a group termination/reduction in force infected by age discrimination, including, but not limited to, the fact that it entailed obtaining from Plaintiff and Older Workers a General Release and Waiver that violates the ADEA, as amended by the OWBPA.

79 85. As a direct and proximate result of the discriminatory conduct of AT&T Defendants, Plaintiff and Older Workers have has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

**COUNT I**
**VIOLATION OF THE ADEA – (SURPLUS SELECTION AND TERMINATION)**
**(by Plaintiff Allison Ray individually and on behalf of similarly situated Older Workers)**

> Formatted: No underline

80 86. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

81 87. AT&T Mobility Services, LLC Defendants intentionally discriminated against Plaintiff and Older Workers because of theirher age.

17

82.88. ~~Defendants~~ AT&T Mobility Services, LLC has~~have~~ violated the ADEA by committing the foregoing acts of discrimination as alleged herein, including, without limitation selecting Plaintiff and Older Workers for "surplus" in November 2017, and/or terminating their ~~her~~ employment effective thereafter o~~in or before~~ January 15, 2018.

83.89. As a direct result of ~~Defendants~~ AT&T Mobility Services, LLC's discriminatory conduct, Plaintiff and Older Workers have ~~has~~ in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which are~~is~~ not known at this time.

84.90. ~~Defendants'~~ AT&T Mobility Services, LLC's violations of the ADEA were intentional and willful under the circumstances and warrant the imposition of liquidated damages.

85.91. As a direct and proximate result of ~~Defendants'~~ AT&T Mobility Services, LLC's violations of the ADEA, Plaintiff and Older Workers have ~~has~~ sustained the injuries, damages, and losses set forth herein.

86.92. Plaintiff and Older Workers are ~~is~~ now suffering and will continue to suffer irreparable injury as a result of ~~Defendants'~~ AT&T Mobility Services, LLC's discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

**COUNT II**
**VIOLATION OF THE ADEA – FAILURE TO COMPLY WITH THE OWBPA**
**(by Plaintiff Alison Ray individually and on behalf of similarly situated Older Workers)**

87.93. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

18

88.94. DefendantsAT&T Mobility Services, LLC, by the above-described improper and discriminatory acts, hasve violated the OWBPA.

89.95. Plaintiff and Older Workers were was not given an OWBPA-compliant release and therefore, they she did not release their her claims under the ADEA, or waive their her right to bring or participate in a collective or representative action under the ADEA.

90.96. As a direct and proximate result of DefendantsAT&T Mobility Services, LLC's' violation of the OWBPA, Plaintiff and Older Workers were was misled regarding their her rights under federal law and/or harmed in the prosecution of their her claims under the ADEA.

91.97. Plaintiff and Older Workers did not release their her ADEA claims nor did they she waive their her rights under the ADEA to an age discrimination action under the ADEA.

92.98. Plaintiff and Older Workers are is entitled to declaratory relief, declaring the General Release and Waiver invalid as to all claims and rights under the ADEA.

93.99. Plaintiff and Older Workers are is entitled to injunctive relief, enjoining and restraining Defendants AT&T Mobility Services, LLC from raising the General Release and Waiver as a defense to Plaintiffs and Older Workers' claims.

94.100.    As a direct and proximate result of DefendantsAT&T Mobility Services, LLC's ' violation of the OWBPA, Plaintiff and Older Workers have has sustained the injuries set forth herein.

95. 101.        Plaintiff and Older Workers are is now suffering and will continue to suffer irreparable injury as a result of Defendants'AT&T Mobility Services, LLC's discriminatory acts unless and until this Court grants the equitable relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Alison Ray, and against DefendantsAT&T Mobility Services, LLC:

a)     declaring this action to be an ADEA collective action properly maintained under 29 U.S.C. § 216(b);

b)     requiring Defendant to provide to Plaintiff the names, date of birth, addresses (including e-mail addresses) and telephone numbers of all former employees of Defendant who when age 40 or over were terminated in connection with "Business Case ID 17-350" and who signed a release agreement entitled "GENERAL RELEASE AND WAIVER AT&T INC. SEVERANCE PAY PLAN (NON-CALIFORNIA);"

c)     requiring that notice and opportunity to opt-in be given to all former employees of Defendant who when age 40 or over were terminated in connection with "Business Case ID 17-350" and who signed a release agreement entitled "GENERAL RELEASE AND WAIVER AT&T INC. SEVERANCE PAY PLAN (NON-CALIFORNIA);

a)d)    declaring the acts and practices complained of herein to be in violation of the ADEA;

b)e)    declaring the acts and practices complained of herein to be in violation of the OWBPA;

c)f)    declaring the General Release and Waiver signed by Plaintiff and Older Workers to be invalid and unenforceable;

20

d)g)    enjoining and restraining permanently the violations alleged herein;

e)h)    enjoining and restraining Defendants AT&T Mobility Services, LLC from raising the General Release as a defense to Plaintiff's and Older Workers' claims in this matter;

f)i)    awarding damages to Plaintiff and Older Workers for the past and future economic losses that they have she has suffered;

g)j)    awarding liquidated damages to Plaintiff and Older Workers pursuant to the ADEA;

h)k)    awarding Plaintiff and Older Workers the costs of this action, together with reasonable attorney's fees;

i)l)    awarding Plaintiff and Older Workers such other damages as are appropriate under the ADEA, OWBPA, and federal and state law; and

j)m)    granting such other and further relief as this Court deems appropriate.


**CONSOLE MATTIACCI LAW, LLC**


Dated: _____            BY:    _____
                                 Susan Saint-Antoine, Esq.
                                 Stephen G. Console, Esq.
                                 Daniel S. Orlow, Esq.
                                 1525 Locust Street, 9th Floor
                                 Philadelphia, PA 19102
                                 (215) 545-7676
                                 Attorneys for Plaintiff, Alison Ray