IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALISON RAY, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| AT&T MOBILITY SERVICES, LLC, | : | No. 18-3303 |
| | : | |
|     Defendant. | | |

# ORDER

AND NOW, on December 9, 2021, upon consideration of the parties' oral arguments on November 19, 2021 and letters dated November 29, 2021 and November 30, 2021, it is ORDERED that:

1. On November 19, 2021, the jury returned a verdict in favor of Ray, finding by a preponderance of the evidence that: (1) Ray's age was a determinative factor in AT&T's decision to select her during its reduction in force/surplus and terminate her employment, and (2) AT&T either knew or showed reckless disregard for whether its selection of Ray during the reduction in force/surplus and termination of her employment was prohibited by law. As counsel agreed during the final pretrial conference on October 26, 2021, I will determine damages. See 10/28/2021 Order (doc. 139), ¶ 1.

2. Under the Age Discrimination in Employment Act (ADEA), Ray may receive back pay, liquidated damages, and front pay. See Blum v. Witco Chem. Corp., 829 F.2d 367, 373-74, 382-83 (3d Cir. 1987); Maxfield v. Sinclair Int'l, 766 F.2d 788, 796 (1985); 29 U.S.C. § 626(b).

3. First, AT&T claims that Ray failed to mitigate damages. See AT&T Letter, dated Nov. 29, 2021 (doc. 164); Maxfield. 766 F.2d at 794, n.5 ("[T]he ADEA does require mitigation of damages and [courts] have consistently deducted interim earnings from backpay awards.") (citations omitted); Newtown v. Pa. State Police, No. 18-1639, 2021 WL 4596448, at *2 (W.D.

Pa. Oct. 6, 2021) ("Recovery of back pay or front pay is not unlimited, and a plaintiff is obligated to mitigate damages."); see also, Caufield v. Ctr. Area Sch. Dist., 133 F. App'x 4, 10 (3d Cir. 2005) ("[M]itigation is a claimant's duty that arises at the damage stage of a discrimination case when the amount is determined."). I previously ruled that AT&T did not show by a preponderance of the evidence that Ray failed to mitigate. Trial Tr. (doc. 159) 139:1-142:7 ("Ms. Ray did everything more than most people do in trying to find another job, a comparable job, either marketing or sales. She went to work immediately in the same year. And to suggest that after she was . . . [so-called] surplused, let's call it fired, that she would then on her own seek out other opportunities in the same company that just fired her, with the same people that just fired her is completely unrealistic. . . . I think she did an extensive job search. She participated in the search process through the process AT&T creates for furloughed employees, and also did jobs on her own such as applying for the Phillies, and she went out to work for Century Link at like 40 percent of the salary she was making. . . . I believe it's a reasonable inference that Ms. Ray did not fail to mitigate simply because she didn't reapply for a job that she didn't even know was open."); see Anastasio v. Schering Corp., 838 F.2d 701, 707 (3d Cir. 1988) (defendant has burden of proving that the plaintiff failed to mitigate damages). I decline AT&T's suggestion that I reconsider that ruling. See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (reconsideration available when the movant demonstrates at least one of three following situations: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice") (citation omitted).

4.       Next, the parties agree that Ray is entitled to back pay but disagree on the amount. See Ray Letter, dated Nov. 29, 2021 (doc. 163); AT&T Letter; Ray Reply Letter, dated Nov. 30, 2021 (doc. 165). Back pay "compensates the plaintiff for loss of past wages[.]" Blum, 829 F.2d at 373. It constitutes "the difference between the salary an employee would have received but for a violation of the ADEA, less severance pay, and the salary actually received from other employment." Berndt v. Kaiser Aluminum & Chem. Sales, Inc., 604 F. Supp. 962, 964 (E.D. Pa. 1985). A back pay award should not be offset by pension plan payments. Maxfield, 766 F.2d at 794-95. The relevant calculation period "begins with wrongful termination and ends at the time of trial." Blum, 829 F.2d at 373 (citing Berndt, 604 F. Supp. at 964); see also EEOC v. Unitek, USA, LLC, No. 08-4592, 2010 WL 1626617, at *1 (E.D. Pa. Apr. 19, 2010) (citing Model Jury Instruction 8.4.2 ("Back pay damages, if any, apply from the time [plaintiff] was [describe adverse employment action] until the date of . . . verdict.")).

