**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|   |   |   |
|---|---|---|
| **ALISON RAY** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 18-3303** |
| | : | |
| **v.** | : | |
| | : | **Magistrate Judge Timothy R. Rice** |
| **AT&T MOBILITY SERVICES, LLC** | : | |
| | : | |
| **Defendant.** | : | |

_____

## PLAINTIFF ALISON RAY'S PETITION FOR ATTORNEY'S FEES AND COSTS

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

By:   _/s/ Susan Saint-Antoine, Esq._
         Susan Saint-Antoine, Esquire
         Laura C. Mattiacci, Esquire
         Stephen G. Console, Esquire
         Daniel Orlow, Esquire
         1525 Locust Street
Dated: February 18, 2022         Philadelphia, PA 19102

## I.    INTRODUCTION.

After several years of hard fought litigation against one of the world's largest corporations represented by top-shelf counsel, Plaintiff, Alison Ray, achieved a complete and total victory on her claims against Defendant, AT&T Mobility Services, LLC. ("AT&T"), for its willful violation of the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA").   On November 19, 2021, after a five day trial, the jury returned a verdict in favor of Ms. Ray, finding by a preponderance of the evidence that: (1) Plaintiff's age was a determinative factor in AT&T's decision to select her during its reduction in force/surplus and terminate her employment, and (2) AT&T either knew or showed reckless disregard for whether its selection of Ms. Ray during the reduction in force/surplus and termination of her employment was prohibited by law.  ECF 156.  On December 9, 2021, the Court determined that Plaintiff was entitled to back pay of $496,818, liquidated damages of $496,818, and front pay of $1,260,059; judgment was entered for Plaintiff in the amount of $**2,253,695**. ECF 165.

As a prevailing plaintiff under the ADEA, and in accordance with the Court's December 20, 2022 Order (ECF 167), Plaintiff now seeks an award of $847,945 in reasonable attorney's fee for services performed and $38,643.86 for reasonable costs incurred through February 14, 2022 (the date upon which she filed her Opposition to Defendant's Motion for Judgment As A Matter of Law (ECF 171)).

## II.    ALISON RAY IS ENTITLED TO HER REASONABLE ATTORNEY'S FEES AND COSTS AS A PREVAILING PLAINTIFF UNDER THE ADEA.

### A. Attorney's Fee Award To A Prevailing Party Is Mandatory Under The ADEA And Crucial To Incentivize "Private Attorney Generals" To Vindicate Important Civil Rights.

Statutory fee shifting provisions are essential to the vindication of important civil rights.

*See, e.g., Student Pub. Interest Research Group of New Jersey v. AT&T Bell Labs,* 842 F.2d

1436, 1449-50, n. 13 (3d Cir. 1988); *City of Riverside v. Rivera,* 477 U.S. 561, 576 (1986). Reimbursement of fees is crucial to attracting dedicated and talented attorneys to pursue what are often difficult cases with relatively modest potential recoveries on behalf of individuals against defendants with resources sufficient to fund a vigorous and lengthy litigation.  *See, e.g., id.* The ADEA provides for an award of reasonable attorney's fees and expenses to a prevailing plaintiff. 29 U.S.C. § 626(b)(referencing 29 U.S.C. § 216(b)).   Under the ADEA, which incorporates the fee-shifting provision of the Fair Labor Standards Act, the award is <u>mandatory</u>.  29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action.").

Console Mattiacci Law, LLC ("CML") vindicated Alison Ray's statutorily protected right against age discrimination by her employer, AT&T, through <u>excellent advocacy</u> in a case that was difficult to win and hard fought at every turn by a corporate giant that never offered a dime to resolve it.  As the Court will recall, AT&T selected Ms. Ray during its surplus/reduction in force and terminated her employment, and then secured from her what purported to be a "General Release."  Her case was especially challenging in at least three respects:  First, unless invalidated, the "General Release" would be a bar to her suit.  Notably, the grounds upon which the Court invalidated the "General Release" under the ADEA were said by the Court to be an issue of first impression in the Third Circuit.  *See* ECF 42 (denying AT&T's motion for reconsideration but granting its request for certification of interlocutory appeal).  Second, demonstrating pretext in a reduction in force where there are what appear to be facially neutral selection criteria requires extensive factual investigation and discovery.  Third, AT&T is a giant corporation of vast resources with a demonstrated history contentious litigation.

CML took on Ms. Ray's case on a contingency fee basis[1] when likely few firms would or could.  Having prevailed on her age discrimination claim, Plaintiff is entitled under the ADEA to a reasonable attorney's fee to be paid by the defendant, AT&T, and the costs of the action.  29 U.S.C. § 626(b)(incorporating 29 U.S.C. § 216(b)).

**B.     Plaintiff Is Entitled To The Full Lodestar Of Attorney Fees ($847,945).**

In civil rights cases, courts use the "lodestar" formula to calculate attorney's fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, which is presumed to be a reasonable fee.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rode v. Dellaciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)(citing *Blum v. Stenson*, 465 U.S. 886, 897 (1994)).  "[W]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *McGuffey v. Brink's, Inc.,* 598 F. Supp. 2d 659, 674 (E.D. Pa. 2009)(quoting *Hensley*, 461 U.S. at 435).

Plaintiff obtained excellent results, indeed a complete and total victory on her age discrimination claims against AT&T:

- Plaintiff defeated AT&T's 2018 motion for summary judgment based on the "General Release," and successfully obtained summary judgment in her favor on Count II of her complaint, invalidating AT&T's "General Release" under the ADEA for failure to comply with the informational requirements of the OWBPA ( ECF 29);

- Plaintiff defeated AT&T's petition for interlocutory appeal to the Third Circuit Court of Appeals;

- Plaintiff defeated AT&T's motion to amend its Answer to assert a counterclaim against her for breach of contract and attorney's fees (see ECF 85);

---

[1] CML offered to represent Ms. Ray on a hourly fee basis charging its usual and customary rates or on a contingency fee basis by which Ms. Ray, in the event of a recovery, agreed to pay CML an attorney's fee of the greater of a) the amount of a court award or settlement of attorney's fees or b) 40% of any gross proceeds received (including any award or settlement of attorney's fees). *See* Declaration of Stephen G. Console (attached hereto as Exhibit 4) at ¶15.  Ms. Ray chose the contingency fee agreement.  *Id.*

- Plaintiff defeated AT&T's 2020 motion for summary judgment (see ECF 145);

- After a five day trial, the jury entered a unanimous verdict in her favor, finding that Plaintiff's age was a determinative factor in AT&T's decision to select her during its reduction in force/surplus and terminate her employment, and that AT&T either knew or showed reckless disregard for whether its selection of her was prohibited by law (see ECF 156); and

- The Court entered judgment in her favor and directed the entry of the entirety of her claimed back pay loss (save for an offset of severance received), liquidated damages, and the full measure of front pay damages she sought (ECF 165).

