**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ALISON RAY,                           :          CIVIL ACTION
                    Plaintiff,        :
                                      :
          v.                          :
                                      :
AT&T MOBILITY SERVICES,               :
LLC,                                  :          No. 18-3303
                    Defendant.        :
                                      :

**MEMORANDUM OPINION**

**Timothy R. Rice**                              **February 22, 2022**
**U.S. Magistrate Judge**

Trials inevitably involve close calls. In those cases, we empower juries to resolve material factual disputes, arming them with broad discretion to draw reasonable inferences from the evidence and to decide which witnesses to believe. This case featured such a dispute.

Defendant AT&T Mobility Services, which hotly contested plaintiff Alison Ray's age discrimination claim, now seeks to disturb a jury verdict that overwhelmingly rejected AT&T's view of the evidence. If the jury had believed AT&T's witnesses, especially senior managers Judy Cavalieri and Jennifer Van Buskirk, it could have returned a defense verdict. And that verdict would have stood. Instead, the jury rejected AT&T's version and then went a step further. It unanimously found that AT&T's age discrimination not only drove the decision to fire Ray, but that it acted willfully, that is, AT&T knew, or recklessly disregarded whether, firing Ray was unlawful. The jury's verdict constituted a powerful condemnation of AT&T's treatment of Ray, and repudiated AT&T's claim that her firing was a business decision unrelated to age. Since the trial featured no legal error, AT&T now resorts to disputing evidentiary inferences and credibility

determinations that informed the jury's verdict, along with challenging five discretionary evidentiary rulings.  Its motion is meritless.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The underlying facts are well known to both parties and have already been discussed at length.  See generally Mem. Op. Denying Summary Judgment (doc. 111).  Relevant to AT&T's motion, the trial focused on AT&T's selection of Ray, age 49, for surplus and ultimate termination. Ray alleged that AT&T violated the Age Discrimination in Employment Act ("ADEA") by: (1) placing her on surplus status and terminating her employment because of her age, and (2) failing to comply with the Older Workers Benefit Protection Act ("OWBPA").  See Amend. Compl. (doc. 48).  In January of 2020, I denied AT&T's motion for summary judgment, and the case proceeded to trial in November of 2021.[1]

Before trial, AT&T moved to exclude, inter alia, the ADEA Listing for Surplus 17-350. See Motion in Limine (doc. 117).  AT&T argued that the ADEA Listing was irrelevant under Fed. R. Evid. 401.  Id.  I denied AT&T's motion because the ADEA Listing, which includes statistical information about the positions and ages of the individuals chosen for the Surplus, was "relevant to whether . . . Ray was chosen for the Surplus due to her age.  See Sept. 22, 2021 Order (doc. 126), ¶ 1 (citing Abrams v. Lightolier Inc., 50 F.3d 1204, 1217 (3d Cir. 1995)).

Following a final pretrial conference on October 26, 2022, I made additional evidentiary rulings, to include:

- Allowing evidence related to a 2016 reduction-in-force "for the limited purpose of showing that AT&T began a planned effort of eliminating the jobs of older

---

[1]    Ray's OWBPA claim was resolved, in her favor, prior to trial.  See Apr. 28, 2020 Order (doc. 88), ¶ 1.

employees in this reduction-in-force that took place 18 months before the reduction-in-force during which Ms. Ray was selected." Oct. 28, 2021 Order (doc. 139), ¶ 3 (citing Fed. R. Evid. 404(b)(2); United States v. Green, 617 F.3d 233, 250 (3d Cir. 2010)). I found, under Fed. R. Evid. 403, that "[t]he probative value [was] not substantially outweighed by the risks of unfair prejudice, jury confusion, or waste of time because it is directly related to the allegations in this case." Id. I also concluded that a limiting jury instruction, jointly prepared by the parties, would mitigate "any arguable risk of prejudice or confusion." Id. (citing Fed. R. Evid. 105; Green, 617 F.3d at 250). The parties submitted a limiting jury instruction on November 5, 2021. See Proposed Jury Instruction (doc. 141); see also Hearing Tr. Vol. I, 93:2-94:5 (providing limiting instruction to the jury).

- Allowing "[n]on-statistical evidence, including charts, showing the number and ages of the employees involved in the 2017 reduction-in-force," to the extent that the parties do not "present lay statistical evidence regarding those numbers and ages because such evidence has limited probative value and is substantially outweighed by risks of unfair prejudice, misleading the jury, and wasting time." Oct. 28, 2021 Order, ¶ 5 (citing Fed. R. Evid. 403; Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 340 (1977); Gottschall v. Reading Eagle Co., No. 11-4361, 2013 WL 961266, at *5 (E.D. Pa. Mar. 12, 2013)).

- Allowing AT&T to "cross-examine Ms. Ray about her involvement in rating employees during the 2017 reduction-in-force," but not "the individual ratings she provided." Oct. 28, 2021 Order, ¶ 6. Pursuant to Fed. R. Evid. 403, I reasoned that

"[a]ny probative value of specific ratings of individuals unrelated to this trial is substantially outweighed by risks of jury confusion and waste of time." Id.

The jury heard from 9 witnesses: David Carlucci, Judy Cavalieri, Ray, Alyson Woodard, Patricia Slocum, Kyle Mundis, Jennifer Van Buskirk, Tiffany Baehman, and Jeffrey Joss. Ray was hired by AT&T in 1994, Hearing Tr. Vol. II, 165:19-21, and held five different positions in the over 23 years:

- 1994-1996: Business Development Manager, id. at 163:24-164:2;

- 1996-1999: Director of Business Development, id. at 164:2-20;

- 1999-2010: Director of Marketing, id. at 164:21-165:15;

- 2010-2011: Director of Sales Operations, id. at 166:1-2; and

- 2011-2018: Director of Sales, id. at 167:15-19, 200:20-201:2.

