**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALISON RAY<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>AT&T MOBILITY SERVICES, LLC<br><br>　　　　　Defendant. | No. 2:18-cv-03303-TR<br>Magistrate Judge Timothy R. Rice |

<u>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
PETITION FOR ATTORNEYS' FEES AND COSTS**</u>

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL ARGUMENT ....................................................................................... 2

      A.      Plaintiff Bears the Burden To Show that Hours Worked and Rates Claimed Are Reasonable .................................................................................. 2

      B.      Plaintiff's Attorneys' Rates Are Unreasonable and Must Be Reduced. ............... 3

            1.      Plaintiff Has Not Met Her Burden To Show That Her Attorneys' Rates Are Reasonable. ................................................................................ 3

            2.      The Court Should Reduce CML's Rates In Line With Other Indicia of Reasonableness. ........................................................................ 9

      C.      Plaintiff's Attorneys' Hours Spent Are Unreasonable and Must Be Reduced ........................................................................................................ 12

            1.      This Is Not An Unusually Complex Case, and Plaintiff Was Able to Leverage Prior Work Product from Similar Cases. ............................ 12

            2.      The Court Should Strike Or Reduce Hours Expended on Unnecessary Motion Practice As Unreasonable, Excessive, or Unnecessary. ..................................................................................... 13

            3.      AT&T Should Not Have to Pay for CML's Work in the Dolenti Matter. ............................................................................................ 17

            4.      The Court Should Reduce Hours Where Entries Are Plainly Excessive Or Unreasonable. ................................................................. 18

            5.      CML Billed for Time Spent On Mock Openings and Closings During the Pendency of Discovery ........................................................ 21

            6.      Time Entries Lacking Appropriate Detail Should Be Disallowed ........... 21

III.    CONCLUSION ................................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     **Page(s)**

*Alison Ray v. AT&T Servs. Inc.*,
   No. 19-8009 (Doc. 003113199645) (3d Cir. Apr. 1, 2019) ....................................................19

*Bell v. United Princeton Properties*,
   884 F.2d 713 (3d Cir. 1989)...........................................................................................................2

*Blum v. Stenson*,
   465 U.S. 886 (1984)........................................................................................................................2

*Bronstein v. Harbor Servs.*,
   Civil Action No. 1:88-cv-05074 (D.N.J.) ....................................................................................4

*Cicero v. Quality Dining, Inc.*,
   Civil No. 16-5806, 2017 WL 1217132 (D.N.J. Apr. 3, 2017)................................................15

*Feret v. First Union Corp.*,
   Civil Action No. 2:97-cv-06759 (E.D. Pa. Aug. 16, 1999) ECF 104 .......................................4

*Finch v. Hercules Inc.*,
   941 F. Supp. 1395 (D. Del. 1996)................................................................................................2

*Fowler v. AT&T et al.*,
   No. 18-cv-667 (D.N.J. Jan. 17, 2018) ECF No. 1.....................................................................12

*Fowler v. AT&T, Inc.*,
   No. 3:18-cv-00667-MAS-LHG (D.N.J. June 4, 2018) ECF No. 32 .........................................13

*Garden v. General Elec.*,
   Civil Action No. 3:91-cv-01204 (D.N.J. June 7, 1993)..............................................................4

*Gerundo v. AT&T et al.*,
   Civil Action No. 5:14-cv-05171 (E.D. Pa. Jan. 25, 2016) ECF No. 92...................................12

*Giedgowd v. Cafaro Grp., LLC*,
   Civil Action No. 20-6184, 2021 WL 4963532 (E.D. Pa. Oct. 26, 2021) .................1, 6, 11, 21

*Griffin v. Leaseway Deliveries, Inc.*,
   Civ. A. No. 89-6522, 1992 WL 398381 (E.D. Pa. Dec. 31, 1992)....................................14, 16

*Hensley v. Eckerhart*,
   461 U.S. 424 (1988).....................................................................................................................14

*Horowitz v. AT&T, Inc.*,
No. 17-cv-4827-BRM-LHG, 2018 WL 1942525 (D.N.J. Apr.25, 2018)
(unpublished), *opinion clarified on denial of reconsideration*, 2019 WL 77306
(E.D. Pa. Jan. 2, 2019) ...........................................................................................15, 20

*Jones v. Pennsylvania State Police*,
No. CV 16-4205, 2018 WL 2197226 (E.D. Pa. May 11, 2018) .............................10

*Korea Week, Inc. v. Got Capital, LLC*,
Civil Action No. 15-6351, 2016 WL 3049490 (E.D. Pa. May 27, 2016)................15

*Kubischta v. Schlumberger Tech Corp*,
Civil Action No. 15-1338, 2016 WL 3752917 (W.D. Pa. July 14, 2016) ..............15

*Larson v. AT&T Servs. Inc.*,
No. 3:18-cv-08114-DJH (D. Ariz. Oct. 17, 2018) ECF No. 24.............................14

*Maldonado v. Houstoun*,
256 F.3d 181 (3d Cir. 2001)..............................................................................2, 10

*Mammen v. Thomas Jefferson Univ., et. al.*,
Civil Action No. 20-127 (E.D. Pa. Oct. 13, 2021) ECF 74 ...........................4, 5, 12

*Marthers v. Gonzalez*,
Civil Action No. 05-cv-3778 (E.D. Pa. Aug. 13, 2008) ECF 81 ..............................4

*Middlebrooks v. Teva Pharms. USA, Inc.*,
Civil Action No. 17-412, 2019 WL 936645 (E.D. Pa. Feb. 26, 2019) ........... *passim*

*Oubre v. Entergy Operations, Inc.*,
522 U.S. 422 (1998)................................................................................................15

*United States ex rel. Palmer v. C&D Technologies, Inc.*,
897 F.3d 128 (3d Cir. 2018)......................................................................................3

*Plumley v. Harbor Linen*,
Civil Action No. 1:88-cv-01557 (D.N.J.) ................................................................4

*Robinson v. Fetterman*,
387 F. Supp. 2d 432 (E.D. Pa. 2005) ................................................................13, 17

*Rode v. Dellarciprete*,
892 F.2d 1177 (3d Cir. 1990).............................................................................2, 16

*Velazquez-Moron v. Long*,
No. Civil Action No. 20-2308, 2021 WL 5906233 (E.D. Pa. Dec. 14, 2021).........10

Defendant AT&T Mobility Services LLC ("AT&T") hereby responds to Plaintiff's Alison Ray's Petition for Attorneys' Fees and Costs (ECF 172.)

