IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALISON RAY, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AT&T MOBILITY SERVICES, LLC, | : | No. 18-3303 |
|     Defendants. | : | |

**MEMORANDUM OPINION**

**TIMOTHY R. RICE**                                                                                       **April 22, 2022**
**U.S. MAGISTRATE JUDGE**

    Plaintiff Allison Ray seeks $847,945.00 in attorney fees and $38,643.86 in costs after prevailing on two age discrimination claims against Defendant AT&T Mobility Services, LLC, which sought to justify its unlawful firing of her as a business restructuring. See Petition for Attorney Fees and Costs (doc. 172). AT&T has raised numerous objections to Ray's request for attorney fees. See Resp. (doc. 178). It does not object to Ray's request for costs. Ray's Petition for Attorney Fees and Costs is granted in part and denied in part. I award Ray $764,825.00 in fees and $38,643.86 in costs.

    Two contested issues merit special mention. First, AT&T challenges the attorney fees spent for a mock trial preparation session. Mock trial preparation is an indispensable part of litigation. Sharpening advocacy skills in advance of trial is as important as effective legal research and writing. One cannot exist without the other in a courtroom. A persuasive and well-delivered trial presentation, honed and refined with help from others, significantly improves the chances of a successful outcome. This is often overlooked or underestimated in fee litigation. Ray contests the number of attorneys involved in the mock presentation, the timing of the presentation (well in advance of trial), and the fact that the practice session featured an attorney

who did not eventually deliver the opening statement at trial. I agree that it was unnecessary for five attorneys to bill time for the session and therefore deduct the time spent by one attorney. But neither the early timing nor the decision to have a different attorney deliver the opening and closing statements at trial should undermine Ray's ability to recover for the time spent on essential advocacy preparation by her trial team.

Second, AT&T contests the hourly rates sought by the three senior attorneys on the case: firm founder and shareholder, Stephen Console, shareholder and lead trial counsel, Laura Mattiacci, and partner, Susan Saint-Antoine. I agree that these attorneys' rates must be reduced to reflect the prevailing market rates of similar employment attorneys in the Philadelphia community. However, I also find that Saint-Antoine and Mattiacci are entitled to the same rate as fellow shareholder, Console, who served solely as a consultant on the case. Historically, women in law earn less than their male counterparts, a discrepancy that may reflect hidden bias. See Deborah Cassens Weiss, *Pay Gap Has Widened for Male and Female Partners in Larger Firms, New Report Says* (Sept. 15, 2020 11:30 AM), http://abajournal.com/news/articles/pay-gap-has-widened-for-male-and-female-partners-in-larger-law-firms-report-says. Saint-Antoine's experience and expertise on several of the pre-trial motions was critical in allowing the case to move to trial and Mattiacci's courtroom skills were pivotal to Ray's successful verdict. Their hourly rates must reflect such expertise and skill. Mattiacci's age also is irrelevant to the value of her legal talent, which has contributed to her status as a shareholder and as a formidable advocate for her clients in challenging cases. See Pet., Ex. 4, ¶ 11. Attorneys of comparable skill and ability merit equal compensation without regard to gender or age. As unremarkable as

that statement sounds, the reality is that fee awards are often based on status and not performance.

I.	Awarding Attorney Fees

A prevailing party on claims under the Age Discrimination and Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), is entitled to an award of reasonable attorney fees. See 29 U.S.C. § 626(b) (incorporating 29 U.S.C. § 216(b)).  The party, however, must file a fee petition setting forth "the hours worked and rates claimed." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The petition also should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973).  An adverse party may oppose the fee petition by specifically challenging the reasonableness of the requested fee. See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  I have a "great deal of discretion to adjust the fee award in light of those objections." Id.

Reasonable attorney fees are determined by calculating the "lodestar," or the number of hours reasonably expended, multiplied by a reasonable hourly rate. See Hensley, 461 U.S. at 433.  "Excessive, redundant, or otherwise unnecessary" hours are not reasonable and must be excluded from the lodestar calculation. Id. at 434.  The hourly rate must be based on "prevailing market rates in the relevant community," as well as "the experience and skill of the prevailing party's attorneys." Rode, 892 F.2d at 1183.