5.       Ray's lost earnings through the date of the verdict total $565,809, including an annual pension contribution of $9,524. See Ray Letter, at 1. The parties also agree that Ray received $68,991 in severance in consideration for signing AT&T's "General Release." See id. Offsetting the severance payment, Ray is entitled to **$496,818** in back pay.[1]

---

[1] Ray argues that the severance payment should not be offset from the amount recoverable in back pay. She claims that "AT&T received valuable consideration for the payment in the form of her release of her age discrimination claim under the [Pennsylvania Human Rights Act], which would have entitled her to compensatory damages for pain and suffering, and thus the amount should not serve as an offset to the backpay award." Ray Letter, at 1; see AT&T Severance Pay Plan (doc. 13-5, ex. 4); General Release and Waiver, AT&T Inc. Severance Pay Plan (Non-California) (doc. 13-5, ex. 8). And offsetting the amount paid to her through the severance plan from her award of back pay relies on caselaw that predates the Older Workers Benefit Protection Act ("OWBPA") and "would constitute a windfall to [AT&T] and undercut the purposes of the ADEA." Ray Reply Letter, at 1-2; see, e.g., Berndt v. Kaiser Aluminum & Chem. Sales, Inc., 604 F. Supp. 962, 964 (E.D. Pa. 1985) (pre-OWBPA case

3

requiring severance payments to be offset from back pay award).  She urges that I view her severance payment as a collateral benefit, such as pension plan benefits or unemployment compensation, that typically are not deducted from the back pay award.  See Ray Reply Letter, at 1-2.  I disagree.

The ADEA "was enacted . . . to further the dual goals of compensating discrimination victims and deterring employers from practicing discrimination."  Long v. Sears Roebuck & Co., 105 F.3d 1529, 1541 (3d Cir. 1997).  Although "[a]n ADEA claimant is entitled to be made whole for losses sustained as a result of a wrongful termination," they are "generally not entitled to a recovery in excess of make-whole damages."  Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1100 (3d Cir. 1995); see also McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 362 (1995) ("Resolution of . . . [the] question [of back pay] must give proper recognition to the fact that an ADEA violation has occurred which must be deterred and compensated without undue infringement upon the employer's rights and prerogatives.  The object of compensation is to restore the employee to the position he or she would have been in absent the discrimination[.]") (citation omitted).

In 1990, Congress amended the ADEA with the OWBPA, which imposed, inter alia, requirements on employers seeking a release of ADEA claims.  See Oubre v. Entergy Ops., Inc., 522 U.S. 422, 426-27 (1998).  Post-OWBPA litigation saw employers argue that a plaintiff who had received a severance payment in exchange for a release of claims (including federal and state law claims) must tender back the severance payment upon a subsequent finding that the ADEA-portion of the release was ineffective under OWBPA, otherwise the plaintiff's retention of the severance payment served to ratify the release and thus precluded bringing an ADEA claim.  See Oubre, 522 U.S. at 428; Long, 105 F.3d at 1537-38.  The Court in Long rejected that reasoning, holding that "neither ratification nor tender back was meant to apply in the ADEA context."  Long 105 F.3d at 1537.  The Court declined to entertain the argument that an employee, by retaining the severance payment, would "receive a 'double recovery' by first accepting a severance payment and later winning a judgment," because "[a]n employer found liable will be entitled to a *set-off of any severance benefits paid*."  Id. at 1543 (emphasis added) (citing Oberg v. Allied Van Lines, Inc., 11 F.3d 679, 684 (7th Cir. 1993)); see also Oubre, 522 U.S. at 428 (holding that an employee's retention of a severance payment did not "amount to a ratification equivalent to a valid release of her ADEA claims, since the retention did not comply with the OWBPA any more than the original release did").