Plaintiff seeks payment of reasonable attorney's fees as determined by CML's lodestar calculation of hours reasonably worked to achieve the excellent result multiplied by CML's reasonable hourly rates as set forth in its fee agreement with Ms. Ray.  Computerized printouts setting forth the work performed by CML (by attorney, and in chronological order) for which it now seeks reimbursement are submitted herewith as Exhibit 1 (organized by attorney) and Exhibit 2 (organized in chronological order). [2]

CML's lodestar calculation based on that work is summarized as follows:

---

[2] CML has exercised billing judgment and does not seek reimbursement for all of the time that was spent working on this case.  Some billing entries have been deleted so that Exhibit 1 reflects only the time for which Plaintiff seeks reimbursement.  *See* Declaration of Stephen G. Console (Ex. 3) at ¶29; Declaration of Susan M. Saint-Antoine (Ex. 5) ¶18.  Moreover, the rates for which CML seeks reimbursement are the hourly rates set forth in the firm's agreement with Ms. Ray without annual increases, and are thus less than the firm's current hourly rates.

| Attorney (As Referenced In Time Entries) | Year began practicing | Hours worked | Hourly rate | Lodestar |
|---|---|---|---|---|
| Stephen G. Console, Principal ("SGC") | 1982 | 37.1 | $900 | $33,390 |
| Laura C. Mattiacci, Member ("LCM") | 2002 | 317.7 | $730 | $231,921 |
| Susan Saint-Antoine, Partner ("SSA") | 1989 | 348.5 | $730 | $256,230 |
| Daniel S. Orlow, Associate Attorney ("DSO" | 2011 | 902.8 | $320 | $288,896 |
| Julie A. Uebler, Attorney ("JAU"" | 1993 | 30.5 | $460 | $14,030 |
| Emily Derstine-Friesen, Attorney ("EDF") | 2016 | 19.8 | $220 | $4,356 |
| Anna Norman, Associate Attorney ("ADN") | 2017 | 30.9 | $220 | $6,798 |
| Ortal Mendalawe, Associate Attorney ("OTM") | 2018 | 47.4 | $260 | $12,324 |
| **Total** | | **1,734.7** | | **$847,945** |

The reasonableness of CML's lodestar amount is supported by, *inter alia,* the accompanying declarations of CML attorneys Console, Mattiacci, Saint-Antoine, and Orlow (submitted herewith as Exhibits 3, 4, 5, and 6, respectively), and the declarations submitted by highly regarded employment lawyers in the Philadelphia area Alice Ballard, Robert Davitch, Joe Tucker, and Sid Gold (Exhibits 7, 8, 9, and 10, respectively).

As set forth more fully below, the hours expended by CML were reasonable and necessary to win this extremely challenging and hard fought case, and the rates charged for doing so are reasonable.

1. **Plaintiff Seeks Compensation For A Reasonable Number Of Attorney's Hours Expended.**

A plaintiff is entitled to compensation for all hours reasonably expended by counsel on the litigation. *See Hensley*, 461 U.S. at 434.   The complexity and duration of the litigation are factors that the court may consider in determining whether the number of hours expended is reasonable. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 197 (3d Cir. 2000).  This case was lengthy, hard fought, and complex.   <u>CML's attorneys worked tenaciously over a three and half year period to vindicate Ms. Ray's statutorily protected right against age discrimination by her employer, AT&T</u>.  The hours CML expended in this case were reasonable because the firm did what was necessary to win it.

a. **CML staffed this complex and difficult case against giant AT&T according to what was necessary to win it.**

CML is a boutique employee rights firm that allocates work among its legal staff in a way so as to ensure excellent representation in an efficient manner.  Console Declaration at ¶13.  The firm's founder and principal attorney, Stephen Console, oversees each case and offers input especially into its initial assessment, strategy and negotiations. *Id.* at ¶14.  Each case is staffed according to its need. *Id.* at ¶13.  The level of experience of the attorneys assigned depends on several factors including the complexity and difficulty of the case. *Id.* at ¶14.  If it is necessary to try a case in court, the firm devotes great resources to what is considered in today's legal world to be an unusual event requiring unique talent and specialized skills. *Id.*  If warranted, the case will be tried by firm Member Laura Mattiacci, the firm's designated lead trial counsel for its most significant cases. *Id.*

CML's case staffing according to particular skills <u>works</u>. *Id.* at ¶20*; see also* Ballard Declaration at ¶9 (describing Mr. Console as an "excellent manager of his professional practice" whose assignment of different tasks to attorneys with different skills results in efficient use of his

time, and noting that he and CML have made long-lasting contribution to the community of plaintiff-side employment lawyers through their many successful case outcomes).  Mr. Console has attested that he has found, in his approximately forty years of experience, that this method of staffing is necessary to advocate for clients at the highest level and achieve the reputation and success that CML has.  Console Declaration at ¶20.

Ms. Ray's case against AT&T presented several challenges including the unique hurdle presented by the "General Release," the fact that Ms. Ray was terminated in connection with a reduction in force with a seemingly neutral process and criteria, and AT&T is a company with enormous resources armed with tenacious attorneys and committed to battle at every turn. CML approached head on the challenges of this complex and difficult case, and did what was necessary to win.

Mr. Console allocated the work in this case to ensure the excellent representation of Plaintiff in an efficient way.  *Id.* at ¶16.

Among other things, Mr. Console considered the firm's prior and contemporaneous litigation against AT&T.  *Id.* at ¶17.  In 2016, Ms. Mattiacci, the firm's designated lead trial counsel, won a jury trial against AT&T for age discrimination in connection with a "surplus"/reduction in force.  *Gerundo v. AT&T, et al.* (E.D. Pa., No. 5:14-cv-05171).  In 2017, CML filed a putative ADEA collective action brought by five older employees who were terminated in connection with a "surplus"/reduction in force and had signed a purported "General Release" (*Horowitz, et al. v. AT&T, Inc., et al.* (D.N.J. 1:17-cv-04827)).  Firm partner Susan Saint-Antoine was the primary attorney in *Horowitz*, and early on led the effort of moving for partial summary judgment challenging AT&T's purported "General Release" on the grounds that it failed to comply with the OWBPA's requirements (a motion that was not decided by the

court).  She was also involved in litigating another age discrimination case against AT&T in connection with a surplus/reduction in force filed in January, 2018 (*Fowler v. AT&T, Inc., et al.* , (D. N.J., No. 3:18-cv- 00667)).  *Id.*

By the time CML filed the complaint on behalf of Ms. Ray in this case, we had seen from previous cases that AT&T discriminated against older workers in connection with its "surplus"/reduction in forces under cover of a facially neutral ratings and rankings process that was difficult to challenge, and that the company fought extremely hard at every step to avoid liability for it.  The firm had to confront, as an initial matter, the purported "General Release," and we expected from past experience that AT&T would vigorously litigate the case, file many motions, resist discovery, contest all matters, and would make no offer to settle the case. AT&T had retained the nationally known, "Big Law" firm *Paul Hastings* to represent it.  In short, Ms. Ray was going into battle against Goliath, and her case would require our firm to devote considerable resources to win it.  *Id.* at ¶18.

Generally, the case was staffed as follows: As is her usual role, Emily Derstine-Friesen met and communicated with the client early on, drafted the EEOC Charge of Discrimination, and handled her case through the administrative agency process.  Mr. Console assigned associate attorney Dan Orlow to the handle the case on a day-to-day basis through resolution.  Mr. Console assigned Ms. Saint-Antoine, who had knowledge of AT&T's surplus/reduction in force policies as well as experience litigating OWBPA issues, to supervise the litigation pre-trial.  As is our firm practice, Ms. Mattiacci would generally be kept abreast of the case, and then step in to try it, as she had done successfully in *Gerundo* and many other of our cases.  *Id.* at ¶22-25; Mattiacci Declaration at ¶12.