Ray was notified of her selection for surplus in November 2017, see id. at 68:6-11, and she was fired in January 2018, a few days shy of her 50th birthday, see Hearing Tr. Vol. III, 74:7-11; 102:7-10; id. at Vol. II, 161:24-25; Mot. 12; Resp. Br. 8.

Van Buskirk, president of the region in which Ray worked since December 2015, hired Cavalieri in the spring of 2016 to supervise a team of Directors of Sales that included Ray. Hearing Tr. Vol. I, 99:22-101:3; id. at Vol. II, 99:16-100:7; id. at Vol. IV, 17:17-19, 18:24-19:14, 32:21-33:4, P-15. In 2016, Van Buskirk published two LinkedIn articles: (1) discussing AT&T as being "old and stodgy" and endorsing a New York Times article addressing AT&T's "aging" workforce and a need to reinvent itself, see P-71 & 72; and (2) discussing the benefits of being young in the workforce, see P-73. See also Hearing Tr. Vol. IV, 22:18-29:13; 31:7-32:20. Around the same time, Van Buskirk also sent an email to AT&T leaders, including Cavalieri and Carlucci (a "high[] level" human resources officer, see Hearing Tr. Vol. I, 46:20-23), in which she suggested that

4

changes were necessary to bring "fresh perspective across the business, and re-engage some of our tenured folks in new jobs within [the] AT&T family."  Hearing Tr. Vol. I, 90:15-23 (citing P-13).

The jury also heard testimony that there was a 2016 surplus that led to the termination of the oldest Director of Sales in the region.  P-12; P-77, Hearing Tr. Vol. IV, 33:15-17; id. at Vol. I, 105:19-106:1.  Another surplus event took place in 2017, following AT&T's restructuring of the Ohio/Pennsylvania Market, that led to the surplus and termination of Ray.  See Hearing Tr. Vol. I, 66:10-68:25; id. at Vol. III, 54:11-16, 130:23-131:9.  The Directors of Sales were lumped together into an affected work group and rated and then ranked accordingly.  Id. at Vol. I, 67:12-68:10; id. at Vol. III, 55:12-23, 130:23-131:4; D-39.  The two oldest Directors of Sales, one of whom was Ray, were selected for surplus.  See id. at Vol. I, 105:19-106:1; id. at Vol. IV, 35:17-21, 45:6-10; P-15; D-21.  Ray introduced evidence that the surplus ratings and rankings process included inconsistencies and discrepancies.  For example,  Danny Perez, part of Ray's affected work group, vacated his position as Director of Sales during the surplus process but before surplus notifications went out.  Hearing Tr. Vol. II, 55:11-60:8.  He was replaced by Linda Gill, who was in her late twenties and was not part of Ray's affected work group, despite AT&T policies dictating that, if there was a vacancy, it should have gone to Ray.  Id.; see also id. at Vol. I, 80:10-82:17, 83:9-17; id. at Vol. II, 57:20-58:6; P-77; D-21; D-39.

On November 19, 2021, following four days of trial, the jury returned a verdict in favor of Ray.  Verdict Slip (doc. 156).  The jury found by a preponderance of the evidence that: (1) Ray's age was a determinative factor in AT&T's decision to select her during its reduction in force/surplus and terminate her employment, and (2) AT&T either knew or showed reckless disregard for whether its selection of Ray during the reduction in force/surplus and termination of her employment was prohibited by law.  Id.

AT&T challenges two rulings that I made at trial.

- **Limiting Cavalieri's Testimony Concerning Kyle Mundis's Field Report on Ray's Employee Engagement Scores:** Cavalieri testified that Mundis, who works in human resources, was sent into the "field" to solicit feedback from Ray's subordinates in an effort to better understand her decline in employment engagement scores. Hearing Tr. Vol. II, 122:3-16, 127:9-128:15. AT&T sought to question Cavalieri on what Mundis reported to her that he learned in the field. Id. at 128:19-22. Although I sustained Ray's hearsay objection to the contents of third-hand reports given to Mundis, I permitted AT&T to ask Cavalieri what she did after receiving the information from Mundis. Id. at 128:23-130:2 (Court: "[L]et's avoid it by just saying after the conversation, what action did you take based on what he told you?").

- **Finding as Unnecessary a Curative Jury Instruction Regarding the Absence of Documents Concerning the Transfer of Danny Perez and Linda Gill:** Following the close of its case, AT&T requested a curative jury instruction that addressed the absence of documents pertaining to the transfers of Perez and Gill. AT&T argued that any documents pertaining to the transfers were not subject to discovery, and, accordingly, a cautionary instruction was necessary to avoid any unfair inference from Ray's counsel's questioning of witnesses that AT&T "has withheld something." Hearing Tr. Vol. IV, 134:7-12. I disagreed, concluding that Ray had not invited the jury to draw any unfair inference. Id. at 134:21-25 ("I understand the issue. I think your concerns are misplaced, Mr. Gage. I did not get

6

that impression at all.  I don't think the jury did.  And I don't think there is any need for an instruction.").