## I.       INTRODUCTION

This is a straightforward case alleging age discrimination under a single statute, the Age Discrimination in Employment Act (Count I), and alleged violations of the Older Workers Benefit Protection Act (Count II). The Court disposed of Count II over three years ago. Since then, work on this matter focused on a single claim of age discrimination. Plaintiff's counsel, Console Mattiacci Law ("CML"), has litigated similar matters against AT&T on similar facts and legal theories. (Pl.'s Br. at 7–8.) The trial lasted four and one-half days.

Now, Plaintiff seeks nearly $850,000 in attorneys' fees. For the most senior attorneys, she seeks payment of rates far in excess of what this Court has deemed reasonable. CML spent unreasonable amounts of time drafting documents that appear to be based on prior CML work product from earlier cases against AT&T. CLM also spent hours on unnecessary motion practice, including a motion for conditional certification (when Ray contractually agreed not to pursue one) and opposing a motion for protective order when CML had previously agreed to one with AT&T. In some instances, multiple attorneys appear to have performed the same work on the same motions on the same dates, resulting in excessive and duplicative billing.

This Court should reduce Plaintiff's attorneys' fees to a reasonable prevailing market rate as it did in two recent cases, *Middlebrooks v. Teva Pharms. USA, Inc.*, Civil Action No. 17-412, 2019 WL 936645 (E.D. Pa. Feb. 26, 2019), and *Giedgowd v. Cafaro Grp., LLC*, Civil Action No. 20-6184, 2021 WL 4963532 (E.D. Pa. Oct. 26, 2021). The Court should also reduce the amount of time for which Plaintiff's fees should be awarded.

## II.   LEGAL ARGUMENT

### A.   Plaintiff Bears the Burden To Show that Hours Worked and Rates Claimed Are Reasonable.

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (citation omitted). The product of this calculation is the lodestar. *Middlebrooks*, 2019 WL 936645, at *4. As the party seeking attorneys' fees, Plaintiff bears the burden to prove that both components of the lodestar—the rates claimed and the hours spent—are reasonable and supported by evidence. *Id.* at *4. A reasonable hourly rate is tied to the prevailing rates in the legal community. *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). Reasonably expended hours do not include work that is excessive, redundant, or otherwise unnecessary. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

The party opposing the petition may challenge the reasonableness of the requested fee by asserting specific objections via affidavit or brief. *Middlebrooks*, 2019 WL 936645, at *4 (citations omitted). The adverse party "need not point to each individual excessive entry; instead, it 'need only specify with particularity the reason for its challenge and the category (or categories) of work being challenged.'" *Finch v. Hercules Inc.*, 941 F. Supp. 1395, 1423 (D. Del. 1996) (citing *Bell v. United Princeton Properties*, 884 F.2d 713, 721 (3d Cir. 1989)).

Once the adverse party raises objections, "the district court has a great deal of discretion to adjust the fee award in light of those objections." *Rode*, 892 F.2d at 1183 (citation omitted). The court has "a positive and affirmative function" in determining an appropriate fee award. *Middlebrooks*, 2019 WL 936645, at *4. The court's role requires it to "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Id.*

2

(citing *United States ex rel. Palmer v. C&D Technologies, Inc.*, 897 F.3d 128, 139 (3d Cir. 2018)). Where a fee petition inadequately documents hours claimed, those hours may be deducted from the ultimate award. *Id.* at \*5.

      **B.**    **Plaintiff's Attorneys' Rates Are Unreasonable and Must Be Reduced.**

          **1.**    **Plaintiff Has Not Met Her Burden To Show That Her Attorneys' Rates Are Reasonable.**

Plaintiff has failed to show that the claimed rates for three senior attorneys are reasonable and within the range of prevailing market rates for attorneys with their backgrounds, skills, and experience. Plaintiff is not entitled to recover attorneys' fees at the inflated rates requested for Mr. Console ($900), Ms. Mattiacci ($730), or Ms. Saint-Antoine ($730) (the "Challenged Rates").[1] Courts have previously rejected the same arguments made in the instant petition, and have reduced CML's rates on multiple occasions. The Court should therefore reduce the Challenged Rates to align with past precedent.

          **a.**    **The Challenged Rates Have Not Been Approved In Similar Litigation.**

Plaintiff fails to cite even one recent decision approving the Challenged Rates in a single-plaintiff case. The majority of her authorities are easily distinguishable. The reasonableness of CML's hourly rates were not contested in *Aaron, et al.v. ACE* and *Bolton v. LINA*, and this Court has previously rejected these cases as not probative. *Middlebrooks*, 2019 WL 936645 at \*12 ("The rates obtained by Console Mattiacci in class actions ***or in uncontested fee requests*** do not

---

[1] AT&T does not challenge the rates claimed for Mr. Orlow, Ms. Uebler, Ms. Derstine-Friesen, or Ms. Mendelawe. Their hourly rates are consistent with the range recommended by Community Legal Services, Inc. for attorneys with similar years of experience. (Declaration of Sara B. Tomezsko, Exh. A.)  AT&T does, however, challenge the number of hours expended at those rates for the reasons set forth below in section C. AT&T separately challenges the hours expended by Ms. Norman as excessive and unnecessary in light of their clerical nature. AT&T asks that the Court strike these hours from the lodestar calculation entirely in section C.4, *infra*, but in the alternative requests that they be reimbursed at a more appropriate paralegal rate.

define reasonableness today.") (emphasis supplied). The *Middlebrooks* court also rightly rejected plaintiff's reliance on *Sessions v. Owens-Illinois, Inc.*, as it "involved court approval of an ERISA class action settlement which is not an appropriate comparator and the decision of the district court does not show the hourly rates approved." *Id.* at *12 n.58.