3

II.     Ray's Requested Attorney Fees

Ray's request for $847,945.00 in attorney fees is based on 1,734.7 hours of work performed over four years by eight attorneys from the law firm of Console Mattiacci Law, LLC ("CML"), seeking rates between $220.00 and $900.00 per hour. Ray does not seek reimbursement for work performed by legal assistants, paralegals, and summer law clerks. See Pet. at 16. Her attorneys also have not billed for all of their time. See id. n.2, Ex. 5, ¶ 18.

Ray has provided a brief and computerized printouts describing the work performed by her attorneys and declarations and exhibits supporting the hours and rates sought. Ray argues that her attorneys are entitled to reimbursement for the entire amount of attorney fees requested because they vindicated her statutorily protected right against age discrimination by AT&T "through excellent advocacy in a case that was difficult to win and hard fought at every turn by a corporate giant that never offered a dime to resolve it." Id. at 2. She explains that her attorneys not only achieved a jury verdict in her favor on her claims of age discrimination and willful misconduct by AT&T, but also: (a) obtained summary judgment on Count II of the Complaint, invalidating the General Release signed by Ray under the ADEA; (b) defeated AT&T's petition for interlocutory appeal to the Court of Appeals; (c) defeated AT&T's motion to amend its answer to assert a counterclaim for breach of contract and attorney's fees; (d) defeated AT&T's motion for summary judgment on her discrimination claims; and (e) obtained a judgment for her back pay loss, liquidated damages, and front pay damages.

AT&T challenges specific hours of work by Ray's attorneys as unreasonable, unnecessary, improper, or not properly documented. AT&T also asserts that Ray has failed to show that the rates sought by the three senior CML attorneys "are reasonable and within the

4

range of prevailing market rates for attorneys with their background, skills, and experience." Resp. at 3. AT&T does not object to the rates sought by the five more junior attorneys who worked on the case. See id. at 3 n.3.

III.    Attorney Hours

    A.  Preparation of the Complaint and Motion for Partial Summary Judgment

AT&T argues that Ray's attorneys spent an unreasonable amount of time preparing the Complaint because it is substantially similar to complaints filed by her attorneys in other cases. Specifically, AT&T objects to associate attorney Daniel Orlow spending approximately 15 hours drafting and revising the Complaint and partner Saint-Antoine spending approximately two hours reviewing the initial and revised drafts of the Complaint. I disagree.

The complaints filed against AT&T by CML in prior cases were factually distinct from Ray's case. Compare Compl. (doc. 1, with Fowler v. AT&T et al., D.N.J. No. 18-667, Compl. (doc. 1) and Horowitz v. AT&T, Inc., et al., D.N.J. No. 17-4827, Compl. (doc. 1). Ray's attorneys could not, and did not, simply copy the allegations from those complaints into Ray's Complaint. Ray's Complaint totaled 18 pages containing approximately 100 well-pled factual and legal allegations that did not elicit a motion to dismiss. See Compl. (doc. 1). It was reasonable for Ray's attorneys to spend approximately 18 hours to craft a proper complaint that sufficiently notified AT&T of the claims against it.

AT&T also argues that Ray's attorneys spent an unreasonable amount of time preparing the Motion for Partial Summary Judgment on Count II because CML made almost identical arguments in another case. Specifically, AT&T objects to Orlow spending approximately 28.8 hours to draft and revise the motion and Saint-Antoine spending approximately 2.7 hours

reviewing the drafts.  Although I agree that Ray's attorneys were able to use arguments from a motion they had filed in another case, I believe that this decreased the time spent in Ray's case. Compare Motion for Partial S.J. (doc. 13-1), with Horowitz, D.N.J. No. 17-4827, Motion for Partial S.J. (doc. 16-1).  The final motion and statement of facts included facts specific to Ray's case, arguments from the other case with some updates and revisions, and new and distinct arguments.  See Motion for Partial S.J. (doc. 13-1); Statement of Facts (doc. 13-3).  The motion also was well-organized, persuasive, and successful.  Based on my review of the motion and time entries, I find that 31.5 hours was a reasonable amount of time to draft, review, revise, and complete the motion.

B.  Motion Practice

AT&T argues that Ray's attorneys spent an unreasonable amount of time litigating unsuccessful and unnecessary motions.  Specifically, AT&T objects to time spent by Ray's attorneys litigating: (1) a protective order regarding the exchange of confidential information during discovery; (2) a motion to proceed as a collective action; (3) a motion for reconsideration of the order denying the motion to proceed as a collective action; and (4) a motion for equitable relief.