Rejecting a severance set-off would be inconsistent with the reasoning in Long.  Although Ray relinquished her state law claims as part of her severance agreement (which could have resulted in an award of compensatory damages far exceeding the amount that she received as part of her severance plan), failing to offset the back pay by an amount equal to the severance payment would result in the "double recovery" that the Court in Long rejected and would frustrate the objectives of the ADEA and OWBPA.  See Long, 105 F.3d at 1543; see, e.g., Rangel v. El Paso Nat. Gas Co., 996 F. Supp. 1093, 1098-99 (D.N.M. 1998) (not requiring tender back of a severance payment in exchange for offsetting it from the damages award); but see

4

6. The parties do not dispute that Ray is entitled to liquidated damages. Ray Letter, at 1. Liquidated damages apply "in cases of willful violations." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125, 128 (1985) (defining a violation to be "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA") (citation omitted); see Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1099 (3d Cir. 1995) (citation omitted). The jury made such a finding. See Verdict Slip (doc. 156); Thurston, 469 U.S. at 128. Ray is entitled to liquidated damages of **$496,818**. See Blum, 829 F.2d at 382 ("Liquidated damages are described as an amount equal to the amount deemed to be 'unpaid minimum wages or . . . unpaid overtime compensation'" – i.e., back pay – and "no court of appeals has allowed front pay (or front benefits) to be included in the liquidated damage calculation[.]") (citing Fair Labor Standards Act, 29 U.S.C. § 216(b) (incorporated by reference in ADEA, 29 U.S.C. § 626(b))).

7. Finally, "back pay coupled with reinstatement is the preferred remedy to avoid future damages in ADEA cases." Blum, 829 F.2d at 373 (citing Maxfield. 766 F.2d at 796). But when reinstatement is not possible, due to, for example, "irreparable animosity between the parties or . . . a reduction in the employer's work force," an award of front pay is necessary "to make the plaintiff whole for future expected losses." Id. at 373-74 (citing Maxfield. 766 F.2d at

---

Kulling v. Grinders for Indust., Inc., 185 F. Supp. 2d 800, 815 (E.D. Mich. 2002) (declining to offset plaintiffs' back pay award by the severance payments because, applying Howlett v. Holiday Inns, Inc., 120 F.3d 598, 602 (6th Cir. 1997), a pre-Oubre case, it "need not attempt the near-impossible task of apportioning Plaintiffs' severance payments among their ADEA and other potential claims, and then determining the appropriate amounts to setoff against the back pay damages Plaintiffs have been awarded under the ADEA").

796). I have already found that reinstatement is not possible based on AT&T's actions.[2]  See Hearing Tr. 139:6-10.  To calculate front pay, I must consider "the expected future damages caused by defendant's wrongful conduct from the date of judgment to retirement."  Blum, 829 F.2d at 374.

8.	The parties agree that the difference between Ray's final annual earnings at AT&T and her most recent annual earnings in her current employment is $112,975.  They disagree as to the amount of Ray's future earnings, which Ray calculates as $1,260,059 (based on her current age of 53 years, and a retirement age of 65 years).  According to AT&T, the front pay award:  (1) is "outsized" and "does far more than reestablish her place in the job market"; (2) does not take into account her decision to "pursue a career in marketing," rather than remain in sales, following the surplus; (3) incorporates a speculative annual compensation rate; and (4) neglects to account for the likelihood that she would retire before the age of 65.  AT&T Letter, at 1-2.

9.	AT&T's arguments  simply recast its mitigation arguments, which I have already rejected.  See Trial Tr. at 139:1-142:7.  Ray credibly testified that she plans to retire at the age of 65, see Trial Tr. 122:5-10, and I found that she "did everything more than most people do in trying to find another job, a comparable job, either marketing or sales," id. 139:3-5.  Her mitigation allays any concerns that the award is unjustified or speculative.  See Maxfield, 766 F.2d at 796 ("[A]n award for future lost earnings is no more speculative than awards for lost earning capability routinely made in personal injury and other types of cases.  The plaintiff's

---

[2] To the extent that AT&T suggests that I should reconsider my finding as to reinstatement, see AT&T Letter, at 2, I decline.  See Max's Seafood Café, 176 F.3d at 677.

duty to mitigate damages should serve as an effective control on unjustified damage awards.") (citation omitted).  Ray is entitled to **$1,260,059** in front pay.

    10.    Ray is entitled to the damages totaling $2,253,695comprised of:

    a.  Back Pay:  $496,818;

    b.  Liquidated Damages:  $496,818;

    c.  Front Pay:  $1,260,059; and

    d.  The Clerk is directed to enter judgment for Ray totaling **$2,253,695**.

                          BY THE COURT:

                          */s/Timothy R. Rice*
                          TIMOTHY R. RICE
                          U.S. MAGISTRATE JUDGE