### b.  CML professionals did the work necessary to win.

**Stephen G. Console** is CML's  founder who, with 35+ years, is recognized as a preeminent employment lawyer.  Since the outset of this matter through post-trial motions, he performed  37.1 hours of work for which Plaintiff seeks reimbursement.  He kept abreast of and oversaw Plaintiff's case from inception through verdict, and now post-trial motions and appeal. Among other things: He communicated with the client about the General Release and litigation strategy; communicated and strategized with Ms. Matiacci, Mr. Orlow, and  Ms. Saint-Antoine throughout the litigation; formulated a settlement demand; reviewed and advised on important correspondence and filings; strategized and advised on Plaintiff's discovery and trial strategy; communicated and strategized with Ms. Mattiacci during the trial; and strategized and advised on post-trial filings.

The itemized time entries for Mr. Console's work are set forth in Exhibit 1 and are reasonable.  Mr. Console is referred to in Exhibit 1 as "**SGC**."  Console Declaration at ¶21, 35, 37.

**Emily Derstine-Friesen** is the firm's attorney who, along with Mr. Console, meets initially with new clients.  She handles a client's case through the administrative agency.  In this case, Ms. Derstine-Friesen, generally and other things: Conducted the initial consultation with Ms. Ray; gathered and reviewed her documents, including those provided by AT&T in connection with the surplus; prepared and filed her EEOC charge of discrimination; communicated with Ms. Ray throughout the administrative agency process; met with colleagues regarding status and strategy; and participated in a firm mock opening presentation and discussion of the case.  Ms. Derstine-Friesen performed **19.8** hours of work on this case for which Plaintiff seeks compensation.  The itemized time entries for her work are set forth in

Exhibit 1 and are reasonable.  Ms. Derstine-Friesen is referred to in Exhibit 1 as "**EDF**."

Console Declaration at ¶22, 37.

**Daniel Orlow** was the primary attorney who handled the day to day litigation of this case

when it came out of the EEOC.  He is a tenacious litigator who vigorously prosecuted Ms. Ray's

claim.   In general, and among other things, Dan conducted comprehensive discovery and

developed the extensive and varied facts necessary to demonstrate pretext in a reduction in force

with facially neutral selection criteria.  He navigated a litigation that was hard fought at every

turn.  Console Declaration at ¶23.

From July, 2018, through February 14, 2022, Mr. Orlow performed 902.8 hours of work

on this case for which Plaintiff seeks reimbursement.  In summary and without limitation, he:

- Reviewed and familiarized myself with all documents submitted by Ms. Ray to the Equal Employment Opportunity Commission;
- Drafted, revised, and filed Ms. Ray's District Court Complaint;
- Communicated with Stephen Console, Susan Saint-Antoine, and Laura Mattiacci regarding case developments and case strategy;
- Assisted in the drafting, revising, and filing of Plaintiff's Motion for Partial Summary Judgment as to Count II of her Complaint (violation of the OWBPA).
- Responded to Defendant's Cross-Motion for Summary Judgment that was filed in response to Plaintiff's Motion for Partial Summary Judgment;
- Strategized with the team regarding the litigation on the "General Release" including Defendant's petition for interlocutory appeal;
- Strategized with the team on the possibility of bringing an ADEA collective action;
- Assisted in the drafting, revising, and filing of Plaintiff's Motion for Leave to File an Amended Complaint;
- Assisted in the drafting, revising, and filing of Plaintiff's Motion for Conditional Certification to Proceed as a Collective Action;
- Assisted in the drafting, revising, and filing of Plaintiff's Opposition to Defendant's Motion to Amend its Answer for the purposes of bringing counterclaims against Plaintiff;
- Communicated with Caren Goldberg, Ph.D. regarding her expert report;
- Reviewed the expert report of Caren Goldberg, Ph.D;
- Conducted extensive written discovery including, without limitation:
    - Drafting and serving written discovery requests on Defendant
    - Responding to written discovery requests served by Defendant on Ms. Ray

- o Reviewing and analyzing over 5,000 pages of documents produced by Defendant
  - o Communicating with Counsel for Defendant regarding extensive deficiencies that existed in Defendant's written discovery responses
- Prepared for and conducted the following depositions:
  - o The deposition of Tiffany Baehman (which involved travel from Philadelphia to Atlanta);
  - o The deposition of Laurie Payne;
  - o The deposition of Kyle Mundis;
  - o The deposition of Jeff Joss;
  - o The deposition of Judy Cavalieri;
  - o The deposition of Patricia Slocum;
  - o The deposition of Alyson Woodard;
  - o The deposition of Jennifer Van Buskirk;
- Attended the following depositions:
  - o Ms. Ray's deposition in the matter of *Dolenti v. AT&T* (where she faced questioning related to her own claim against Defendant)
  - o Ms. Ray's deposition in connection with her own claim against Defendant.
  - o The deposition of Caren Goldberg, Ph.D
- Delivered a mock opening to CML attorneys for purposes of further developing and refining case strategy;
- Drafted, revised, and filed Plaintiff's Motion to Compel Discovery;
- Assisted in the drafting, revising, and filing of Plaintiff's Opposition to Defendant's Motion for Summary Judgment;
- Attended status conferences with the Court throughout the course of discovery;
- Kept Ms. Ray informed of case developments and case strategy at all phases of the case;
- Drafted Plaintiff's motion in limine;
- Responded to Defendant's motions in limine;
- Prepared Plaintiff's trial exhibits and trial exhibit list;
- Assisted in the drafting, revising, and filing of Plaintiff's Pretrial Memorandum;
- Worked closely with CML's paralegals regarding necessary preparations for trial;
- Communicated with opposing counsel regarding pre-trial matters;
- Reviewed and analyzed Defendant's trial exhibits;
- Participated in trial strategy meetings with the trial team;
- Prepared the client for trial;
- Assisted in the preparation of Plaintiff's direct examination for trial;
- Assisted in the drafting and preparation of various pretrial documents including, without limitation:
  - o Voir dire
  - o Proposed verdict form
  - o Jury instruction
- Assisted in the preparation of graphs/charts summarizing evidence, and demonstrative exhibits;
- Assisted in the preparation of Plaintiff's economic loss analysis;

- Prepared for and attended the pre-trial conference;
- Researched evidentiary issues;
- As second chair to Ms. Mattiacci, tried the five-day jury trial to successful verdict;
- Conferred with the team regarding Defendant's post-trial motion and appeal;
- Assisted in the drafting, revising, and filing of Plaintiff's Opposition to Defendant's Motion for Judgment as a Matter of Law.

*See* Declaration of Daniel S. Orlow (Ex. 6), at ¶9.  The itemized time entries for Mr. Orlow's work are set forth in Exhibit 1 and are reasonable.  *Id.* at 8-9; Console Declaration at ¶ 23, 35.

**Susan Saint-Antoine** supervised the pre-trial litigation.  Ms. Saint-Antoine has practiced employment law with our firm for more than 23 years, excels at analyzing and briefing complex legal issues, is particularly familiar with the OWBPA's requirements for valid ADEA releases. Through her work on several AT&T matters, she brought to this case a knowledge of AT&T's age discriminatory surplus/reduction in force practices and its use of an OWBPA non-complaint "General Release."  Console Declaration at ¶24.