## II.    LEGAL STANDARD

"It is only on rare instances that a jury's verdict in a civil case should be overturned."  Pitts v. State, 646 F.3d 151, 152 (3d Cir. 2011).  Following a losing verdict, a party may move for judgment as a matter of law pursuant to Rule 50(b), if the issues were properly preserved in accordance with a Rule 50(a) motion.  See Fed. R. Civ. P. 50; Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993).  Judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."  Lightning Lube, Inc., 4 F.3d at 1166 (citing Wittekamp v. Gulf & Western Inc., 991 F.2d 1137, 1141 (3d Cir. 1993)); see Pitts, 646 F.3d at 155 ("Only if the record is 'critically deficient of the minimum quantum of evidence' upon which a jury could reasonably base its verdict will we affirm a court's grant of judgment as a matter of law.") (quoting Acumed LLC v. Advanced Surgical Servs., Inc. 561 F.3d 199, 211 (3d Cir. 2009)).  "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version."  Lightning Lube, Inc., 4 F.3d at 1166 (citing Fineman v. Armstrong World Indus., Inc. 980 F.2d 171, 190 (3d Cir. 1992)); see Eshelman v. Agere Sys., Inc., 397 F. Supp. 2d 557, 562 (E.D. Pa. 2005) ("Because a jury's verdict merits judicial deference, only a critical deficiency of evidence justifies reversal.") (internal citation omitted).

A Rule 50(b) movant may "include an alternative or joint request for a new trial under Rule 59."  Fed. R. Civ. P. 50(b); see Wright v. Cacciutti, No. 12-1682, 2015 WL 3654553, at *3 (M.D.

Pa. June 11, 2015).  The trial court has discretion to grant a new trial "for any reason for which a

new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1);

see State Farm Mut. Auto. Ins. Co. v. Lincow, 715 F. Supp. 2d 617, 626-27 (E.D. Pa. 2010).

"When the basis of the motion involves a matter within the trial court's sound discretion, such as

the court's evidentiary rulings or points for charge to the jury, the trial court has wide latitude in

deciding the motion."[2] Burlington v. News Corp., No. 09-1908, 2016 WL 1221426, at *3 (E.D.

Pa. Mar. 29, 2016); see also Mathis v. Borough of Old Forge, No. 08-1240, 2021 WL 639018, at

*4 (M.D. Pa. Feb. 18, 2021) (noting the same "broad" standard applies when the motion is

grounded upon prejudicial statements by counsel) (citing Klein v. Hollings, 992 F.2d 1285, 1289-

90 (3d Cir. 1993)).  In deciding whether a new trial is warranted, "the court must determine: (1)

'whether an error was in fact made;' and (2) 'whether that error was so prejudicial that refusal to

grant a new trial would be inconsistent with substantial justice.'" Pierce v. City of Phila., 391 F.

Supp. 3d 419, 432 (E.D. Pa. 2019) (quoting Bhaya v. Westinghouse Elec. Corp., 709 F. Supp. 600,

601 (E.D. Pa. 1989)).  Such motions cannot "be used to relitigate old matters, or to raise arguments

---

[2]      As an alternative to granting its motion for judgment as a matter of law based on an
insufficiency of the evidence, AT&T argues that it is entitled to a new trial pursuant to Rule
50(b)(2) because evidentiary rulings and a lack of curative jury instructions "resulted in a
miscarriage of justice."  Mot. 45.  I assume that AT&T's reference to Rule 50(b) incorporates a
reference to Rule 59, which provides the proper mechanism for AT&T to raise such a request at
this stage in the proceedings.  See Amazon Produce Network, LLC v. NYK Line, 679 F. App'x
166, 168 (3d Cir. 2017) ("In determining how to construe an ambiguous motion, we have instructed
courts to focus 'on the function of the motion, not its caption.'") (quoting Turner v. Evers, 726
F.2d 112, 114 (3d Cir. 1984)); see also Lincow, 715 F. Supp. 2d at 626-27.  Furthermore, the
"miscarriage of justice" standard applies where a party's request for a new trial is based on
allegations that "the verdict is against the weight of the evidence." Pierce v. City of Phila., 391 F.
Supp. 3d 419, 432 (E.D. Pa. 2019).  But AT&T does not request a new trial on the ground that the
jury's verdict in favor of Ray went against the weight of the evidence; rather, it argues that the
evidence was insufficient to support the jury's finding that AT&T discriminated against Ray based
on age.

or present evidence that could have been raised prior to the entry of judgment." <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright and A. Miller, <u>Federal Practice and Procedure</u> § 2810, 127-28 (2d ed. 1995)).  I also may not grant a new trial for harmless error. <u>Vandenbraak v. Alfieri</u>, 209 F. App'x 185, 189 (3d Cir. 2006) (citing Fed. R. Civ. P. 61).

### III.   ANALYSIS

#### A.  The Evidence Was Sufficient for the Jury to Return a Verdict in Favor of Ray

AT&T maintains that the evidence does not support the jury's conclusions that age was a determinative factor in its selection of Ray for surplus, or, in the alternative, that AT&T willfully or with reckless disregard violated the ADEA.  I disagree.

##### 1.   There Was Sufficient Evidence from Which the Jury Could Reasonably Find That Age Was a Determinative Factor in AT&T's Selection of Ray for Surplus

Ray's case was premised on three theories: "(1) that AT&T allegedly promoted a culture of bias against older workers; (2) AT&T allegedly failed to follow its own policies in the 2017 surplus exercise; and (3) the ratings allegedly were a 'ruse' designed to hide age bias."  Mot. 17. AT&T argues that none of these theories are supported by the evidence. <u>Id.</u>  It offers the following in support:

- **Culture of Age Bias**:
  - (1) Van Buskirk's LinkedIn articles, as well as the New York Times article, failed to reasonably show age bias. <u>See</u> Mot. 18-22.
  - (2) The 2016 time-in-role email exchange failed to reasonably show age bias. <u>See</u> <u>id.</u> at 22-23.
  - (3) Jeffrey Joss's "Happy Birthday" email failed to reasonably show age bias. <u>See</u> <u>id.</u> at 23-24.

- o (4) Engagement results by generational cohort failed to reasonably show age bias.  See id. at 24-25.

- o (5) AT&T employees wearing jeans in the workplace failed to reasonably show age bias.  See id. at 25-26.

- o (6) AT&T employee ages failed to reasonably show age bias.  See id. at 26-32.