The bulk of Plaintiff's remaining authorities are over 10 years old. *Marthers v. Gonzalez*, Civil Action No. 05-cv-3778 (E.D. Pa. Aug. 13, 2008) ECF 81 (in which Mr. Console sought approval of his fees billed at an hourly rate of $380); *Feret v. First Union Corp.*, Civil Action No. 2:97-cv-06759 (E.D. Pa. Aug. 16, 1999) ECF 104; *Garden v. General Elec.*, Civil Action No. 3:91-cv-01204 (D.N.J. June 7, 1993); *Plumley v. Harbor Linen*, Civil Action No. 1:88-cv-01557 (D.N.J.); *Bronstein v. Harbor Servs.*, Civil Action No. 1:88-cv-05074 (D.N.J.). Plaintiff offers no evidence of the hourly rates sought in most of these older cases; even if she had, CML's rates from over a decade ago are not probative of reasonableness today. *Middlebrooks*, 2019 WL 936645 at *12 (rejecting CML's reliance on *Marthers* and other cases from 2005 and 2007; "The offered rates in other cases are dated at best and approving those rates lacks a basis of reasonableness for employment or trial counsel in this District at this time.").

**b.   Recent Decisions Do Not Support the Challenged Rates.**

The few recent decisions Plaintiff cites are more illustrative of how this Court should rule on the fees petition; they all dictate a reduction of the Challenged Rates. Judge Beetlestone ordered payment of CML's attorneys' fees at the full rate requested in October 2021. *Mammen v. Thomas Jefferson Univ., et. al.*, Civil Action No. 20-127 (E.D. Pa. Oct. 13, 2021) ECF 74. According to CML, the rates approved by the *Mammen* court were the firm's "usual and customary rates." (Pl. Br. at 26.) CML omits from its brief, however, that the defendant did not oppose the fee petition, and those "usual and customary rates" reflect an ***hourly rate of $450 for a CML partner with 17 years of experience***. *Mammen*, Civil Action No. 20-127, ECF 70 at 5.

4

CML represented to the court five months ago that the $450 partner rate "is consistent with rates charge [*sic*] by attorneys with similar backgrounds, experience, and abilities in the Philadelphia market," *id.*, and "consistent with those charged by defense firms based in Philadelphia according to the 2017 National Law Journal Survey of Billing Rates," the same document attached to Plaintiff's instant motion as Exhibit 12. *Id.*[2]

In *Middlebrooks v. Teva Pharms. USA, Inc.*, another single-plaintiff age discrimination case, this Court reduced CML's hourly rates for Mr. Console and Ms. Mattiacci from $940 to $660 and $750 to $570, respectively. The Court rightly reduced their rates because CML failed to show they were reasonable. *Id.* at 12.[3] The evidence marshalled in support of the fee petition here suffers from many of the same infirmities noted in *Middlebrooks*.

*First*, courts "may look to what a willing client would pay a willing lawyer" to assess reasonableness. *Middlebrooks*, 2019 WL 936645 at *12. But as in *Middlebrooks*, CML has failed to offer evidence of what its actual willing client, Ms. Ray, was willing to pay as a reasonable hourly rate in this case. *Id.* Instead, the record clearly shows that Ms. Ray was **not** willing to pay the rates her attorneys now claim. According to Mr. Console, he offered Ms. Ray the option to pay the firm's usual and customary rates or the greater of (a) a court award or settlement of attorneys' fees or (b) 40% of a judgment. Console Decl. (Pl.'s Exh. 3), ¶ 15. **Ms. Ray chose not**

---

[2] A copy of CML's submission in *Mammen v. Thomas Jefferson Univ., et. al.*, Civil Action No. 20-127 (E.D. Pa. Oct. 13, 2021) is attached hereto as Tomezsko Decl., Exh. B.

[3] CML characterize the *Middlebrooks* court's rationale for reducing Mr. Console's hourly rate as motivated in part by "the lack of detail in some [timekeeping] descriptions and lack of context from which a more detailed description may be inferred." (Pl.'s Br. at 29.) The lack of detail in certain time entries was a basis for reducing the number of hours worked on the case, but had nothing to do with the court's decision to reduce the hourly rates of the three most senior attorneys staffed to the matter. *Middlebrooks*, 2019 WL 936645 at *8–9.

***to pay the firm's usual and customary rates***.[4] *Id.* That fact strongly militates against a finding of reasonableness. *See Middlebrooks*, 2019 WL 936645 at *12 (lack of evidence that plaintiff was willing to pay usual and customary rates suggested those rates were not reasonable).

*Second*, CML offers the declarations of four Pennsylvania-based attorneys as evidence of what is allegedly reasonable in the local market. None of those declarations show that the Challenged Rates are reasonable.

Sidney L. Gold, an attorney with 47 years of experience, swears that his current hourly rate is $650. (Gold Decl. (Pl.'s Exh. 10), ¶ 5.) Just last year, this Court found Mr. Gold's rate to be the most persuasive evidence of a reasonable hourly rate for Mr. Console. *Giedgowd*, 2021 WL 4963532, at *5–6 (reducing Mr. Console's rate from $960 to Mr. Gold's rate of $650). There is no compelling reason to adopt a different approach here. CML also fails to justify why Ms. Saint-Antoine or Ms. Mattiacci command a higher rate than Mr. Gold, who is a far more experienced attorney with "a substantial employment rights docket in [this] Court." *Id.* at *5.

Alice W. Ballard swears she focuses her practice on representing employees in workplace matters. (Ballard Decl. (Pl.'s Exh. 7), ¶¶ 2–3.) Her declaration lacks probative value because she does not provide her own hourly rate. *See Middlebrooks*, 2019 WL 936645 at *12 (rejecting affidavits offered by local attorneys that failed to offer evidence of their own hourly rates). In lieu of that evidence, she swears that as of January 1, 2022, hourly rates of undisclosed members of the local chapter of the National Employment Lawyers Association range "between $215 per hour for inexperienced attorneys to $900 per hour for exceptional attorneys of the highest level

---

[4] It is unclear why, if Ms. Ray chose not to pay CML's customary and usual hourly rates, those amounts were allegedly set forth in Ms. Ray's representation agreement with CML (which the firm has failed to attached to its petition). (Console Decl., ¶ 34.) Not surprisingly, CML has offered no evidence to suggest that Ms. Ray made any representation in her contingency agreement with the firm that the Challenged Rates are reasonable.

of experience and reputation." (Ballard Decl., ¶ 6.) Ms. Ballard offers nothing to enlighten the Court as to what firms charge those rates and who is willing to pay them.