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees."  Hensley, 461 U.S. at 436.  When a plaintiff has failed to prevail on a claim that is distinct "from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."  Id.  Alternatively, where a plaintiff has failed to prevail on a claim that is related to, or furthers, a successful claim, an

6

award should not be reduced simply because the court "did not adopt each contention raised." Id.

Ray was undoubtedly the prevailing party in this litigation, obtaining a verdict in her favor on her age discrimination and punitive damages claims and succeeding on numerous other motions. See supra at 4. However, the time spent litigating the unsuccessful motions noted by AT&T did not relate to, or further, the success of Ray's ultimate claims of discrimination. I therefore shall deduct from the attorney fee award: (1) 97.2 hours totaling $33,919.00 of attorney time responding to the motion for a protective order[1] and litigating the motion to proceed as a collective action[2]; (2) six and a half hours, totaling $2,640.00 of attorney time litigating the motion for reconsideration; and (3) three hours, totaling $2,297.00 of attorney time litigating the motion for equitable relief. See Rode, 892 F.2d at 1185-86 (district court properly deducted time spent defending unsuccessful motion to dismiss when that time did not further the successful claims and was separable from the rest of the litigation).

C. Representation of Ray in the Dolenti Case

AT&T asserts that Ray has improperly sought fees for time it spent representing Ray in a lawsuit brought by a different party against AT&T. I agree that AT&T is not responsible for

---

[1] The attorneys' refusal to enter into a stipulated confidentiality order with AT&T also was confusing given its agreements to protect confidential AT&T documents in other cases. See Ray's Resp. to Mot. for Protective Order (doc. 59); Fowler, D.N.J. No. 18-667, Confidentiality Order (doc. 32); Larson v. AT&T Servs. Inc., D. Ariz. No. 18-8114, Confidentiality Order (doc. 24).

[2] I have combined the amounts for time spent on the motion for a protective order and the motion for certification because Ray's attorneys submitted several billing entries that included time spent on both motions. I also did not deduct the full amount from billing entries that included time spent on work unrelated to the unsuccessful motions.

hours spent representing Ray in that distinct lawsuit and therefore deduct 19.3 attorney hours totaling $8,390.00 from the fee award.

    D.  Excessive and Unreasonable Entries

AT&T objects to eight hours spent by Laura Mattiacci on November 10, 2021, for "emails to and from Ken Gage regarding logistics concerning Van Buskirk's testimony and sending physical exhibits to her and finalizing plans regarding day of Carlucci's testimony." AT&T contends this time was excessive because there were only a small number of short emails exchanged between Mattiacci and Gage about Van Buskirk's testimony, and Mattiacci had already prepared for Carlucci's testimony. I disagree. Although Mattiacci's time entry focuses on emails, it is clear that she also spent time considering the exhibits to be used with Van Buskirk, when and how to send them to Van Buskirk, and preparing for Carlucci. Further, even though Mattiacci spent time preparing for both witnesses two days earlier, I cannot assume that such time was sufficient to complete her preparation for these key witnesses. See Middlebrooks v. Teva Pharmaceuticals USA, Inc., No. 17-412, 2019 WL 936645, *9 (E.D. Pa. Feb. 26, 2019) (noting attorneys have a "professional obligation to be prepared" and refusing to second guess amount of time for deposition preparation).

AT&T objects to three hours spent by Orlow on an internal conference with a legal assistant regarding "document management." I do not find that this time was unreasonable, particularly as Ray's attorneys have not billed for the legal assistant's time, which would have been duplicative and required some attorney oversight.