From February, 2018, through February 14, 2022, Ms. Saint-Antoine performed 348.5 hours of work on this case for which Plaintiff seeks reimbursement.  In summary and without limitation, she:

- reviewed client's MESA/"General Release" documents and OWBPA disclosures, consulted with Emily Derstine Friesen regarded administrative agency matters and reviewed the EEOC Charge;
- consulted with Ms. Ray;
- communicated and collaborated with colleagues on case strategy;
- consulted with Dan Orlow and reviewed the Complaint;
- conferred with Dan Orlow regarding the dismissal of AT&T, Inc.;
- reviewed and revised Plaintiff's briefs in support of her motion for partial summary judgment based on the invalidity of the "General Release;"
- reviewed Defendant's Answer to Complaint and all pleadings in the case;
- researched OWBPA compliance issues;
- communicated with AARP regarding amicus brief;
- reviewed and revised Plaintiff's opposition to Defendant's motion for summary judgment based on the "General Release;"
- strategized with colleagues regarding bringing an ADEA collective action;

- drafted Plaintiff's opposition to Defendant's motion for reconsideration of Court's Order invalidating the "General Release" and request for certification of interlocutory appeal;
- drafted Plaintiff's opposition to Defendant's petition for interlocutory appeal to the Third Circuit;
- participated in pre-trial Court conferences;
- reviewed circumstances and filings in *Dolenti* age discrimination case in which Plaintiff was a witness;
- conferred with Dan Orlow regarding discovery matters;
- addressed Defendant's threat of bringing a counter-claim against Plaintiff for breach of contract in connection with the collective action waiver in the "General Release;"
- drafted opposition to Defendant's motion for leave to file an amended answer asserting a counter-claim against client;
- kept abreast of and read correspondence with opposing counsel;
- attended mock opening for the case;
- reviewed and revised Plaintiff's opposition to Defendant's (second) motion for summary judgment;
- participated in pre-trial preparations, including analyzing evidence and client preparation;
- attended trial and provided behind the scenes assistance to Ms. Mattiacci and Mr. Orlow;
- collaborated with team on submission of damages numbers to the Court;
- reviewed trial transcript and exhibits in preparation for post-trial briefing and appeal work;
- worked with Dan Orlow in opposing Defendant's post-trial JMOL motion;
- entered appearance in Third Circuit;
- communicated with opposing counsel regarding stay of enforcement of judgment; and
- performed preliminary work on Plaintiff's fee petition.

*See* Declaration of Susan M. Saint-Antoine (Ex. 5) at ¶14.  The itemized time entries for Ms. Saint-Antoine's work are set forth in Exhibit 1 and are reasonable.  Console Declaration at ¶ 24, 35

**Laura Mattiacci** focused intensively on the trial of Plaintiff's case.  Ms. Mattiacci is an experienced and excellent trial lawyer whose superior skills and successes have commanded the attention and respect of the defense bar.  Among her many successes was the favorable jury verdict against AT&T in favor of an employee who, like Ms. Ray, was "surplussed" and terminate because of age.  Ms. Mattiacci mastered the varied and many facts of this case, worked

extensively on trial preparation, and presented the evidence to the jury in a way that was easy to grasp and which allowed them to see that the "surplus" rating and ranking process was a pretext to provide cover for the company's willful age discrimination.  Console Declaration at ¶25.

From March, 2019, through February 14, 2022, Ms. Mattiacci performed 317.7 hours of work on this case for which Plaintiff seeks reimbursement.  In summary and without limitation, she:

- kept abreast of the case through communications with Daniel Orlow, Susan Saint-Antoine and Stephen Console;
- strategized with the team regarding the litigation on the "General Release" including Defendant's petition for interlocutory appeal;
- strategized with the team on the possibility of bringing an ADEA collective action;
- reviewed the pleadings and "trial binder," which included the key information in summary form prepared in anticipation of trial;
- reviewed the summary judgment filings and opinions;
- reviewed orders on motions in limine and prior evidentiary rulings;
- reviewed and revised the pre-trial memorandum;
- worked closely with our paralegals regarding necessary preparations for trial;
- reviewed, organized, and analyzed the documents produced by the parties in the case;
- read and digested the deposition transcripts;
- communicated with opposing counsel regarding pre-trial matters;
- reviewed and analyzed Defendant's trial exhibits;
- participated in strategy meetings with the trial team;
- attended the mock opening presentation;
- prepared the client for trial;
- created the trial strategy for the case;
- prepared direct examinations of witnesses;
- prepared cross-examination of witnesses;
- organized and analyzed Plaintiff's trial exhibits;
- prepared opening and closing arguments;
- drafted Plaintiff's motion in limine regarding the Sweeney arbitration award;
- reviewed and analyzed Defendant's motions in limine;
- worked on voir dire and verdict forms;
- reviewed and revised proposed jury instructions;
- prepared graphs/charts summarizing evidence, and demonstrative exhibits;
- reviewed and revised Plaintiff's economic loss analysis;
- prepared for and attended pre-trial conference;
- worked on final preparations for trial, including technology issues;

14

- communicated with opposing counsel about trial scheduling, stipulations, and trial matters;
- researched evidentiary issues;
- tried the five day jury trial as lead trial counsel to successful verdict;
- conferred with team regarding Defendant's post-trial motion and appeal;
- stayed abreast of activity in Third Circuit; and
- reviewed Plaintiff's opposition to Defendant's post-trial motion for judgment as a matter of law.

*See* Declaration of Laura C. Mattiacci (Ex. 4), at ¶15.  The itemized time entries for Ms. Mattiacci's work are set forth in Exhibit 1 and are reasonable.  Console Declaration at ¶ 25, 35

**Julie A. Uebler** worked on discrete issues in this case from March, 2019, through March, 2020.  Julie graduated from Georgetown Law School in 1993, has practiced employment law for over 28 years, and brings a great depth and breadth of experience to employment litigation.  She is a superior attorney, whose knowledge and skill were displayed to the Court in *Keating v. East Whiteland Township,* E.D. Pa. 18-cv-2612, in which she obtained a jury verdict in favor of plaintiff on a sex discrimination case.    Julie made particularly valuable contributions in defeating AT&T's petition to the Third Circuit for interlocutory, discovery matters including the 30(b)(6) deposition notice, and addressing Defendant's potential assertion of a counterclaim against Plaintiff.  *See* Console Declaration at ¶26.

Ms. Uebler performed 30.5 hours of work on this case for which Plaintiff seeks reimbursement.  The itemized time entries for Ms. Uebler's work are set forth in Exhibit 1 and are reasonable.  *Id.* at ¶26, 34, 35.

**Anna Norman**, a former Associate Attorney with the firm, provided valuable assistance in Plaintiff's opposition to Defendant's motion for summary judgment on Count I by preparing a document index and a topical deposition index.  Ms. Norman graduated law school and began practicing in 2017.  At the time she worked on the case in 2020, she had approximately 3 years experience practicing.  *See* Console Declaration at ¶27.

15

Ms. Norman performed 30.9 hours of work on this case for which Plaintiff seeks reimbursement.  The itemized time entries for Ms. Norman's work are set forth in Exhibit 1 and are reasonable.  *Id.* at ¶ 27, 34, 35.