- **Failure to Follow Policies During the 2017 Surplus**:

  - o (1) AT&T's decision to exclude Woodard from Affected Work Group 12 was consistent with AT&T's policies.  See id. at 33-34.

  - o (2) The surplus was not a "follow-the-work" surplus, and there was "nothing about Gill's and Perez's transfers for personal reasons [that] reasonably suggests that age was a determinative factor in Ray's surplus selection."  See id. at 34-36.  The Gill and Perez transfers were a "normal-course-of-business swap."  See id. at 36-38.

- **Surplus Ratings as a "Ruse"**:

  - o (1) Ray is "not competent to express an opinion concerning her relative value to the company."  See id. at 38-39.

  - o (2) Cavalieri's ratings in 2017 were similar to those that she gave during the 2016 surplus and consistent with the ratings she gave during the 2016 performance review.  See id. at 39.

  - o (3) Ray "conceded that she was concerned about being selected for surplus in 2017."  See id. at 40.

10

    o  (4)  The record does not support Ray's theory that "she should have been rated higher because of her longer tenure."  See id. at 40-41.

    o  (5)  Ray's disagreement with Cavalieri's ratings is, as a matter of law, insufficient to prove her claims.  See id. at 41.

AT&T asks me to reweigh the evidence, determine the credibility of witnesses, and substitute AT&T's version of the facts for the jury's version.  AT&T not only discounts that the jury rejected AT&T's version of the facts and theory of the case but suggests that I ignore the jury's verdict and conduct a new trial.  See Lightning Lube, Inc., 4 F.3d at 1166.

Given the witness testimony and documents presented at trial, the record in no way is "critically deficient of the minimum quantum of evidence" upon which the jury could reasonably base its finding that age was a determinative factor in AT&T's surplus and termination of Ray. See Pitts, 646 F.3d at 155.  Rather, there was ample evidence for the jury to reasonably conclude that age had a determinative role in AT&T's decision to surplus and fire Ray.  See Resp. 9-22.  For example, it was reasonable for the jury to find that Van Buskirk's LinkedIn articles, emails, and management position contributed to a culture of age bias in the company.[3]  See, e.g., Hearing Tr. Vol. IV, 36:25-37:2 (Van Buskirk testifying that she was the ultimate decision maker during the 2017 surplus); P-72 (LinkedIn article expressing concern that AT&T was "old and stodgy" and

---

[3]    AT&T argues that the Third Circuit's decision in Fowler v. AT&T, Inc., 19 F.4th 292 (3d Cir. 2021) precludes my determination that the jury could reasonably rely on the New York Times article's discussion as evidence of pretext.  See Mot. 19.  The Court in Fowler affirmed summary judgment in favor of AT&T in part on the basis that the evidence was insufficient "for a jury to conclude that her particular ratings were pretext for discriminatory bias."  19 F.4th at 302.  It stated in a footnote, "[w]e are confident that no reasonable juror would view the very general statements made by AT&T senior management about how the company has an aging workforce and the need to reinvent the company as evidence of pretext in Fowler's case."  Id. at 307 n.7 (emphasis added). But, in Ray's case, the jury did just that after hearing Van Buskirk testify and rejecting her explanations.  The jury's credibility assessment of Van Buskirk is unassailable.  See Lightning Lube, Inc., 4 F.3d at 1166.

praising a New York Times article, see P-71, discussing AT&T's aging workforce and need to reinvent itself); P-73 (LinkedIn article discussing benefits of being young in the workforce).  It was also reasonable for the jury to find incredible Van Buskirk's testimony that she generally did not assess Ray's estimated age.  Hearing Tr. Vol. IV, 36:2-9 ("Q. Did you think she was closer to 28 or 58 or 50 or 30?  A. Again, I don't really assess ages as I see people, not categorize them."). Likewise, it was reasonable for the jury to conclude that the lack of documentation concerning the Perez and Gill transfers, and the transfers themselves, suggested that AT&T did not follow its own policies and procedures in connection with the surplus and allowed Gill (who was in her late twenties) to take the vacancy that should have gone to Ray.  See Resp. Br. 16 (citing Hearing Tr. Vol. I, 80:10-82:17, 83:9-17; id. at Vol. II, 57:20-58:6; P-77).  Similarly, it was also reasonable for the jury to conclude that the inconsistencies in AT&T's ratings processes suggested that age was a determinative factor in Ray's surplus and termination.  See Resp. Br. 16-18; see, e.g., P-39 & D-31 (Ray received a higher 9-box score for leadership than Kuhn, yet Kuhn received a surplus rating of 5 in leadership while Ray received a 3.8).

AT&T's arguments are meritless, and its motion for judgment as a matter of law will be denied.

### 2. AT&T Has Waived Its Argument That There Was Insufficient Evidence from Which the Jury Could Have Reasonably Found That AT&T Knowingly or with Reckless Disregard Violated the ADEA

AT&T also argues under Rule 50(b) that there is insufficient evidence from which the jury could have reasonably found that it acted knowingly or with reckless disregard in violating the ADEA.  Mot. 41-45.  But AT&T has failed to preserve this argument.  "A motion for judgment as a matter of law pursuant to Rule 50(b) must be preceded by a Rule 50(a) motion sufficiently specific to afford the party against whom the motion is directed with an opportunity to cure