Membership in the local chapter of NELA is not publicly available, but the composition of its Board is. (Tomezsko Decl., Exh. C.) Half of the Board is comprised of CML attorneys. *Id.* The other two members are affiliated with Outten & Golden LLC (a national plaintiff-side firm headquartered in New York) and Katz Marshall & Banks (a national firm with offices in Philadelphia and Washington D.C.). *Id.* Rates charged by large firms like Outten & Golden are not indicative of reasonableness here, as "large law firms must also account for significant overhead not present, at least to the same extent, at Console Mattiacci." *Middlebrooks*, 2019 WL 936645 at *12. Katz Marshall & Banks touts itself as representing high profile clients like Dr. Christine Blasey Ford, former aides to Gov. Andrew Cuomo accusing him of harassment, and the Washington Football Team. (Tomezsko Decl., Exh. D.) To their extent their rates are used to justify the high end of the range Ms. Ballard provides, their work is materially different in scope and character than the work performed by CML representing local individuals against corporations in single-plaintiff matters.

Robert A. Davitch swears he has 46 years of legal experience. (Davitch Decl. (Pl.'s Exh. 8), ¶ 2.) His hourly rate is $875 per hour "for all matters, including employment law matter [*sic*]," which he swears is "reasonably in light of the local market for lawyers ***of my level of experience*** in this field." (*Id.*, ¶ 12) (emphasis supplied). None of the attorneys seeking fees here possess Mr. Davitch's "level of experience." He has least six more years practicing law than Mr. Console, 13 more years than Ms. Saint-Antoine, and twice as many years of experience as Ms. Mattiacci. (Davitch Decl., ¶ 2; Pl.'s Br. at 9, 12; Mattiacci Decl., (Pl.'s Exh. 4), ¶ 5.) Plaintiff fails to explain why Mr. Console should be entitled to a higher rate for less years of experience,

or why Ms. Mattiacci and Ms. Saint-Antoine bill at rates only $145 less than Mr. Davitch despite having significantly less experience.

Evidence of Mr. Davitch's rate fails to persuade for the additional reason that his firm claims to also represent institutions which, as CML admits, have greater resources and can afford higher legal fees. (*See, e.g.*, Pl.'s Br. at 7 (noting that "AT&T is a company with enormous resources armed with tenacious attorneys and committed to battle at every turn").) Indeed, Mr. Davitch's firm's website indicates that its attorneys are first and foremost "business lawyers and commercial lawyers," are "fortunate enough to be lawyers for some extraordinarily affluent individuals," and that "[a] significant number of [its] clients own companies that provide sales and representation services for manufacturers." (Tomezsko Decl., Exh. E.) Once again, CML compares its rates to attorneys who do substantially different work and represent substantially different clients.

Joe H. Tucker does not provide evidence of his hourly rate in his declaration, and the Court may disregard it on this basis alone. *Middlebrooks*, 2019 WL 936645 at *12.

> **c.      Rates Paid By Large Management-side Firms Are Not Probative of Reasonableness.**

CML cannot justify their rates with citation to the rates charged by select management-side firms with offices in Philadelphia. (Pl.'s Br. at 25–26, 29–30 (citing average partner rates charged by Blank Rome, Cozen O'Connor, Pepper Hamilton, Saul Ewing).) As the *Middlebrooks* court aptly summarized when rejecting this evidence as probative:

> Average hourly rates at large law firms often include lawyers who avoid courtrooms and find well-paid comfort in boardrooms, administrative, and patent hearings. The large law firms must also account for significant overhead not present, at least to the same extent, at Console Mattiacci. In further examining those large firm rates, we should look to the average partner rates; there is no basis to simply jump to the highest billing rate in a large firm and set this rate as reasonable.

2019 WL 936645 at *12. Instead of looking only to large management-side firms that bear no resemblance to CML's practice, this Court can discern an average hourly partner rate by considering **all** of the firms listed in Plaintiff's Exhibit 12 who reported this data and whose largest office is located within the Eastern District of Pennsylvania.  The average hourly partner rate is closer to $492 than it is to the figures CML cites.[5]

CML's reliance on the 2018 rates charged by Paul Hastings's ERISA practitioners also misses the mark. (Pl.'s Br. at 29-30.) Paul Hastings' ERISA practitioners work in the firm's tax, not employment, department. (Tomezsko Decl., ¶ 9.) Their rates are higher than those charged by attorneys with similar years of experience but who practice employment law. (*Id.*). In any event, Paul Hastings has no office in the Philadelphia area. (*Id.*, ¶ 10.) Its largest offices are in New York and Los Angeles, cities with far higher costs of living and overhead than Philadelphia. (*Id.*) Comparison to fees charged by Paul Hastings attorneys is therefore irrelevant to what is reasonable in **this** legal market.

## 2. The Court Should Reduce CML's Rates In Line With Other Indicia of Reasonableness.

This Court may look to other indicia of reasonableness to set the appropriate rates. *Middlebrooks*, 2019 WL 936645, at *13 (considering rates paid to other attorneys in the area and the guidelines established by the Community Legal Services). AT&T submits that more reasonable rates can be established with reference to the Community Legal Services guidelines, record evidence of rates charged by comparable attorneys, and the customary and usual rates

---

[5] This figure is derived from averaging the following rates reflected in Exhibit 12: Blank Rome LLP ($615); Center City Law Offices ($250); Ciardi Ciardi & Astin ($515); Cozen O'Connor ($710); David Dunn Law Offices PC ($300); Dilworth Paxson LLP ($533); Fox Rothschild LLP ($725); Kurtzman Steady LLC ($480); Lohr & Associates, Ltd. ($300); McCrystal Law Office ($250); Pepper Hamilton ($765); Roach, Leite $ Manyin, LLC ($250); Saul Ewing LLP ($710).

charged by CML attorneys as reflected in recent filings in other cases.