AT&T objects to Ray's attorneys spending approximately 100 hours preparing a 22-page brief in opposition to AT&T's motion for interlocutory appeal of my order granting summary

judgment on Count II of the Complaint. They contend that two senior attorneys and one junior attorney "spent large portions of their days performing the same tasks on the same motion." Resp. at 19. I disagree. First, the brevity of a brief should not dictate the time spent. Crafting a clear and concise brief often takes longer than a lengthy brief. Second, although three attorneys worked on the brief, they performed different tasks. For example, associate attorney Ortal Mendalawe researched cases where courts denied interlocutory appeal and drafted the jurisdiction section of the responsive brief, partner attorney Julie Uebler completed most of the first draft of the brief, and Saint-Antoine prepared the factual section and revised the draft completed by others. See Pet., Ex. 2, 3/25/2019 – 4/1/2019 billing entries. I therefore shall not deduct the time spent by these attorneys preparing a response to the petition for interlocutory appeal filed by AT&T. However, I will deduct $320.00 for one hour spent by Orlow on April 1, 2019 reviewing the petition for interlocutory appeal and meeting with the other attorneys regarding the brief because he had already reviewed the petition and met with the attorneys one week earlier, and he was not involved in the preparation of the brief. See id.

AT&T objects to the hours recorded by Mattiacci during the trial because she spent a significant amount of time preparing for trial before it started and her hours during the trial exceeded those recorded by Orlow, who also attended and participated in the trial. This objection ignores the reality of modern trial practice and the cost-saving process whereby younger attorneys handle preliminary duties, and gradually sharpen their skills, before yielding to those with more courtroom experience as the cases progress to a jury trial. Although Mattiacci began preparing for trial in August 2021 by reviewing case documents, assisting with the pre-trial memorandum and jury instructions, and determining trial strategy, this work did not

eliminate the need to prepare during the trial itself.  See Pet., Ex. 1, LCM 8/9/2021 – 11/14/2021 billing entries.  Further, because Mattiacci was lead trial counsel, delivered the opening and closing statements, and conducted the bulk of the direct and cross-examinations, it was reasonable for her to spend more time than Orlow preparing for trial.  Attorneys are expected to spend a significant amount of time on a case during trial; it is one of the many risks of going to trial.  I will not second guess the time recorded by Mattiacci during the trial. This was a difficult case to present to a jury, involving numerous employee ratings and rankings, and well-crafted defenses.  It was necessary for Mattiacci to take the time she deemed necessary to present the case in a convincing and understandable way to the jury.  See Middlebrooks, No. 17-412, 2019 WL 936645, *9 ("Each lawyer needs the time she needs to be ready.").  AT&T's objection is overruled.

AT&T objects to 4.2 hours spent by Orlow reviewing a draft of the amended complaint, drafting a motion to amend and proposed order, and assisting with the filing of the motion to amend.  AT&T argues that this time was excessive and unnecessary because the amended complaint was mostly duplicative of a complaint filed by CML in another case and the other tasks should have been performed by a paralegal.  I disagree that Ray's attorneys merely copied allegations from the complaint in the other case referenced by AT&T.  Although the allegations in the two complaints are similar, they are not the same.  Compare Am. Compl. (doc. 32-3), with Horowitz, D.N.J. No. 17-4827, Compl. (doc. 1).  Nevertheless, because there were not substantial amendments to Ray's complaint, reviewing the amended complaint should not have taken long.  See Am. Compl. Doc. 32-2.  Further, although a paralegal could have prepared the cover sheet and order, it can be easier and quicker for such tasks to be completed by attorneys.

Attorneys also are often needed to oversee and assist with filing documents to ensure that all documents are included and properly categorized. Accordingly, although it was appropriate for Orlow to perform the work documented in this billing entry, it should not have taken him 4.2 hours. I shall deduct 2.0 hours, totaling $640.00, from his time.

AT&T objects to 29.1 hours spent by associate attorney Anna Norman creating an index of AT&T's documents, deposition digests, and a topical deposition index for use in opposing AT&T's motion for summary judgment. AT&T argues that this work should have been done by a legal secretary and was not used in responding to the motion for summary judgment or preparing for trial. I disagree that this was clerical work that should have been performed by a legal secretary. It is often beneficial for attorneys to index and identify documents and deposition testimony, particularly when responding to motions, to ensure that important material is not missed. Moreover, Norman, who was one of CML's more junior attorneys, was able to perform this work at a lower rate. In addition, although other attorneys' time entries did not state that they reviewed the indexes or digests in responding to the motion for summary judgment and preparing for trial, this does not mean that they were not used.