**Ortal ("Tuli") Mendelawe**, former Associate Attorney at the firm, also made valuable contributions to the prosecution of this case from March, 2019 through April, 2020.  Her work on this matter primarily involved legal research, including for Plaintiff's opposition to Defendant's petition to the Third Circuit for interlocutory appeal and discovery issues.  Tuli earned her LL.B. (J.D. equivalent) at Tel-Aviv University Faculty of Law in Israel in 2013.  In 2018, she graduated from the LL.M program at the University of Pennsylvania Law School.  She has been a member of the Israel Bar since 2013, and a member of the New York bar since 2019.  *Id.* at  ¶28.

Ms. Mendalawe performed 47.4 hours of work on this case for which Plaintiff seeks reimbursement.  The itemized time entries for Medalawe's work are set forth in Exhibit 1 and are reasonable.  *Id.* at ¶28, 34, 35.

Valuable contributions were also made by legal assistants, paralegals and summer law clerks whose time has not been recorded and/or for which Plaintiff does not seek reimbursement.  Among other things, the clerks conducted legal research, and the paralegals/assistants helped maintain the file and assisted in the organization of exhibits, and the visual presentations at trial.  *Id.* at ¶33.

In determining the number of hours reasonably expended on the litigation, Plaintiff is entitled to be compensated for work "useful and of a type ordinarily necessary" to secure the final result obtained from the litigation.  *Pennsylvania Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 556 (1986). "In determining what hours are reasonably expended on the

suit, the most critical factor is the degree of success obtained." *Tomasso v. Boeing Co.,* 2007 U.S. Dist. LEXIS 70001, *11 (E.D. Pa. Sept. 21, 2007).  **Plaintiff obtained a total victory on the merits of a challenging and hard fought case.**

Prevailing at trial in this case presented particular challenges.  Mattiacci Declaration at ¶13.  Demonstrating pretext in a reduction in force/restructuring where there are facially neutral criteria is especially daunting as it requires the presentation of varied and extensive facts to the jury in a way that is easy to grasp.  *Id.*  Further adding to the challenges of this case were the unusually large amount of documentation, the many levels of cover-up (including false rankings and a two-step surplus/termination process) employed by AT&T to hide the discriminatory animus at play, and the large and sophisticated employer/defendants.  *Id*

Defendants in this case made no offer whatsoever to settle.  Orlow Declaration at ¶18. As the Supreme Court has noted, if a defendant in a fee shifting case could have avoided the bulk of attorney's fees for which they find themselves liable by making a reasonable settlement offer, they cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response.  *City of Riverside,* 477 U.S.  at 581.

**Plaintiff's counsel did what was necessary to win this case.**  *See generally* Console Declaration; Mattiacci Declaration at ¶15; Saint-Antoine Declaration at ¶14; Orlow Declaration at ¶9.  The hours expended to do so were reasonable.

## 2.    CML's hourly rates are reasonable.

CML was established by Mr. Console in 1990 and for more than 25 years, has specialized in representing non-union employees in all aspects of workplace matters.  Console Declaration at ¶11.  The firm is included among the Martindale-Hubbell Bar Register of Preeminent Lawyers,

which is exclusive to AV Preeminent Attorneys -- those who have achieved the highest possible

peer review rating in both legal ability and ethical standards.  *Id.*  The firm has achieved a high

level of success and a great demand for its services.  *Id.* at ¶20.  The very well-respected and

seasoned employment law practitioner, Alice W. Ballard, attests that **Mr. Console and his firm**

**"have set a high bar that inspires others and gives lasting credibility to the practice as a**

**whole."**  Ballard Declaration at ¶9.  Prominent employment law practitioner Mr. Tucker attests:

"To my understanding, I have litigated against and or tried to jury verdict employment

discrimination cases against every major plaintiff employment lawyer and law firm in this legal

community.  Without fear of contradiction, it is my opinion that **Mr. Console, Ms. Mattiacci**

**and their law firm are the preeminent plaintiffs' employment lawyers and law firm in this**

**legal community."**  Tucker Declaration at ¶¶8,9.

    CML charges a reasonable hourly rate for its services.  Console Declaration at ¶37.

"Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates

in the relevant community."  *McGuffey,* 598 F. Supp. 2d at 669 (citing *Rode v. Dellarciprete*, 892

F.2d 1177, 1183 (3d Cir. 1990)).  CML's rates as reflected in the billing entries (Exhibit 1) and

the lodestar chart are in line with prevailing markets rates.  The rates:  a) are the firm's usual and

customary rates actually paid for by its hourly clients; b) are in line with the rates for similar

services by lawyers of reasonably comparable skill, experience and reputation; c) attested to by

Mr. Console as within prevailing market rates; d) in line with rates charged by other firms per

published data ; e) have been approved in several other litigations; and f) are less than published

rates of AT&T's counsel.  *Id*.

        **a.    CML's rates requested are the firm's usual and customary**
                    **rates actually paid for by the firm's hourly clients.**

The best evidence of a prevailing market rate is counsel's customary billing rate.  *E.g.,* *Mitchell v. City of Philadelphia,* 2010 U.S. Dist. LEXIS 32984, *40 (E.D. Pa. April 5, 2010)(citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also, e.g., Student Pub. Interest Research Group*, 842 F.2d at 1447 (though not dispositive, the starting point in ascertaining a reasonable hourly rate is the attorney's usual billing rate).

The hourly rates for the attorneys at CML as reflected in the billing entries (Exhibit 1) and summarized in the lodestar chart <u>are the same</u> (indeed less) as the regular rates charged for their services in non-contingent matters.  Console Declaration at ¶36.  No upward adjustment in billing rate was made, notwithstanding the contingency and risk of the matters involved, the opposition encountered, the preclusion of other employment, and the delay in payment.[3]  The usual and customary hourly rates used in the calculation of CML's lodestar are the actual rates CML has used to bill the clients it represents on an hourly fee basis, and which have been paid by hourly clients.  *Id.* at ¶36.

That the rates requested are within the prevailing market is demonstrated by the fact that people within the Philadelphia area are willing to pay them.

### b.     CML's rates are in line with the prevailing market rates for attorneys of similar experience, skill and reputation.

In considering prevailing market rates, "the district court should 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the

---

[3] Under Third Circuit law, to account for the delay in compensation, a plaintiff is entitled to recover reasonable attorney's fees based on his attorney's <u>current</u> hourly rate at the time of the fee petition.  *See, e.g., Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).   Plaintiff's Petition seeks reimbursement of CML fees based on the hourly rates set forth in Ms. Ray's representation agreement, which were the hourly rates offered to Ms. Ray to retain CML, as an alternative to the contingency fee arrangement she chose.  The CML rates <u>have not been increased to reflect the actual increases to CML rates over time.</u>

community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *McGuffey,* 598 F. Supp. 2d at 669 (quoting *Rode*, 892 F.2d at 1183).