possible defects in proof which otherwise might make its case legally insufficient." <u>Lightning Lube, Inc.</u>, 4 F.3d at 1172 (citing <u>Acosta v. Honda Motor Co.</u>, 717 F.2d 828, 831-32 (3d Cir.1983)). In its Rule 50(a) motion, <u>see generally</u> Hearing Tr. Vol. IV, 97:14-112:15, AT&T contended only that the evidence was insufficient to support a finding that age was a determinative factor; it made no argument in the alternative that, if age was found to be a determinative factor, there was insufficient evidence to support a finding of knowledge or reckless disregard. <u>See, e.g.</u>, Hearing Tr. Vol. IV, 101:12-15 ("And so if we're looking at the question, the only question that the ladies and gentlemen in that box have to answer, whether or not but for Ms. Ray's age she shouldn't have been laid off, there is zero evidence to suggest bias here."). And "[w]hile it might be argued that a sufficiency challenge to finding willful discrimination is encompassed in a challenge to finding age discrimination in general," this argument ignores that proving willfulness or reckless disregard requires an evidentiary showing distinct to that required of demonstrating age as a determinative factor. <u>See Miller v. Eby Realty Grp. LLC</u>, 396 F.3d 1105, 1114 (10th Cir. 2005). AT&T failed to alert Ray "to a possible evidentiary deficiency on this issue," and Ray "was not afforded an opportunity to correct such problem before the case was submitted to the jury, if one existed." <u>Id.</u> at 1114-15 (holding that movant waived Rule 50(b) argument that the evidence was insufficient to support a finding that it knowingly or with reckless disregard violated the ADEA because it failed to raise this ground in its Rule 50(a) motions, instead focusing on whether there was sufficient evidence to support a finding of age discrimination). This constitutes waiver.[4]

---

[4]     AT&T also disputes Ray's counsel's description of the legal standard for willfulness during her closing remarks, which occurred subsequent to its Rule 50(a) motion. Mot. 42 (citing Hearing Tr. Vol. V, 45:12-16). But AT&T did not object to this statement at the time, nor does it move for a new trial under Rule 59 based on this ground. Again, AT&T has failed to preserve its argument. <u>See</u> <u>Pierce v. City of Phila.</u>, 391 F. Supp. 3d 419, 437 (E.D. Pa. 2019) ("Courts consistently hold that a party's failure to object to the impropriety of closing remarks precludes the party from seeking a new trial on those grounds.") (citing <u>Burlington</u>, 2016 WL 1221426, at *8). In any event,

Nevertheless, there is ample evidence for the jury to have reasonably found that AT&T acted knowingly or with reckless disregard in violating the ADEA.  For example, the jury heard Van Buskirk testify that she was the "ultimate decision-maker" for the 2017 surplus and that she knew there was a law that prevented age discrimination:

> Q. And in regards to this surplus that happened in the fall of 2017 you were the ultimate decision-maker, correct?
>
> A. That's right.
>
> Q. And you were aware at the time that there was a law that prohibited age discrimination, correct?
>
> A. Of course, we're familiar with laws.
>
> THE COURT: No, she asked if you were familiar with the law that prohibits age discrimination. Were you aware of that?
>
> THE WITNESS: Yes, absolutely.

Hearing Tr. Vol. IV, 36:25-37:9.  The jury also heard Cavalieri testify that she knew at the time of the surplus that there was a law prohibiting age discrimination.  Hearing Tr. Vol. II, 84:20-23 ("Q. Okay.  When you -- the []surplus ratings and Ms. Ray lost her job, you did know that there was a law that prohibited age discrimination, correct?  A. Yes.").  As discussed in supra Section III.A.1, there was sufficient evidence to support the jury's finding that age was a determinative factor in Ray's selection for surplus and ultimate termination.  From that, coupled with Van Buskirk's and Cavalieri's testimony, it was reasonable for the jury to conclude that AT&T acted knowingly or with reckless disregard in violating the ADEA.

AT&T challenges that determination, arguing that the evidence shows that:

---

my legal instructions properly stated the law and the jury was cautioned to limit its consideration of counsels' statements.  Hearing Tr. Vol. I, 58:5-60:4; id. at Vol. V, 14:5-16:25.

> [It] directed managers to follow a detailed and rigorous process for
> rating and ranking employees in connection with a surplus exercise
> that ensures decisions were based on legitimate, business criteria
> (performance, leadership, skills, and experience ) to the exclusion of
> any impermissible factors. . . .  [And] Cavalieri and Woodard[] both
> testified that their ratings had nothing to do with age but instead
> were based upon observations of their direct reports and their good
> faith business judgments about each individual.

Mot. 42.  AT&T is essentially asking to relitigate the jury's finding that age was a determinative factor in AT&T's surplus and termination of Ray.  That is not my role at the Rule 50(b) stage; I am not to weigh the evidence presented to the jury, determine witness credibility, or substitute my own version of the facts for those presented to the jury.  See Lightning Lube, Inc., 4 F.3d at 1166.

### B.  AT&T Is Not Entitled to a New Trial

In the alternative, AT&T argues that it is entitled to a new trial because "[f]ive evidentiary rulings resulted in a miscarriage of justice."[5]  Mot. 45.  According to AT&T, I erred by: (1) preventing AT&T from questioning Ray about the scores she assigned her subordinates during the surplus; (2) allowing Ray to introduce evidence concerning the 2016 surplus; (3) allowing Ray to admit into evidence the ADEA Listing; (4) preventing Cavalieri from "testify[ing] about [Mundis's] report to [her] regarding the investigation into Ray's employee engagement scores"; and (5) not providing a curative jury instruction "to mitigate counsel's improper suggestion of misconduct" pertaining to the absence of certain documents.  Mot. 45-53.  I disagree, and reject the extraordinary suggestions that those discretionary rulings resulted in a miscarriage of justice.

---

[5]      As discussed in supra Section II, AT&T applies the incorrect legal standard in presenting its argument in favor of a new trial on the grounds of improper evidentiary rulings.