The rate schedule provided by Community Legal Services "has been approvingly cited [by] the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia." *Middlebrooks*, 2019 WL 936645 at \*13 (citing *Maldonado*, 256 F.3d at 187). Courts have cited the guidelines approvingly as recently as last year. *See Velazquez-Moron v. Long*, No. Civil Action No. 20-2308, 2021 WL 5906233, at \*2 n.2 (E.D. Pa. Dec. 14, 2021) ("The fee schedule of Community Legal Services, Inc. is an appropriate metric for the reasonableness of hourly rates.") (citing *Maldonado*, 256 F.3d at 187–88), *appeal filed*, No. 20-1080 (3d Cir. Jan. 12, 2022). Community Legal Services rates are just as appropriate in employment discrimination cases as they are in other contexts. *See Middlebrooks*, 2019 WL 936645, at \*45-46 (reducing Mr. Console's rate from $940 to $660, reflecting the current Community Legal Services rates plus a $10 increase); *Jones v. Pennsylvania State Police*, No. CV 16-4205, 2018 WL 2197226, at \*3–4 (E.D. Pa. May 11, 2018) (after plaintiff's attorney prevailed on hostile work environment and retaliation case at trial, court reduced claimed $750 rate to $635 per hour for trial work consistent with Community Legal Services schedule and $350 per hour for pre-trial work).

In *Middlebrooks*, the court looked to the Community Legal Services rates to reduce Mr. Console's rate from $940 to $660. 2019 WL 936645 at \*13–14 (adding $10 to $650 Community Legal Services rate to account for passage of time). A $660 rate is appropriate here as well. Even if this Court concludes that Community Legal Services rates are not a fair guide, that $660 amount is still appropriate given the rates charged by comparable attorneys in the marketplace, as reflected in Plaintiff's own evidence supporting her petition. Sidney Gold, an employment lawyer with six years more experience than Mr. Console and an extensive employment law

docket, swears that his current hourly rate is $650. (Gold Decl., ¶ 5.) This Court held five months

ago that Mr. Gold's rate was the most persuasive evidence of a reasonable rate for Mr. Console,

and reduced Mr. Console's rate accordingly. *Giedgowd*, 2021 WL 4963532, at *6. This amount

is also in line with the usual and customary rate charged by a local attorney who has represented

AT&T in cases against CML in this district and has 23 years of experience practicing on

employment law. (*See* Declaration of William J. Leahy, ¶¶ 5, 10.) No matter how the Court

chooses to arrive at the $660 rate for Mr. Console, it is plainly reasonable based on prior

precedent.

The *Middlebrooks* court also reduced Ms. Mattiacci's rate from $750 to $570 based on

the rates charged by defendant's counsel in that case, Pennsylvania-based lawyers from the firm

Stevens & Lee. 2019 WL 936645 at *13–14. This is an appropriate rate here. Ms. Mattiacci's

primary role in this matter was to try this case to the jury, and both this case and *Middlebrooks*

were age discrimination claims tried over the course of approximately five days. *Id.* at *3. This

rate is more than fair, given it is higher than the recommended Community Legal Services rate

for an attorney with Ms. Mattiacci's experience ($475-$530), and the trial in this matter was less

complex than *Middlebrooks*, which required Ms. Mattiacci to try multiple claims to the jury. *Id.*

at *4 (trial involved claims for age and national origin discrimination, retaliation, and hostile

work environment).

Ms. Saint-Antoine supervised pre-trial matters in this case, and assisted with various

motions. (Saint-Antoine Decl., ¶ 13.) She was not trial counsel for this matter. Accordingly, Ms.

Saint-Antoine's rate should be reduced to a blended rate of $560, which reflects an average of

the median Community Legal Services rate for an attorney with Ms. Saint-Antoine's level of

experience ($650-$700) and the $450 hourly rate charged by another CML partner for pre-trial

activity in 2021, which CML represented "is consistent with rates charge [*sic*] by attorneys with similar backgrounds, experience, and abilities in the Philadelphia market." *Mammen*, Civil Action No. 20-127, ECF 70 at 5.

### C.   Plaintiff's Attorneys' Hours Spent Are Unreasonable and Must Be Reduced.

#### 1.   This Is Not An Unusually Complex Case, and Plaintiff Was Able to Leverage Prior Work Product from Similar Cases.

CML claims that this matter was unusually complex. It was not. There were only two claims at issue, one was disposed of three years ago and well before the vast majority of the time worked by CML in the case.[6] A single claim proceeded to trial. Moreover, and as Plaintiff admits, CML has brought several age discrimination cases against AT&T for terminations resulting from the company's standard surplus procedures, and CML attorneys hold themselves out as having familiarity with both the legal and factual issues presented in those cases. (Pl.'s Br. 7–8.) That level of familiarity should have resulted in efficiencies, but that does not seem to be the case here. The hours reflected in the following entries should be reduced as excessive and unnecessary.[7]

The Complaint submitted in this matter is substantially similar in form and substance to at least two earlier-filed complaints in *Fowler v. AT&T* and *Horowitz et al. v. AT&T. Compare* ECF 1 *with Fowler v. AT&T et al.*, No. 18-cv-667 (D.N.J. Jan. 17, 2018) ECF No. 1 *and Horowitz v. AT&T, Inc. et al.*, Civil Action No. 17-cv-4827 (D.N.J. June 29, 2017) ECF No. 1.

---

[6] CML incurred **nearly half** of its claimed fees for work performed between July 1, 2021, and February 14, 2022.

[7] The fee petition itself illustrates CML's reliance on prior work product. A comparison of ECF 172 to a similar fee petition filed in *Gerundo v. AT&T et al.*, Civil Action No. 5:14-cv-05171 (E.D. Pa. Jan. 25, 2016) ECF No. 92 reveals that CML wholesale adopted portions of its earlier brief for its current submission. CML neglected to edit outdated information from its *Gerundo* memorandum, including the 2013 figures for fees charged by three of the four large management-side firms cited on page 26 of Plaintiff's brief.

Nevertheless, Mr. Orlow spent over 15 hours drafting the Complaint, and Ms. Saint-Antoine spent two hours reviewing it. (Tomezsko Decl., Exh. F at Annex 1 (time entries associated with drafting and reviewing complaint).) This time is excessive and unnecessary given the availability of prior work product, substantial portions of which appear to have been recycled for this case. This Court should reduce Mr. Orlow's time drafting the complaint to five hours, and Ms. Saint-Antoine's time reviewing it to one hour. *Cf. Robinson v. Fetterman*, 387 F. Supp. 2d 432, 436 (E.D. Pa. 2005) (reducing time spent conferencing with plaintiff and drafting complaint from 15.7 hours to 5 in light of attorney's years of experience).