E.  Mock Openings and Closings

AT&T objects to 11.5 hours spent by Ray's attorneys on mock opening and closing statements. AT&T initially argues that it was unreasonable for five of Ray's attorneys to bill time on the mock presentations. Although mock arguments are a critical part of trial preparation, I agree that it was unnecessary for five attorneys to bill for time spent on the mock presentations. I shall deduct $220.00 for the one hour of time billed by associate attorney Emily Derstine-Friesen, who had minimal involvement with the case. It was reasonable for the other four

attorneys to participate, given their involvement in the case and/or trial experience. However, I shall reduce attorney Stephen Console's hours to 1.5 so it is consistent with the other attorneys who participated in the presentation.

AT&T also argues that the time spent on the mock presentation was unreasonable because it occurred before summary judgment motions were filed and decided and because the opening and closing statements were made by Orlow, rather than Mattiacci, who made the arguments at trial. Although Ray's attorneys took a risk in conducting the mock presentation before dispositive motions were decided, it worked in their favor because they ultimately prevailed on summary judgment, making trial preparation necessary. I shall not deduct time spent on the mock presentations merely because Ray's attorneys took this risk. It also was reasonable for Orlow to provide the mock arguments. CML was entitled to decide to use a different attorney after conducting the mock presentation. Further, although Mattiacci did not make the presentation, she benefited from participating in the process. Such objections ignore the ever-changing nature of trial practice and the need to make subjective decisions in situations of high-risk.

F. Inadequate Detail

AT&T challenges a handful of billing entries concerning internal emails, notes to file, and conferences because the attorneys have failed to state the subject matter. I agree that the majority of these entries are too ambiguous for me to determine whether the hours were reasonably incurred. See Rode, 892 F.2d at 1190 (fee petition must be specific enough to show that the hours spent were reasonable); Clemens v. New York Central Mut'l Fire Ins. Co., 903 F.3d 396, 400 (3d Cir. 2018) (denying fees for vague billing entries that failed to provide the

subject matter); Giedgowd v. Cafaro Group, LLC, No. 20-6184, 2021 WL 4963532, *5 (E.D. Pa. Oct. 26, 2021) (deducting amounts for ambiguous and uncertain billing entries concerning conferences and emails without any subject matter); Middlebrooks, 2019 WL 936645, at * 8 (refusing to require losing party "to pay for time entries which do not include a description for an internal communication without a surrounding context to inform the subject matter"). I shall deduct 8.5 of the hours noted by AT&T as ambiguous for a total of $9,671.00.³ See Resp., Ex. F, Annex 8.

IV. Attorney Rates

AT&T challenges the: (a) $900.00 rate sought by Console, who has 40 years of legal experience; (b) the $730.00 rate sought by Mattiacci, who has 20 years of legal experience; and the (c) $730.00 rate sought by Saint-Antoine, who has 27 years of legal experience. See Pet., Ex. 1, ¶ 4; Ex. 4, ¶ 5; Ex. 5, ¶ 5. AT&T argues that these rates are unreasonable and not within the range of prevailing market rates for attorneys with similar backgrounds, skills, and experience. I agree that Ray has failed to establish that the rates requested by these three senior attorneys are within the prevailing market rates in the community.

Although Ray contends that the rates requested by Console, Mattiacci, and Saint-Antoine are the same or less than the regular rates charged for their services in non-contingent matters, she fails to present any evidence showing that any client has willingly agreed to pay such rates. See Middlebrooks, 2019 WL 936645, at *12 (law firm must present evidence of what a "willing

---

³ I have not included 4.7 hours spent by Orlow in November 2021 planning and preparing for trial and participating in conferences with Mattiacci in preparation for trial because I can determine such time was reasonable based on the descriptions and timing of the entries. See Resp., Ex. F, Annex 8.

client would pay a willing lawyer"). In fact, Console admits that Ray chose to enter into a contingency fee agreement rather than pay the firm's "usual and customary" hourly rates.[4] Pet., Ex. 3, ¶ 15.

To the extent that Ray argues that CML's "usual and customary rates" have been approved by arbitrators and courts, she fails to specify what rates were approved. See Pet. at 26-29. In addition, a closer look at the cases reveals that CML's rates often were not challenged, were less than those sought here, or were reduced by the court. See Mammen v. Thomas Jefferson Univ., et al., E.D. Pa., No. 20-127, 10/13/2021 Order (doc. 74) (awarding CML attorney fees based on rate of $450.00 for a partner with 16 years of experience where no objections were filed); Middlebrooks, 2019 WL 936645, *14 (reducing Console's requested rate of $940.00 to $660.00 and Mattiacci's requested rate of $750.00 to 570.00); Giedgowd, 2021 WL 4963532, *6 (challenges filed only to Console's proposed rate of $960.00 and reducing rate to $650.00). Some cases also are distinguishable or too dated to be probative here. See Pet. at 27-28; Middlebrooks, 2019 WL 936645, *12, n.58.