The attorneys who performed the bulk of the legal services in this case – Mr. Console, Ms. Mattiacci,  Ms. Saint-Antoine and Mr. Orlow -- are experienced and talented practitioners of employment law who have earned stellar reputations for their excellent work.  Each bills at a rate that lies within the prevailing market rates in the Philadelphia area for attorneys of similar, experience, skill and reputation.  Alice Ballard, who has practiced law for more than 45 years and has frequently consulted with local employment lawyers on their fee petitions, states in her Declaration that as of January 1, 2022, the rates for employment attorneys in this market fall between $215 per hour for inexperienced attorneys to $900 per hour for exceptional attorneys of the highest level of experience and reputation.  See *Ballard* Declaration (Ex. 7) at ¶6.  Ms. Ballard attests to the reasonableness of the rates of each of Mr. Console, Ms. Mattiacci, Ms. Saint-Antoine, and Mr. Orlow.  *Id.* at ¶10-13.  Robert Davitch, a lawyer who has practiced employment law in the Philadelphia area and is aware of the hourly rates for employment attorneys in the Philadelphia area, likewise attests to the reasonableness of the rates of each of Mr. Console, Ms. Mattiacci, Ms. Saint-Antoine, and Mr. Orlow.  *See* Davitch Declaration (Ex. 8).  His hourly rate is $875.  *Id.* at ¶7-12.   See also Gold and Tucker Declarations.

**Mr. Console** worked on this case from its outset through February, 2022, and seeks a rate of $900 for services performed.  *See* Exhibit 1.  Mr. Console is a 1982 graduate of Villanova Law School.  Console Declaration at ¶3.  He has been practicing law for more than 33 years, and has concentrated his practice for the last thirty years on employment law.  *Id.* at  ¶¶4,5.  He is an elected fellow of the College of Labor and Employment Lawyers (2008).  *Id.* at  ¶6.  Martindale-Hubbell has recognized him as an "AV Rated" Attorney – the highest possible peer review rating

in legal ability and ethical standards.  *Id.* at  ¶7.  From 1998 through 2000, Mr. Console was a

member of the Executive Board of Directors of the National Employment Lawyers Association

of New Jersey.  *Id.* at  ¶8.  He regularly speak at seminars involving employment law and has

done so for more than twenty years.  *Id.* at  ¶9.

     Mr. Console has been recognized by his peers as a top practitioner.  *Id.* at  ¶10.  Without

limitation:  He was named as a leading attorney in the state of Pennsylvania in the area of

plaintiff's employment and labor law in *Chambers USA: America's Leading Business Lawyers*

*2005-2006*, as one of the Best Lawyers in America (2008-2014) in the area of Labor and

Employment Law in *Best Lawyers in America*, as one of the Best Lawyers in *The Best of the*

*U.S.* (2008-2013), and as one of the Best Lawyers in America in *America's Who's Who.*  Mr.

Console was named the Best Lawyers' 2012 Philadelphia Employment Law – Individuals

Lawyer of the Year.  He was named to the "Top 100 Attorneys in Philadelphia" and "Top 100

Attorneys in Pennsylvania" by *Philadelphia Magazine* and *Philadelphia Super Lawyers*

*Magazine* from 2008-2015.  *Id.*

     Plaintiff has submitted declarations from four highly regarded employment law

practitioners in the Philadelphia area who are familiar with Mr. Console's work.  All attest that

the hourly rate requested for Mr. Console's services ($900) is reasonable because it lies well

within the range of fees charged for work in fee shifting cases by attorneys with similar

backgrounds, experience and abilities in the employment field in the Philadelphia area; one

speaks to his excellent work and reputation.  *See* Ballard Declaration at ¶¶8-10; Davitch

Declaration at ¶7; Gold Declaration at ¶7; and Tucker Declaration at ¶10.  By way of example,

Mr. Tucker attests:

          Mr. Console is considered one of the most formidable attorneys in
          the Third Circuit.  He commands respect within the defense

> employment bar because of his record and his reputation.  I have
> sought advice from Mr. Console regarding my firm's plaintiff
> employment cases.  Mr. Console's experience, and abilities in the
> employment field in the Philadelphia area are relied upon by me
> when I make the recommendation to refer potential clients to him.
> I also consider his experience and abilities when I am advising my
> clients as to whether to settle or take a matter to trial.

Tucker Declaration at ¶10.

**Ms. Mattiacci** worked on this case from March, 2019, through February 14, 2022, and seeks a rate of $730 per hour for services performed.  Ms. Mattiacci is a 2002 graduate of the Beasley School of Law at Temple University.  Mattiacci Declaration at ¶3.  While at the Beasley School of Law, she clerked for the preeminent trial lawyer, James E. Beasley, Sr., and was a standout member of the National Trial Team, where she won several trial advocacy awards and honors, including the ATLA National Championship in Trial Advocacy.  *Id.* at ¶4.  She has practiced law since 2002, and has for the last twelve plus years devoted her practice to the representation of employees.  *Id.* at ¶5-6.  Ms. Mattiacci is CML's designated lead trial counsel for the firm's most significant cases.  *Id.* at ¶8.

At CML, Ms. Mattiacci has tried numerous jury trials.  Two settled several days into trial.  Eleven (including this matter) were tried to verdict (nine of which resulted in fully or partially favorable verdicts).  She has prepared several other cases for trial, which were settled right after or shortly before jury selection.  *Id.*  In 2013, she was lead trial counsel in the case of *Pietrowski v. The Kintock Group* (Philadelphia Court of Common Pleas, C.A. No. 111003328), which resulted in the **largest employment law verdict in Pennsylvania**, as reported in *The Legal Intelligencer.  Id.*

Ms. Mattiacci has spoken frequently at seminars and conferences.  *Id.* at ¶9.  Most recently, she was asked to speak as part of a distinguished panel that included federal judges

from around the nation regarding the December 1, 2015, Amendments to the Federal Rules of Civil Procedure. *Id.* She has spoken frequently on the topic of employment law, including in particular on the trial of an employment case. *Id.* Among her speaking engagements last year were: *Employment Law Essentials and Best Practices: Preparing for Trial* (Employment Law Institute, 2015) and *How to Get Through (and Win) the First Day of Trial* (Pennsylvania Bar Institute, 2015). *Id.*

Ms. Mattiacci has written many articles on the topic of employment law, including several that focus on the trial of an employment case. *Id.* at ¶10. Among her recent publications are: *Trial of an Employment Law Case – Mock Demonstration of CMLsing, Directs and Crosses* (Pennsylvania Bar Institute, 2014); *Top Ten Pitfalls for Employment Lawyers* (Employment law Institute, 2012); and *Visualizing Your Evidence* (National NELA Conference, 2012). *Id.*

Ms. Mattiacci has been recognized by her peers as a top practitioner. *Id.* at ¶11. Without limitation: She was named to the list of "Top 50 Female Attorneys in Pennsylvania" by *Philadelphia Magazine* and *Philadelphia Super Lawyers Magazine* 2014 and 2015, and to their list of "Top 100 Attorneys in Philadelphia" and "Top 100 Attorneys in Pennsylvania" in 2015. *Id.* She has been named to the Pennsylvania "Super Lawyers" list by *Philadelphia Magazine* and *Philadelphia Super Lawyers Magazine* every year since 2013. *Id.* She was named to the "*2011 Lawyers on the Fast Track*" by *The Legal Intelligencer*, a distinction given to only 27 lawyers under the age of 40. *Id.* She has been named in the 2016 edition of the *Best Lawyers in America. Id.*

Plaintiff has submitted declarations from four highly regarded employment law practitioners in the Philadelphia area who are familiar with Ms. Mattiacci's work. Each attests that the rate requested for her services ($730) is reasonable because it lies well within the range

of fees charged for work in fee shifting cases by attorneys with similar backgrounds, experience and abilities in the employment field in the Philadelphia area; one speaks to her excellent work and reputation.  *See* Ballard Declaration at ¶11; Davitch Declaration at ¶8; Gold Declaration at ¶8; and Tucker Declaration at ¶11.  By way of example, Ms. Ballard attests:

> Like Mr. Console, Ms. Mattiacci is able to focus her practice on a particular challenge -- that of trying cases, something that is an unusual event in today's legal world and which requires unique talent and highly specialized skills.  She is fearless, and ready to try many more cases than most attorneys in our field.  As a result, she is highly respected by the defense bar.  They are challenged by her readiness to go to trial in cases that they might otherwise hope to compromise.  Her success rate is notable.  She is a tremendous asset to her firm and her clients.  Like Mr. Console, she is recognized nationally, and she offers her knowledge and experience without hesitation in CLEs and advice to other attorneys.  Her requested hourly rate of $730 per hour is fully in line with her standing, reputation, and effectiveness in the community and is fully appropriate in this market.