## 1.   It Was Not an Error to Prevent AT&T from Inquiring into the Scores That Ray Assigned Her Direct Reports During the Surplus

Before trial, I ordered that "[a]lthough AT&T may cross-examine Ms. Ray about her involvement in rating employees during the 2017 reduction-in-force, it may not inquire about the individual ratings she provided."   Oct. 28, 2021 Order (doc. 139), ¶ 6.   This ruling was not erroneous.   AT&T—not Ray—was on trial for age discrimination, and the specific ratings given by Ray to her direct reports in an unrelated context were irrelevant to Ray's claims, and had little probative value in deciding whether age was a determinative factor in AT&T's section of Ray for surplus and termination.   Resp. Br. 30.   The minimal probative value—which AT&T suggests to be "that [Ray], too, gave shorter-tenured employees higher ratings than their longer-tenured counterparts in the same exercise, following the same instructions Cavalieri had when rating Ray" (Mot. 47)—is substantially outweighed by the danger of confusing the jury and undue delay.   See United States v. Abel, 469 U.S. 45, 54 (1984) ("A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.   Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403[.]"); see also Oct. 28, 2021 Order, ¶ 6 ("Any probative value of specific ratings of individuals unrelated to this trial is substantially outweighed by risks of jury confusion and waste of time.") (citing Fed. R. Evid. 403). An exhaustive review of each of Ray's ratings would have created a series of mini-trials on issues such as: the age and experience of her direct reports, which direct reports she rated, the performance of those direct reports, and the circumstances guiding her decision to assign the scores that she did.   See Resp. Br. 30.   Those mini-trials would have required the jury to make speculative inferences, risking substantial confusion, and would have lengthened the trial by days, further burdening the jury and distracting it from the issue of Ray's termination.   See, e.g., Farley v.

16

<u>Cessna Aircraft Co.</u>, No. 93-6948, 1996 WL 37823, at *6 (E.D. Pa. Jan. 25, 1996) (declining to revisit an evidentiary ruling on the grounds that it would have confused and misled the jury, as well as necessitated numerous mini-trials requiring fact witnesses, expert opinions, and extending the trial by possibly weeks).

In any event, there was no resulting prejudice.  AT&T argues that allowing questions as to Ray's ratings of other employees would have "diminishe[d] Ray's credibility in her own theory of the case," <u>see</u> Mot. 48, <u>i.e.</u>, "that higher ratings in the skills and experience categories for shorter-tenured employees in the surpluses exercise is evidence of discrimination," <u>id.</u> at 46-47 (citing Hearing Tr. Vol. II, 239:1-240:10).  To highlight this point, AT&T cites to Ray's objection to AT&T's closing argument regarding the ratings Ray provided her direct reports during the surplus.  Mot. 47-48; <u>see also</u> Hearing Tr. Vol. V, 77:20-78:23.  But I permitted AT&T, over Ray's objection, to argue from the documentary evidence that Ray scored shorter-tenured direct reports higher.  <u>See</u> Hearing Tr. Vol. V, 76:10-80:8.  For example, AT&T's counsel argued:

> And by the way, Emily Wiper, you know that name, Eric Decker, Kevin Kuhn, Danny Perez and Giovanni Quiros all had worked at AT&T longer than Mr. Dengleman.  And Judy Cavalieri gave them all 4 for experience, a lower score [than] Mr. Dengleman received from Ms. Ray.
>
> So what does that mean?  Clearly it means that Ms. Ray interpreted the definitions differently than she's now arguing Judy should have.

<u>Id.</u> at 79:14-21.  The jury nevertheless chose to reject AT&T's argument on the ratings theory, and additional evidence from Ray's cross-examination would have been confusing and repetitive.  AT&T's argument for a new trial on this ground is meritless.

### 2. Allowing Evidence of the 2016 Surplus Was Proper Under Rules 401 and 403

AT&T renews its pre-trial objection that evidence of the 2016 Surplus should have been excluded under Rules 401 and 403. Mot. 48-49 (citing Pre-Trial Memorandum (doc. 132) at 13-14). According to AT&T, "the probative value of that evidence [of the 2016 Surplus] was substantially outweighed by the potential to confuse the issues, mislead the jury, and result in undue delay pursuant to Fed. R. Evid. 403." Id. at 48. I disagree. I allowed evidence of the 2016 Surplus "for the limited purpose of showing that AT&T began a planned effort of eliminating the jobs of older employees in this reduction-force that took place 18 months before the reduction-in-force during which Ms. Ray was selected." Oct. 28, 2021 Order, ¶ 3 (citing Fed. R. Evid. 404(b)(2); United States v. Green, 617 F.3d 233, 250 (3d Cir. 2010)). The 2016 Surplus served as relevant background information concerning AT&T's surplus practice and was not substantially outweighed by the risks of unfair prejudice, jury confusion, or waste of time. See id. Additionally, to mitigate "any arguable risk of prejudice or confusion," I permitted the parties to submit a joint proposed jury instruction on the issue. Id. The parties submitted the joint limiting instruction on November 5, 2021 (doc. 141). At the close of Ray's examination of Carlucci on the first day of trial, I read the instruction. Hearing Tr. Vol. I, 93:2-94:9. AT&T raised no objection to the instruction. And its conclusory statement that "[t]his evidence should have been excluded for the reasons stated above in section III.A.1.f" (which spans seven pages and primarily discusses the ADEA Listing), see Mot. 48, does not move the needle—as discussed in supra Section III.A.1, it was reasonable for the jury to conclude from the evidence that there was age bias.