CML moved for partial summary judgment to void Plaintiff's ADEA waiver under the Older Works Benefit Protection Act in a prior matter against AT&T, *Horowitz et al.* Pl.'s Br. at 7. The arguments asserted in that motion are nearly identical to those asserted in the same motion filed in this case. *Compare* ECF 13-1 *with Horowitz*, No. 17-cv-4827 (D.N.J. Sept. 22, 2017) ECF No. 16-1 . Mr. Orlow still spent approximately 28 hours copying arguments from prior work product, and Ms. Saint-Antoine spent 2.7 hours supervising and reviewing his work. (Tomezsko Decl., Exh. F at Annex 2 (time entries associated with preparing initial moving brief in support of partial summary judgment).) The time spent on these tasks is unnecessary and excessive given the heavy reliance on prior work product. The Court should reduce Mr. Orlow's time to five hours and Ms. Saint-Antoine's time to one hour, consistent with the reductions to work performed drafting the largely duplicative complaint.

### 2. The Court Should Strike Or Reduce Hours Expended on Unnecessary Motion Practice As Unreasonable, Excessive, or Unnecessary.

Plaintiff's counsel also spent hours on unnecessary motion practice. Counsel for the parties have repeatedly entered into stipulated confidentiality orders in matters alleging claims virtual identical to Plaintiff's. *See, e.g.*, *Fowler v. AT&T, Inc.*, No. 3:18-cv-00667-MAS-LHG

(D.N.J. June 4, 2018) ECF No. 32; *Larson v. AT&T Servs. Inc.*, No. 3:18-cv-08114-DJH (D. Ariz. Oct. 17, 2018) ECF No. 24. AT&T offered to draft an ***identical*** stipulated confidentiality order for this case, but Plaintiff refused to even negotiate the terms, insisting that AT&T move the court for a protective order. (ECF 55.) The Court readily granted AT&T's motion, (ECF 64), but not before Plaintiff's attorneys spent approximately 20 hours fighting this routine discovery request.[8] Afterwards, CML agreed to a stipulated confidentiality order ***identical*** in substance to the one AT&T offered to draft in the first instance, save for an introductory provision on definitions. (ECF 66.) Under these circumstances, the Court should deduct from the lodestar calculation CML's hours spent litigating a routine protective order as unreasonable, unnecessary, and excessive.

The Court should also deduct hours CML spent pursuing a motion for conditional certification that was clearly precluded by a class and collective action waiver. "Where a plaintiff achieves only limited success, counsel may be awarded only that amount of fees that is reasonable in relation to the result obtained." *Griffin v. Leaseway Deliveries, Inc.*, Civ. A. No. 89-6522, 1992 WL 398381, at *1 (E.D. Pa. Dec. 31, 1992) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1988)). "Hours spent litigating distinct unsuccessful claims must thus be eliminated." *Id.* "Wholly or partially unsuccessful claims that were related to claims on which plaintiff prevailed" may be deducted from the lodestar calculation if those hours can be segmented from other work; if they cannot, a court is authorized to "reduce the award by a reasonable amount to account for such time." *Id.* (citing *Hensley*, 461 U.S. at 436.)

---

[8] Given CML's use of block billing, it is exceedingly difficult to calculate with specificity the time expended in connection with AT&T's routine protective order on days when CML attorneys performed multiple tasks. Therefore, the number of hours expended is estimated, and AT&T provides the full time entries associated with those dates in Annex 3 at Tomezsko Decl., Exh. F for the Court's review.

AT&T does not contest that Plaintiff is the prevailing party for purposes of her ADEA and OWBPA claims. The motion for certification of a collective should be treated separately, however. CML was well aware that the class and collective action waiver in the release Plaintiff signed was valid and enforceable, even if the waiver of ADEA claims was not; this precise issue had been decided less than a year before Plaintiff filed her motion for conditional certification. *Horowitz v. AT&T, Inc.*, No. 17-cv-4827-BRM-LHG, 2018 WL 1942525, at *19 (D.N.J. Apr.25, 2018) (unpublished) ("Even assuming [an OWBPA violation], . . . . [t]he remaining portions of the General Release and Waiver remain enforceable, such as the Class, Collective and Representative Action Waiver."), *opinion clarified on denial of reconsideration*, 2019 WL 77306 (E.D. Pa. Jan. 2, 2019).

Plaintiff's inability to pursue a collective action in light of her release is also well-settled law in the Third Circuit. *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427–28 (1998) (OWBPA violation rendered a release unenforceable against plaintiff "insofar as it purports to waive or release her ADEA claim"); *Cicero v. Quality Dining, Inc.*, Civil No. 16-5806 (NLH/KMW), 2017 WL 1217132, at *1 (D.N.J. Apr. 3, 2017) (dismissing motion for conditional certification where plaintiff was subject to class action waiver); *Kubischta v. Schlumberger Tech Corp*, Civil Action No. 15-1338, 2016 WL 3752917, at *3 (W.D. Pa. July 14, 2016) (dismissing class action claims where plaintiff was subject to class action waiver); *Korea Week, Inc. v. Got Capital, LLC*, Civil Action No. 15-6351, 2016 WL 3049490, at *1 (E.D. Pa. May 27, 2016) (named plaintiff who contractually waived right to bring or participate in class or collective action cannot adequately represent the proposed class). Given the circumstances, time spent on a conditional certification motion—especially when Plaintiff could have, but did not, assert claims

on behalf of others in the first instance—was unreasonable and should be deducted from the lodestar calculation.

Critically, none of the work expended on this motion was for Plaintiff's benefit. (Tomezsko Decl., Exh. F at Annex 4.) There is nothing in CML's petition that remotely suggests how the unsuccessful conditional certification motion contributed to Plaintiff's success at trial. *See Rode*, 892 F.2d at 1186 (district court did not abuse discretion in deducting hours spent defending against successful motions to dismiss two named parties; "The hours worked on those motions did not further successful claims; rather, the time was spent solely on unsuccessful claims."). If, as CML argues, "[r]eimbursement of fees is crucial to attracting dedicated and talented attorneys to pursue what are often difficult cases with relatively modest potential recoveries on behalf of individuals," that purpose is still served by compensating CML for a reasonable amount of work performed litigating ***Plaintiff's*** claim through trial. Pl.'s Br. at 2. Fee-shifting statutes are not a justification for CML's over-reaching by pursuing precluded claims on behalf ***of others***. *Cf. Leaseway Deliveries*, 1992 WL 398381, at *4 (reducing lodestar amount by 59.3 hours spent on tasks associated with precluded claims; "There is no contention by plaintiff that these items were used or useful in the arbitration proceedings and it is difficult to discern how they could have been. That counsel may have asserted the precluded claims in good faith and acted conscientiously in preparing these items at the time does not alter the fact that they would have been unnecessary had counsel pursued only the successful claims and thus time expended thereon is not compensable.") (citation omitted).