Ray further contends that the rates sought by Console, Mattiacci, and Saint-Antoine are reasonable by citing to hourly rates allegedly charged by partners in large law firms, including the firm used by AT&T. See Pet. at 26. The concept that Ray's attorneys should be compensated at rates comparable to attorneys at private defense firms has some merit, but Ray has failed to marshal sufficient evidence for me to find those rates are consistent with the rates sought by her attorneys. The hourly rates for lawyers at large Philadelphia firms, as cited by

---

[4] Ray has not provided a copy of any agreement she made with CML and the hourly rates proposed to her.

Ray, are contradicted by the rates reported in the 2017 National Law Journal Survey of Billing Rates, which Ray also provides as an exhibit. See Pet., Ex. 12. In that survey, many of the same firms have reported lower partner hourly rates at a later time period. Compare Pet. at 26, with Ex. 12. In addition, very few firms in the survey have reported average partner hourly rates as high as those requested by Console, Mattiacci, and Saint-Antoine. See Pet., Ex. 12. Ray also fails to show that the attorneys in the large firms she cites and the firms themselves are comparable to CML's attorneys and CML. See Middlebrooks, 2019 WL 936645, *12 (rates for skilled trial and employment attorneys are distinguishable from lawyers who "find well-paid comfort in boardrooms, administrative, and patent hearings").

Ray also relies on declarations provided by four other Philadelphia employment lawyers in support of the rates sought by Console, Mattiacci, and Saint-Antoine. However, two of the attorneys fail to state their own hourly rates, making their declarations about the reasonableness of CML's hourly rates less probative.[5] See Pet., Exs. 6, 9; Middlebrooks, 2019 WL 936645, at *12 (discounting comparator affidavits concerning reasonable hourly rates where they fail to offer "primary evidence" of their own hourly rates). A third attorney, Robert Davitch, Esquire, states that his hourly rate is $875.00, but he has practiced law six years longer than Console and he and his firm represent a broader array of clients on matters beyond just employment. See Pet., Ex. 8, ¶¶ 2, 4, 12; Resp., Ex. E ("we have seen a heavy concentration on business and employment litigation, mixed with contract negotiations, drafting of transactional documents,

---

[5] Although Alice Ballard, Esquire, does not provide her own rate, she states that hourly rates sought by members of the local National Employment Lawyers Association fall between $215.00 and $900.00. See Resp., Ex. 6, ¶ 6. However, she fails to explain whether such rates have been approved in attorney fee petitions. See id.

and advising business clients on matters of International Law"; the firm is "fortunate enough to be the lawyers for some extraordinarily affluent individuals").

The fourth attorney, Sidney Gold, Esquire, states that his hourly rate is $650.00 and he has been practicing law since 1975, which is 7 years longer than Console, 27 years longer than Mattiacci, and 14 years longer than Saint-Antoine.  See Pet., Ex. 10, ¶¶ 2, 5.  Like Console and Mattiacci, he also is a principal shareholder in his own employment law firm in Philadelphia.  See id. ¶ 3.  Just last year, this Court approved Gold's rate of $650.00 as a reasonable and prevailing market rate for Console in a case where he solely acted as a consultant.  See Giedgowd, 2021 WL 4963532, at *6.

Gold's rate is consistent with the fee schedule set forth by Community Legal Services ("CLS"), which has been used by courts in this Circuit to determine the prevailing market rates for attorneys in the Philadelphia area.  See Maldonado v. Houstoun, 256 F.3d 181, 187–88 (3d Cir. 2001) (approving the CLS schedule as reasonable and a "fair reflection of the prevailing market rates in Philadelphia" for lawyers in civil rights case); Middlebrooks, 2019 WL 936645, *13 (determining CML attorney rates for employment case based on CLS fee schedule); Jones v. Pennsylvania State Police, No. 16-4205, 2018 WL 2197226, *3 (E.D. Pa. May 11, 2018) (using CLS fee schedule to determine hourly rate for attorney in employment case).  According to the CLS fee schedule, CLS seeks rates of $650.00-$700.000 for attorneys with more than 25 years of experience, like Gold and Console.  See Community Legal Services Attorney Fees, https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited April 21, 2022).