Ballard Declaration at ¶8.

**Ms. Saint-Antoine** worked on this case from February, 2018, through February 14, 2022, and seeks a rate of $730 per hour for services performed.  Ms. Saint-Antoine is a 1989 graduate of Columbia Law School, practiced for several years in the litigation department of Morgan, Lewis & Bockius, has for the last 23+ years practiced exclusively in employment law.  Console Declaration at ¶3-5.  Her hourly rate has been considered and approved by federal judges and arbitrators.  See Saint-Antoine Declaration.

**Mr. Orlow** worked on this case from July, 2018, through February 14, 2022, and seeks a rate of $320 per hour for services performed.  He has more than 11 years experience practicing law, and more than four years focusing exclusively on employment law.  Orlow Declaration at ¶3-6.  Plaintiff has submitted declarations from four highly regarded employment law

practitioners in the Philadelphia area who attest that that the rate requested for Mr. Orlow's services ($320) is reasonable because it lies well within the range of fees charged for work in fee shifting cases by attorneys with similar backgrounds, experience and abilities in the employment field in the Philadelphia area.  *See* Ballard Declaration at ¶13; Davitch Declaration at ¶10; Gold Declaration at ¶10; and Tucker Declaration at ¶13.

### c.    Mr. Console attests that CML rates are within prevailing market rates.

Mr. Console has concentrated his practice on employment law for more than thirty-five years.  Console Declaration at ¶5.  He is familiar with the rates charged by other attorneys with backgrounds similar to his, as well as to the attorneys within CML who worked on this matter. *Id.* at 38.  He has attested that based on his personal knowledge, the rates that were utilized by CML in calculating its lodestar in this case are within the prevailing market rates for similar work performed by attorneys of comparable skills and experience.  *Id.*

Mr. Console's Declaration should be considered in the Court's evaluation of prevailing market rates.  *See, e.g., I.W. v. School District,* 2016 U.S. Dist. LEXIS 4441 at*18-19 (court considered in full the declarations submitted by the plaintiffs' attorneys, including their assertions as to prevailing market rates in the community).

### d.    CML's usual and customary rates are in line with market rates per published data.

CML's usual and customary rates are consistent with rates charged by defense firms based in Philadelphia according to the 2017 National Law Journal Survey of Billing Rates (submitted herewith as Exhibit 12), which has been cited by courts in the consideration of attorney's fees awards.  *See, e.g., Mitchell,* 2010 U.S. Dist. LEXIS 32984 at *40, n.12.  For example:

- Blank Rome in 2017 reported a high partner billing rate of $940, low partner billing rate of $445, and average partner billing rate of $640; and a high associate rate of $565, low associate rate of $175, and average associate rate of $350.

- Cozen O'Connor in 2013 reported a high partner billing rate of $1050, low partner billing rate of $300, and average partner billing rate of $555; and a high associate rate of $590; low associate rate of $235, and average associate rate of $345.

- Pepper Hamilton in 2013 reported a high partner billing rate of $850, low partner billing rate of $475, and average partner billing rate of $630; and a high associate rate of $460; low associate rate of $245, and average associate rate of $360.

- Saul Ewing in 2013 reported a high partner billing rate of $850, low partner billing rate of $365, and average partner billing rate of $530; and a high associate rate of $575; low associate rate of $225, and average associate rate of $340.

Exhibit 12.

In addition, according to excerpts from a Valeo 2018 Hourly Rate Report attached to a recent fee petition filed in the Eastern District (*see* Saint-Antoine Declaration at ¶ 20 and attached Ex. 5B) Morgan, Lewis & Bockius in 2018 billed for a Senior Partner at an hourly rate of $813 and a rate of $743 for a Partner.

The Court can reasonably assume that these firms' <u>current</u> hourly rates have increased significantly.

### e.    CML's usual and customary rates have been approved in other litigations.

CML's usual and customary rates have been approved by arbitrators and courts in awarding fees to the firm.  Console Declaration at ¶37.

In October, 2021, the Honorable Wendy Beetlestone ordered the defendant to pay plaintiff CML's reasonable attorney's fees as a sanction in a discovery dispute.  *Mammen v. Thomas Jefferson University, et al.*, E.D. Pa. Civil Action No. 20-127 (October 13, 2021, ECF No. 74).  Judge Beetlestone concluded that the "hourly rates charged by Plaintiff's attorneys [which were CML's usual and customary rates] are reasonable 'calculated according to

26

prevailing market rates in the relevant community.'" (quoting *Blum v. Stenson*, 463 U.S. 886, 895 (1984)).  *Id.*

In 2014, CML submitted a fee petition in the matter of *Sessions v. Owens-Illinois, Inc.*, a class action pension benefits case in the United States District Court for the Middle District of Pennsylvania (C.A. No. 1:07-cv-1669).  The fee petition for a negotiated portion of the common fund set forth a lodestar check based on CML's usual and customary rates and referenced in particular the work and billing rate for Mr. Console, Ms. Mattiacci and Ms. Saint-Antoine.  By Order dated October 23, 2014 (Docket No. 283), the Honorable Robert Mariani approved the requested fee based, in part, upon a cross check of the percentage of recovery-based fee against the lodestar method.  During the October 15, 2014, hearing for final approval of the class action settlement, the Honorable Robert D. Mariani commented favorably from the bench on the fee application of Ms. Saint-Antoine.  *See* Transcript Excerpt, attached to Ms. Saint-Antoine's Declaration as Exhibit 5A ("There isn't any question about yours [Carol Mager's] or Mr. [Sid] Gold's or Ms. Saint-Antoine's experience, competence or authority to charge the fees you're charging….I have no reservations with respect to that at all.").  *Id.*

In 2008, CML submitted declarations setting forth its usual and customary rates in support of plaintiffs' petition for attorneys' fees and costs in a race discrimination case.  Chief United States Magistrate Judge Rueter awarded the attorneys' fees and found that the CML's rates (including for Ms. Saint-Antoine and Mr. Console) were "reasonable billing rates for federal employment-related matters" in the Philadelphia area and in accordance with the prevailing market rates. *See Marthers v. Gonzalez,* Civil Action No. 05-cv-3778, Docket No. 81 (E.D. Pa. August 13, 2008).  *Id.*