In the alternative, AT&T suggests that, since Ray was permitted to introduce evidence concerning the 2016 Surplus, it "should have been permitted to introduce evidence of an arbitrator's order that Sweeney's selection for surplus in 2016 was not the product of age

discrimination." Mot. 48-49. Before trial, I determined that the Sweeney arbitration award was inadmissible hearsay. See Nov. 12, 2021 Order (doc. 145). Additionally, I concluded that, "[e]ven if the award was somehow admissible . . . its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of issues, misleading the jury, and waste of time" because: (1) "[t]here is a serious risk that the jury would give undue weight to evidence of an award entered by a former judge serving as an arbitrator of a similar dispute; and (2) "[a]dmission of this evidence also would result in a mini-trial about the scope and fairness of the arbitrator's decision, including potential bias of JAMS, the private arbitration company paid by AT&T to decide its arbitration cases." Id. As to AT&T's argument that it needed the arbitration award to respond to evidence concerning the 2016 surplus, I concluded that the parties' joint limiting instruction (see doc. 141) "ensures that it will not be unfairly prejudiced from evidence of the 2016 surplus." Id. AT&T offers no explanation for why this decision was in error, or how it was prejudiced by the ruling. The standard for admissibility under the Federal Rules of Evidence is not one of entitlement: the admissibility of a piece of evidence that may favor a party's position does not guarantee the admissibility of another piece of evidence that favors the other party's position.

### 3. Finding the ADEA Listing Admissible Was Not Erroneous

Before trial, I denied AT&T's motion to exclude the ADEA Listing. See Sept. 22, 2021 Order, ¶ 1 ("Because the Listing provides statistical information about the positions and ages of the persons chosen for the Surplus, it is relevant to whether [Ray] was chosen for the Surplus due to her age."). AT&T contends that this decision was an error under Fed. R. Civ. P. 401 and warrants a new trial. See Mot. 49-50. I disagree. Under Rule 401, "relevant evidence" means evidence having "any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. This

is not a high standard, <u>Gibson v. Mayor and Council of City of Wilmington</u>, 355 F.3d 215, 232 (3d Cir. 2004), and, as I referenced in the September 22, 2021 Order, courts have consistently held that statistical evidence is relevant to establishing disparate treatment, <u>see Abrams v. Lightolier Inc.</u>, 50 F.3d 1204, 1217 (3d Cir. 1995); <u>DeCicco v. Mid-Atlantic Healthcare, LLC</u>, 275 F. Supp. 3d 546, 559 n.8 (E.D. Pa. 2017) (for ADEA claims, "statistical evidence of an employer's 'pattern or practice' of discrimination may be probative of pretext") (quoting <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 542-43 (3d Cir. 1992)).  AT&T counters that the ADEA Listing is relevant only to Ray's OWBPA claim challenging the validity of her release, which I resolved in Ray's favor prior to trial.  <u>See</u> Apr. 28, 2020 Order (doc. 88), ¶ 1.  But the ADEA Listing also was relevant to whether AT&T had a tendency of choosing older employees in its reductions in force.  For example, Van Buskirk is listed on the top of the ADEA Listing as the "region president-large business," <u>see</u> P-43, and she was the ultimate decision marker in the 2017 surplus that resulted in Ray's termination, Hearing Tr. Vol. IV, 36:25-37:2.  The ADEA Listing is relevant to Van Buskirk's involvement in the surplus.

In any event, AT&T fails to argue how allowing the ADEA Listing to be admitted resulted in prejudice.  AT&T makes a vague reference to Ray being able to "impermissibly ask[] the jury to infer discriminatory intent" based on the ADEA Listing, but this alone does not constitute prejudice.  In fact, AT&T used the ADEA Listing during its closing argument to ask the jury to draw an inference from the document that there was no age discrimination.  <u>See, e.g.</u>, Hearing Tr. Vol. V 90:14-17 (MR. GAGE: "[Y]ou'll see in that document, the ADEA listing, you'll see when we get to the director of sales title, it's organized by title.  You'll see that . . . one of the first director of sales who was surplused was 31 years old.").

AT&T's request for a new trial on this ground is without merit.

### 4. AT&T Cannot Point to an Error in the Court' Decision to Limit Questioning of Cavalieri Concerning Her Conversation with Mundis Following his Field Report

AT&T argues that it should have been permitted to question Cavalieri concerning the information that Mundis communicated to her following his field report.[6] However, AT&T agreed at trial, subsequent to Ray's counsel's hearsay objection, that it would limit its questions of Cavalieri to the actions that she took based on what Mundis told her following his field report:

> MR. GAGE: . . . . I'm not asking her – I was very careful.  I don't want her to talk about specific things that people told Mr. Mundis about Ms. Ray.
>
> THE COURT: All right.  Well, let's avoid it by just saying after the conversation, what action did you take based on what he told you?
>
> MR. GAGE: Okay.  We can do that, too, Your Honor –
>
> THE COURT: Thank you.
>
> MR. GAGE: -- if you prefer.
>
> BY MR. GAGE:
>
> Q: After you had the conversation with Mr. Mundis, did you reach any conclusions?
>
> A: Yes.
>
> . . . .

Hearing Tr. Vol. II, 128:19-129:15.  AT&T points to no error in that evidentiary ruling.  Nor could it: it agreed to the decision that it now argues warrants a new trial.  This argument is meritless.

---

[6]     AT&T suggests in the header to Section III(C)(4) that a new trial is warranted because Mundis was not "permitted to testify about his report to Cavalieri."  Mot. 50.  Yet AT&T's substantive discussion is limited to challenging my ruling that restricted its questioning of Cavalieri.  Insofar as AT&T moves for a new trial on the ground that Mundis's testimony was improperly limited, this argument is meritless because I never limited AT&T's questions to Mundis on this basis.

**5. Declining to Provide a Curative Jury Instruction to "Mitigate Counsel's Improper Suggestion of Misconduct" Was Not Erroneous**

At the close of its case, and before closing arguments, AT&T requested that I issue a curative jury instruction to mitigate any adverse inference that AT&T or its counsel acted improperly. Mot. 51-53; Hearing Tr. Vol. IV, 132:21-134:25. According to AT&T, Ray's counsel throughout the course of trial, including during her cross-examination of Mundis, "tr[ied] to suggest to the jury the company has withheld something." Hearing Tr. Vol. IV, 134:7-10. AT&T now suggests that Ray's counsel "repeatedly implied that AT&T had withheld evidence regarding the [Perez and Gill] transfers," during her opening and closing statements.[7] Mot. 52.