The Court should also disallow time spent on a related motion for reconsideration as unnecessary and excessive. Plaintiff failed to raise new arguments or facts warranting reconsideration of the Court's denial of the motion for conditional certification. (ECF No. 70 at ¶

1.) That motion was simply an attempt to reargue positions the Court had previously considered and rejected. *Id.* at ¶ 3. These hours should be excluded from the lodestar calculation.[9] *See Robinson*, 387 F. Supp. 2d at 437 (disallowing recovery of hours spent on motion for reconsideration where "plaintiff merely reargued points already set forth in his motion").

Finally, this Court should disallow recovery of fees spent on a baseless motion for equitable relief after denying Plaintiff's motion for conditional certification. (ECF No. 69.) The motion for equitable relief sought an order requiring AT&T to provide notice to members of the putative collective the Court refused to certify. *Id.* The Court denied the motion, noting that "Ray has no legally cognizable interest in the equitable remedies she demands." (ECF No. 77.) CML appears to have exercised billing judgment by excising from its fee petition ***most*** of the entries associated with this motion, but two remain. *See* Annex 4. This Court should deduct these hours from the lodestar calculation.

### 3. AT&T Should Not Have to Pay for CML's Work in the *Dolenti* Matter.

Mr. Dolenti was laid off from AT&T after being rated and ranked in the same surplus exercise as Plaintiff. (*See* ECF No. 72 at 1.) He sued AT&T, alleging Plaintiff and others discriminated against him on the basis of age. (*Id.*) AT&T was represented by separate counsel in the *Dolenti* matter, but Plaintiff was represented by CML during her involvement in that lawsuit. CML's time entries include time spent on the *Dolenti* lawsuit, including scheduling matters and attending Plaintiff's deposition.[10]

---

[9] Entries associated with the motion for reconsideration are included in Annex 4 at Tomezsko Decl., Exh. F, along with the hours expended on the futile motion for conditional certification.

[10] As reflected in Annex 5, AT&T took Plaintiff's deposition in December 2019. Plaintiff was deposed in *Dolenti* in October of that year. Mr. Dolenti was represented by Christine Burke of Karpf, Karpf, and Cerutti.

There is no reason for AT&T to pay for CML's time representing Plaintiff in a separate matter. Plaintiff would have testified in *Dolenti* regardless of whether she asserted similar claims against AT&T on her own behalf. Plaintiff does not argue, nor could she, that the testimony she gave in *Dolenti* furthered her own claims; in fact, Plaintiff fought to prevent AT&T from questioning Plaintiff about the scores she gave Mr. Dolenti that resulted in his surplus. (ECF No. 139.) CML cannot have it both ways. It cannot charge AT&T for time spent preparing for and attending Mr, Dolenti's deposition, while seeking to preclude AT&T from introducing at trial the subject of that testimony, namely, the ratings she gave her direct reports.

CML makes one reference in its brief to the 9.5 hours spent attending Plaintiff's deposition in *Dolenti*, where she "faced questioning related to her own claim against Defendants." (Pl.'s Br. at 11.) Out of the 268 pages of her testimony in *Dolenti*, only 16 pages reflect testimony about Plaintiff's claims against AT&T in this case. (Tomezsko Decl., ¶ 11.) The tenuous connection between her involvement in *Dolenti* and her claims here do not warrant reimbursement for CML's time. (Tomezsko Decl., Exh. F at Annex 5 (time entries associated with work on *Dolenti* matter).)

### 4.    The Court Should Reduce Hours Where Entries Are Plainly Excessive Or Unreasonable.

Tomezsko Decl., Exh. F at Annex 6 sets forth objectionable time entries reflecting excessive billing practices; no reasonable attorney would spend the amount of time billed for the activities in those time entries. Alternatively, some tasks billed by attorneys are unreasonable because they are more appropriate for paralegals or legal secretaries. To illustrate:

- On November 10, 2021, Ms. Mattiacci allegedly spent 8 hours for a total of $5,840 on "Emails to and from Ken Gage regarding logistics concerning Van Buskirk's trial testimony and sending physical exhibits to her and finalizing plans regarding date of

Carlucci's testimony." In reality, there were only a small number of short emails exchanged between CML and Paul Hastings on that date regarding scheduling issues. (Tomezsko Decl., ¶ 12.) Ms. Mattiacci cannot argue that time spent "finalizing plans regarding date of Carlucci testimony" was substantive work preparing for Mr. Carlucci's cross examination at trial; she billed time for that substantive work two days prior, on November 8, 2021, and Mr. Carlucci's cross-examination was brief, lasting approximately one hour.

- On March 26, 2020, Mr. Orlow's time entry reflects 3 hours of time with a legal assistant "regarding document management."

- Between March 25 and April 1, 2019, CML spent approximately 37 associate and 63 partner hours opposing AT&T's motion for interlocutory appeal of the order granting Plaintiff partial summary judgment on her OWBPA claim. The result was a 22 page motion (in 14-point font) raising essentially two arguments. *Alison Ray v. AT&T Servs. Inc.*, No. 19-8009 (Doc. 003113199645) (3d Cir. Apr. 1, 2019). ***Two senior attorneys*** and one junior attorney spent large portions of their days performing the same tasks on the same motion; Ms. Saint-Antoine, Ms. Uebler, and Ms. Mendelawe were all researching issues related to appellate produce and OWBPA, and drafting the same brief on the same day. The Court should reduce duplicative billing on this motion to account for the obvious inefficiencies reflected in the time entries.

- Ms. Mattiacci's time entries for trial are far in excess of what is reasonable given (1) her extensive trial prep in the days leading up to trial (a total of 223.6 hours from August 8, 2021, through November 14, 2021), and (2) the hours billed to trial

19

attendance and preparation by her co-counsel Mr. Orlow. Ms. Mattiacci's hours billed

far exceed Mr. Orlow's hours for that same time, as shown below.

| Date | Mattiacci Hours | Orlow Hours |
|------|------|------|
| 11/15/2021 | 14 | 10 |
| 11/16/2021 | 16 | 11 |
| 11/17/2021 | 16 | 10.5 |
| 11/18/2021 | 18 | 11.5 |
| 11/19/2021 | 10 | 9.5 |

Some of these entries are excessive on their face. The trial lasted only half of the day

on November 17, 2021, yet Ms. Mattiacci billed 16 hours of time to attending the trial

and trial preparation. Mr. Orlow only billed 10.5 hours for the same activities. The

Court should reduce Ms. Mattiacci's hours on those dates to conform with the hours

billed by Mr. Orlow.

- On January 31, 2019, Mr. Orlow spent 4.2 hours reviewing and proofreading Ms.

  Saint-Antoine's draft of the Amended Complaint (which is largely duplicative of the

  collective action complaint CML filed in the *Horowitz* case approximately two years

  earlier). *Compare* ECF 32-3 *with Horowitz*, No. 3:17-cv-04827 (D.N.J. June 29,

  2017) ECF No. 1. Mr. Orlow also performed other clerical tasks during that 4.2 hour

  period, including "drafting motion page and proposed order for motion to amend;

  assist with filing of motion for leave to amend." These are tasks for a paralegal, not

  an attorney with over 10 years of experience.

- Between June 14 and July 21, 2020, Ms. Norman spent 29.1 hours creating a "topical

  deposition index for use in opposition to Defendant's summary judgment motion,"

  drafting "deposition digests," and "indexing" AT&T's document productions. Ms.

  Norman was a third-year associate at the time. (Pl.'s Br. at 15, Exh. 1.) She should be

performing substantive legal work, not the work of a legal secretary. Moreover, it does not appear that any other attorney at CML used Ms. Norman's work product when opposing AT&T's summary judgment motions or otherwise. In fact, Mr. Orlow spent additional hours creating his own index of AT&T's productions, and Ms. Mattiacci's time entries show that she read the deposition transcripts themselves (not Ms. Norman's digests) when preparing for trial. Ms. Norman's time was plainly unnecessary and unreasonably expended on tasks that did not advance the case. Accordingly, it should be deducted from the lodestar calculation, or reduced to the $160 rate for paralegals published by Community Legal Services.

### 5.   CML Billed for Time Spent On Mock Openings and Closings During the Pendency of Discovery

In May 2020, the parties were still in the midst of expert discovery. (ECF No. 91 at ¶ 2.) Dispositive motions were not due until the following month, on June 29, 2020. (*Id.* at ¶ 4.) For inexplicable reasons, *five* CML attorneys billed time to a "virtual mock opening" on May 27-28, 2020. (Tomezsko Decl., Exh. F at Annex 7.) There is no conceivable explanation for this when the trial would not take place for another 18 months, Plaintiff's claims were at potentially at risk of dismissal if AT&T prevailed on summary judgment, and the attorney who delivered the mock opening, Mr. Orlow, was not even the attorney who gave opening statements at trial. CML has no basis to charge AT&T for this time and it should be stricken.

### 6.   Time Entries Lacking Appropriate Detail Should Be Disallowed.

CML has been reminded that it will not be reimbursed for ambiguous time entries such as "Internal conference with KC" or "Emails to and from Attorneys." *See Giedgowd*, 2021 WL 4963532, at *4–5 (striking ambiguous time entries; "We have no idea as to what Founder Console addressed or how it related in any way to Mr. Giedgowd. He faced the same issue in our

21

*Middlebrooks* analysis but, for whatever reason, continued to bill (in part) without providing specificity and then asks us to approve those entries."); *Middlebrooks*, 2019 WL 936645 at *7, 8–9 (striking time entries "which do not include a description for an internal communication without a surrounding context to inform the subject matter;" reducing vague entries such as "work on trial prep" by one-third). Without requisite specificity, this Court cannot assess time entries for reasonableness. *Id.* at *8.

CML attorneys are perfectly capable of describing the subject matter of their internal emails, telephone calls and conferences.  Many time entries reflect the requisite level of specificity and AT&T does not object to them. But as the *Middlebrooks* court noted, "Lawyers should be credited for their hard work, but they need to tell us what they did. When they do not, we cannot find the amount of billed time is reasonable." *Id.* at 10.

The Court should disallow recovery for the hours reflected in Annex 8 as vague and lacking requisite specificity to assess reasonableness. (Tomezsko Decl., Exh. F at Annex 8 (ambiguous and vague time entries).)

## III.   CONCLUSION

For the foregoing reasons, the Court should reduce Mr. Console's rate from $900 to $650 or $660; Ms. Mattiacci's rate from $730 to $570; and Ms. Saint-Antoine's rate from $730 to $560. It should also eliminate certain hours expended as unnecessary, unreasonable, or excessive, or otherwise reduce the number of hours claimed and reflected in the attached Annexes to a more reasonable number.

Dated:  March 18, 2022              Respectfully submitted,

By: _____
       Kenneth W. Gage*
       Sara B. Tomezsko*
       PAUL HASTINGS LLP
       200 Park Avenue
       New York, NY 10166
       Tel.: (212) 318-6000
       Fax: (212) 319-4090
       kennethgage@paulhastings.com
       saratomezsko@paulhastings.com

       James Bucci
       GENOVA BURNS
       1600 Market Street, Suite 3800
       Philadelphia, PA 19103
       Tel.: (215) 564-0444
       Fax.: (215) 564-0333
       jbucci@genovaburns.com

       Counsel for Defendant
       AT&T Mobility Services LLC

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Kenneth W. Gage, hereby certify that a true and correct copy of the

DEFENDANT'S OPPOSITION TO PLAINTIFF'S PETITION FOR FEES AND COSTS was

filed electronically and served via CM/ECF upon the below-listed counsel for Plaintiff, on this

18th day of March 2022.

> Daniel S. Orlow, Esq.
> Susan M. Saint-Antoine, Esq.
> Laura Carlin Mattiacci, Esq.
> Console Mattiacci Law, LLC
> 1525 Locust Street, 9th Floor
> Philadelphia, PA 19102
> Phone: (215) 545-7676
> orlow@consolelaw.com
> santanto@consolelaw.com
> mattiacci@conseolelaw.com
>
> *Attorneys for Plaintiff Alison Ray*


Dated: March 18, 2022

_____
Kenneth W. Gage