Gold's rate and the CLS fee schedule are reliable evidence of the prevailing market rate for attorneys of similar experience as Console.  Although Gold has maintained a rate at the low

16

end of the CLS schedule for an attorney of his experience,[6] I shall not limit Console to that lower rate. Rather, I find Console is entitled to the $700.00 rate set forth at the high end of the CLS fee schedule given his experience and his expertise in employment law and managing the legal work of his firm.[7]  See Pet., Ex. 3, ¶¶ 4-11, 14.

I also find that a $700.00 hourly rate is reasonable and within the prevailing market rates for Saint-Antoine and Mattiacci, who both provided exceptional legal work in this case. Saint-Antoine has been practicing law for 27 years, performing employment law for 23 of those years, and been a partner at CML for 8 years. See Pet., Ex. 5, ¶¶ 5-8. She also is responsible for and supervised the work on many of the motions and briefs that allowed this case to proceed to trial. Id. at ¶¶ 12-14. Given her years of experience and expertise and skill litigating the age discrimination issues in this case, the $700.00 rate set forth at the high end of the CLS fee schedule for an attorney of her experience is appropriate.

Although Mattiacci has been practicing law for fewer years than Console and Saint-Antoine and would warrant a rate of $530.00 based on her experience according to the CLS fee schedule, she is entitled to the same $700.00 rate as her fellow shareholder and partner given her expertise and skill as a trial lawyer. See Community Legal Services Attorney Fees, supra. Mattiacci has devoted her practice to employment law for 19 years, has been a shareholder for 10 years, is well-recognized as a leading employment trial attorney, and has developed an

---

[6]   Gold apparently has not increased his hourly rate, at least since he submitted his declaration in the Giedgowd case last year.

[7]   If Console had entered his appearance and tried the case, it also may have justified a higher rate. Giedgowd, 2021 WL 4963532, *6.

extraordinary record of courtroom achievement.  See Pet., Ex. 4, ¶¶ 5-11.  Her exceptional advocacy skills helped to persuade the jury to award a significant verdict for Ray in a complex case.  Such expertise justifies a premium to the rate allocated to an attorney of her experience level in the CLS fee schedule.  Even though the CLS fee schedule serves as a useful guide on setting hourly rates, its reference to experience should not serve as a cap that precludes exceptionally talented trial lawyers from receiving fair compensation simply because of age or gender.

V.      Attorney Fee Award

Ray's request for $847,945.00 in attorney fees will be reduced to $764,825.00 based on the following deductions:

| Description | Amount |
|---|---|
| Opposition to Motion for Protective Order and Litigating Motion for Collective Action | $33,919.00 |
| Litigating Motion for Reconsideration | $2,640.00 |
| Litigating Motion for Equitable Relief | $2,297.00 |
| Representation of Ray in Dolenti Case | $8,390.00 |
| Orlow's 4/1/2019 time for response to Motion for Interlocutory Appeal | $320.00 |
| Orlow's time on Motion to Amend Complaint | $640.00 |
| Derstine-Freisen's time on the mock trial preparation | $220.00 |
| Ambiguous Entries | $9,671.00 |
| Reduced rate for Console and reduction of time for mock presentation | $5,520.00[8] |

---

[8]     Console's hours after reducing his time for the reasons explained in this opinion totaled

| | |
|---|---|
| Reduced rate for Saint-Antoine | $10,140.00[9] |
| Reduced rate for Mattiacci | $9,363.00[10] |
| Total: | $83,120.00 |

An appropriate Order follows.

---

27.6.  Based on the $700.00 rate, he should be paid $19,320.00 rather than $24,840.00 based on a $900.00 rate.

[9]   Saint-Antoine's hours after reducing her time for the reasons explained in this opinion totaled 338.  Based on the $700.00 rate, she should be paid $236,600.00 rather than $246,740.00 based on a $730.00 rate.

[10]   Mattiacci's hours after reducing her time for the reasons explained in this opinion totaled 312.1.  Based on the $700.00 rate, she should be paid $218,470.00 rather than $227,833.00 based on a $730.00 rate.