In 2007, an arbitrator awarded fees to CML as the prevailing party on a multi-claimant WPCL and ERISA case based on CML's usual and customary rates charged to its clients. (*Aaron, et al. v. ACE.*)  Defendant's counsel did not contest the reasonableness of CML's hourly rates, including for Ms. Saint-Antoine and Mr. Console).  In 2005, an arbitrator awarded CML its attorney's fees based on its usual and customary hourly rates, including for Ms. Saint-Antoine and Mr. Console. (*Bolton v. LINA.)*  In that case, defendant's counsel did not contest the reasonableness of CML's hourly rates.  *Id.*

In 1999, CML submitted a fee petition in the matter of *Feret v. First Union Corp.* based on its usual and customary hourly rates.  The petition was approved (although, as agreed, the award was in an amount negotiated as part of the aggregate class settlement).  *See Feret v. First Union Corp.,* Civil Action No. 2:97-cv-06759, Docket No. 104 (E.D. Pa. August 16, 1999).  *Id.*

The Honorable Clarkson S. Fisher of the United States District Court for the District of New Jersey awarded attorney's fees based on CML's usual and customary rates as the prevailing party at trial in an age discrimination case.  *See Garden v. General Elec.,* Civil Action No. 3:91-cv-01204, Docket No. 55 (D.N.J. June 7, 1993).  CML was also awarded attorneys' fees as the prevailing party in discrimination cases based on its usual and customary rates in *Plumley v. Harbor Linen,* Civil Action No. 1:88-cv-01557 (D.N.J.) and *Bronstein v. Harbor Services*, Civil Action No. 1:88-cv-05074 (D.N.J.).  *Id.*

In September, 2021, the Honorable Mark Kearney ordered the defendant to pay to CML's usual and customary 2021 rates charged by CML (other than Mr. Console 2021 rate of $960) in an age discrimination case.  *Giedgowd v. Carfaro Group, LLC,* E.D. Pa. 2:20-cv-06184, 2021 U.S. Dist. LEXIS 205882, *16 (E.D. Pa. Oct. 26, 2021).  Judge Kearney stated that he did not dispute Mr. Console's stellar reputation, but found that his 2021 rate of $960 was not sufficiently

28

supported by the evidence that had been had submitted.  Judge Kearney specifically noted that he

was not suggesting that Mr. Console could not be paid a higher rate if he, among other things,

entered more specific time entries confirming a more central involvement in the strategies of the

case.  Mr. Conosle has tried to address this with my more detailed submissions in this case.

   In 2019, Judge Kearney awarded  CML's attorney's fees to a client who prevailed in an

employment discrimination.  In *Middlebrooks v. Teva Pharms., USA, Inc.*, No. 17-cv-412, 2019

U.S. Dist. LEXIS 30530 (E. D. Pa. Feb. 26, 2019), Judge Kearney praised our firm's "heightened

level of lawyering," but awarded a fee based on a lodestar calculation using rates less than

CML's usual and customary ones. Judge Kearney was critical of the lack of detail in some

descriptions and lack of context from which a more detailed description may be inferred.  CML

has tried to address that here by providing the time entries organized by attorney and also

organized in chronological order to give them context.

### f.      CML's requested hourly rates are less than the 2018 published rates of AT&T's counsel.

   In *Middlebrooks*, Judge Kearney suggested that what the defendant employer paid its

counsel may be evidence of the reasonableness of hourly rates requested.  2019 U.S. Dist.

LEXIS 30530 at *43.  AT&T was represented in this case by *Paul Hastings.*  Defense attorneys

do not generally disclose their hourly rates to non-clients, so it is hard to find information on

them.  However, there are excerpts on Paul Hastings from a Valeo 2018 Hourly Rate Report

attached to a recent fee petition filing in the Eastern District.  *See* Saint-Antoine Declaration at ¶

20 and attached Ex. 5B.  Although the rates are from 2018 and thus less than their current hourly

rates, the 2018 Valeo Hourly Rate Report reports that in the practice area of ERISA (also an

employment field) the hourly rate for a Senior Partner was $1,177; the hourly rate for a Partner

was $1,145; the hourly rate for Counsel was $1,031; and the hourly rate for a Senior Associate

was $963 – all considerably higher than the rates CML seeks here.

### 3.    CML's lodestar calculation, based on reasonable hours and reasonable rates, is a reasonable attorney's fee award.

When an applicant for a fee has demonstrated that the claimed rate and hours are

reasonable, the resulting product (the lodestar) may be presumed to be the reasonable fee to

which counsel is entitled.  *See, e.g., McGuffy,* 598 F. Supp. 2d at 668.

As demonstrated above, CML has calculated its lodestar based on reasonable hourly rates

for hours reasonably expended.  No downward adjustment is warranted.  Accordingly, $847,945

is a reasonable attorney's fee and should be awarded to Plaintiff as a prevailing plaintiff under the

ADEA.

### B.    Plaintiff is entitled to reasonable costs incurred.

The enforcement provision of the ADEA, Section 16(b) of the Fair Labor Standards Act,

also provides for the mandatory award of costs to a prevailing plaintiff.  29 U.S.C. § 216(b).

Plaintiff is thus entitled to reimbursement of her reasonable and appropriate costs.  *See, e.g.,*

*McGuffey,* 598 F. Supp. 2d at 675 (awarding to plaintiff who prevailed on ADEA/PHRA claim

his reasonable and appropriate costs of litigation); *Watcher v. Pottsville Area Emergency Med.*

*Serv.,* 559 F. Supp. 2d 516 (M.D. Pa. 2008)(prevailing party under the ADEA and PHRA is

entitled to an award of costs under the ADEA's fee shifting provision).

The costs and expenses incurred and paid by CML in connection with this case were

reflected on the books and records of the firm.  Console Declaration at ¶39.  These books and

records were prepared from records that were regularly maintained by the firm in the ordinary

course of business and accurately reflect the costs and expenses incurred.  *Id.*  A printout of the

detailed, individualized billing entries is attached as Exhibit 11 to Plaintiff's Petition.  *Id.*; *see*

*also* Orlow

incurred $

February 14,

behalf of

summarized as

| Category | Cost Incurred |
|---|---|
| Court filings | $400 |
| Delivery | $ 29.75 |
| Depositions | $ 14,034.51 |
| Deposition travel | $ 975.59 |
| Document hosting | $ 2,029.75 |
| Expert fees | $ 14,000 |
| Subpoena services | $ 380 |
| Trial copying | $62.52 |
| Trial video prep | $2,375 |
| Trial meals | $ 796.92 |
| Trial parking | $ 94 |
| Trial travel | $ 8.68 |
| Trial transcripts | $ 3,457.15 |
| **TOTAL** | **$ 38,643.86** |

Declaration at ¶17.   CML has

38,643.86 in costs through

2022, in pursing this action on

Plaintiff. *Id.*  Those costs are

follows:

These costs were reasonably incurred in the prosecution of this litigation.  Console

Declaration at ¶42.  Accordingly, they should be awarded to Ms. Ray as the prevailing Plaintiff.

For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter the

proposed Order submitted herewith, and award to Plaintiff $847,945 for reasonable attorney's fee

for services performed, and $38,643.86 for reasonable costs incurred, through February 14, 2022.

**CONSOLE MATTIACCI LAW LLC**

By:     */s/ Susan Saint-Antoine, Esq.*
         Susan Saint-Antoine, Esquire
         Stephen G. Console, Esquire
         Laura C. Mattiacci, Esquire
         Daniel Orlow, Esquire
         1525 Locust Street
Dated: February 18, 2022         Philadelphia, PA 19102

31