As an initial matter, AT&T did not preserve its objections to Ray's counsel's statements during her opening and closing remarks. During her opening remarks, Ray's counsel stated:

> And the image of the black hole is that AT&T, despite being the world's leading telecommunications company, has failed to produce any emails or documents which talk about how the heck Ms. Gill, at 28 years old, takes the exact same position that Ms. Ray had,

---

[7]    AT&T also takes issue with Ray's counsel's questioning of certain adverse witnesses during the trial as to their contact with AT&T's counsel. See Mot. 51-52 (citing Hearing Tr. Vol. I, 46:11-16 (Carlucci), Vol. II, 4:10-17 & 5:18-6:22 (Cavalieri), and Vol. III, 59:6-60:7 (Slocum)); see also Hearing Tr. Vol. IV, 132:17-133:9 (raising the issue prior to closing arguments). According to AT&T, this questioning improperly suggested to the jury that AT&T's counsel were interfering with witness testimony. Id. AT&T seemingly does not move for a new trial based on Ray's counsel's so-called improper questioning; instead, it uses it to bolster its position that Ray's litigation strategy was to discredit AT&T and its counsel. See Mot. 51-53.

To the extent that AT&T requests a new trial on that basis, its argument is meritless. First, AT&T does not explain how the court erred in any of the three instances. AT&T did not object to Ray's counsel's questioning of Carlucci regarding his contact with AT&T's counsel in preparing for testimony. Hearing Tr. Vol. I, 46:13-16. Any suggestion of impropriety on the part of AT&T's communication with Cavalieri during her testimony was resolved with a clarifying question asked by Ray's counsel following a sidebar; AT&T made no objection to the clarifying question at the time. Hearing Tr. Vol. II, 5:25-6:4; see also id. Vol. IV, 132:17-133:9 (Court: "We asked a clarifying question and that ended it."). And, as to Ray's counsel's questions of Slocum, I sustained AT&T's counsel's privilege objections after sidebar. Hearing Tr. Vol. III, 58:17-59:10, 60:9-11. Second, even if there was an error, it is not reasonably probable that the lack of a curative jury instruction influenced the jury's verdict.

> southeast Pennsylvania, when they knew they [made] this decision
> before they even [told] her about the surplus.

Hearing Tr. Vol. I, 23:21-24:2.  Although AT&T takes issue with this statement now, it did not

object to it at the time; nor did it mention these remarks when raising its request for a curative

instruction prior to closing statements.  See Hearing Tr. Vol. IV, 132:21-134:25.  AT&T also

challenges as improper certain remarks that Ray's counsel made during her closing statement:

> So instead, they disappear.  And then the company that says, we
> have a really rigorous process, really rigorous policies.  We really
> follow these things.  We have nothing, not an email, not a document,
> nothing about how they manufactured this and let this happen.  And
> ask yourself why not?
>
> If this is so on the up and up, if there's really, like, nothing wrong
> with this, then why are you so afraid to put it in writing?  Why is
> everything [that] matter[s] all in verbal?

Hearing Tr. Vol. V, 38:9-16.  AT&T did not object to those remarks at trial.  "[I]t is clear that a

party who fails to object to errors at trial waives the right to complain about them following trial."

Waldorf v. Shuta, 142 F.3d 601, 629 (3d Cir. 1998) (citing Murray v. Fairbanks Morse, 610 F.2d

149, 152 (3d Cir. 1979)); see also Pierce, 391 F. Supp. 3d at 437 ("Courts consistently hold that a

party's failure to object to the impropriety of closing remarks precludes the party from seeking a

new trial on those grounds.") (citing Burlington, 2016 WL 1221426, at *8).

Although I "may still review the matter if 'exceptional circumstances' exist—e.g., where

'manifest injustice would result' or where 'counsel failed to object to a fundamental and highly

prejudicial error resulting in a miscarriage of justice'"—there are no such "exceptional

circumstances" here.  Pierce, 391 F. Supp. 3d at 437 (quoting Burlington, 2016 WL 1221426, at

*8); see also Harker v. Chan, No. 15-277, 2018 WL 3599734, at *8-9 (W.D. Pa. July 27, 2018)

(finding that defendants waived any objection to plaintiffs' counsel's opening or closing

statements by failing to object during trial, and "manifest injustice" would not result from a finding

of waiver).  Ray's counsel was simply arguing that the jury draw a reasonable inference from the evidence, and I do not view her remarks as an attack on the integrity of AT&T or its counsel.  See, e.g., Burlington, 2016 WL 1221426, at *9 (declining to view closing remarks concerning a refuted argument as an attack on the veracity of the opposing party's counsel and noting that, even if it was, it would fail to amount to a manifest injustice).  The trial was expertly handled by capable counsel for both parties.  There were no improper personal attacks and challenges to counsel's integrity.

Moreover, as to AT&T's issue with Ray's counsel's questioning of Mundis regarding the absence of documents, the issue whether AT&T documented the Perez and Gill transfers is relevant, and it is not reasonably probable that the jury would infer from Ray's counsel's arguments and questioning that AT&T or its counsel purposefully withheld documents during discovery.  See Hearing Tr. Vol. IV, 134:21-25.

## IV.    CONCLUSION

For the foregoing reasons, AT&T's motion for judgment as a matter of law and, in the alternative, for a new trial will be denied.  An appropriate order follows.


BY THE COURT:

_/s/ Timothy R. Rice_
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE